1   RANDY SUE POLLOCK (CA SBN 64493)
    LAW OFFICE OF RANDY SUE POLLOCK
2   286 Santa Clara Avenue
    Oakland, CA 94610-2624
3   Telephone: 510.763.9967
    Facsimile: 510.380.6551
4   rsp@rspollocklaw.com

5   Attorney for Defendant Kenneth W. Mattson

6

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12

    UNITED STATES OF AMERICA,              Case No. 3:25-CR-00126 CRB
13
                     Plaintiff,
14          v.                             **OPPOSITION TO GOVERNMENT'S**
                                           **MOTION FOR DETENTION**
15   KENNETH W. MATTSON,                   **PENDING TRIAL**

16                   Defendant.

17
                                           Date:    May 28, 2025
18                                         Time:    10:30 a.m.
                                           Court:   Hon. Alex G. Tse
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 3

III.  LEGAL STANDARDS ............................................................................... 3

IV.   ARGUMENT .............................................................................................. 4

    A.    The Government Fails to Show That Mr. Mattson Is a Flight Risk ...................... 5

    B.    The Government Fails to Show That Mr. Mattson Is a Danger, Let Alone by Clear and Convincing Evidence ......................................................... 11

V.    CONCLUSION ......................................................................................... 12

1

## TABLE OF AUTHORITIES

2
                                                                        **Page(s)**

3  **Cases**

4  *United States v. Andrade,*
5    No. 3:20-cr-00249-RS-1 (N.D. Cal.) ................................................................ 5

6  *United States v. Beckman,*
     No. 3:25-cr-00012-RFL (N.D. Cal.) ................................................................ 5
7
   *United States v. Gerrans,*
8    No. 3:18-cr-00310-EMC (N.D. Cal.) ............................................................... 5

9  *United States v. Hir,*
10   517 F.3d 1081 (9th Cir. 2008) ......................................................................... 2

11 *United States v. Holmes,*
     No. 5:18-cr-00258-EJD (N.D. Cal.) ................................................................ 4
12
   *United States v. Hussain,*
13   No. 3:16-cr-00462-CRB-1 (N.D. Cal.) ......................................................... 4, 9

14 *United States v. Kim,*
15   No. 3:20-mj-70923-MAG (N.D. Cal.) .............................................................. 5

16 *United States v. Levandowski,*
     No. 3:19-cr-00377-WHA (N.D. Cal.) ............................................................... 5
17
   *United States v. Lynch,*
18   No. 3:18-cr-00577-CRB (N.D. Cal.) ............................................................. 4, 8

19 *United States v. Motamedi,*
20   767 F.2d 1403 (9th Cir. 1985) ......................................................................... 3

21 *United States v. Salerno,*
     481 U.S. 739 (1987) ......................................................................................... 3
22
   *United States v. Santos-Flores,*
23   794 F.3d 1088 (9th Cir. 2015) ......................................................................... 3

24 *United States v. Stevenson,*
     No. 3:21-cr-00018-CRB-1 (N.D. Cal.) ........................................................... 4
25
   *United States v. Sullivan,*
26   No. 3:20-cr-00337-WHO (N.D. Cal.) .............................................................. 5

27 *United States v. Wallach,*
28   No. 3:20-cr-00365-MMC (N.D. Cal.) .............................................................. 5

**Statutes**

18 U.S.C. § 3142.................................................................................................... 2, 3, 6

## I.    INTRODUCTION

The government attempts to keep Kenneth Mattson behind bars pending trial on the thinnest of pretexts and predicated on its misunderstandings of fact. His alleged substantial financial means makes Mr. Mattson a flight risk, according to the government. The allegations against him and the recovery of a laptop and flash drives at the time of his arrest indicate that Mr. Mattson poses an "economic danger," the government contends. That is not the law. Only if this Court finds that there is *no condition* that can reasonably assure Mr. Mattson's appearance at trial, or the safety of others may it order his continued pretrial detention. The government plainly cannot meet that standard. Mr. Mattson is ready to post bail if he is permitted access to properties he owns. Pretrial services can monitor him as it does dozens of other criminal defendants in this district. Mr. Mattson stands ready to comply with appropriate conditions that the Court may impose in this regard.

The government, however, asks this Court to take the extraordinary step in imposing continued detention on Mr. Mattson. To do so would be to treat Mr. Mattson differently than similarly situated defendants and defendants who stood accused of worse fraud. Many courts in this District have concluded, in evaluating defendants accused of wire fraud, that pretrial detention is unwarranted in cases worse than Mr. Mattson's. As the basis for that detention, the government presents thin evidentiary support, some of which has been misrepresented to the Court. Take, for instance, the $9,104 in cash found in Mr. Mattson's vehicle at the time of his arrest. According to the government, the cash shows Mr. Mattson possesses "unaccounted-for assets," which he might use to flee. But the government omitted to tell the Court that the cash was found in envelopes, one of which was labeled "rent for May 2025." As the government well knows, Mr. Mattson picks up rent from rent-generating properties but neglected to tell the Court about the envelopes or the writing on the envelopes in its desperate effort to show any risk of flight.

Nor does the government's alleged evidence regarding its obstruction charge fare better. Before the time when the government alleges documents were deleted from Mr. Mattson's laptop, Mr. Mattson provided the laptop to his civil counsel for the express purpose of document

1   preservation. The government has no evidence that Mr. Mattson deleted files for the purpose of

2   obstructing justice. The temporal sequence of handing over his laptop to counsel *before* the

3   alleged deletion took place in fact indicates the opposite. The government knew that Mr. Mattson

4   was present at 1111 Broadway at the time of the alleged deletions but apparently did nothing to

5   investigate why or how those deletions could have come about – or even who had the laptop

6   during the alleged time of deletions. The government chose the time of arrest and which charges

7   to bring. Its half-baked investigation is its own fault, and Mr. Mattson should not be detained

8   because the government does not know what happened.

9          On top of all of that, Mr. Mattson has no criminal history, has lived in Northern California

10  his entire life, and retains substantial ties to his community. Criminal defendants in this District

11  who were alleged to have committed fraud on a wider scale than alleged here and who had fewer

12  ties to the community, including foreign nationals, were not subjected to pretrial detention. There

13  is simply no credible reason Mr. Mattson should not be treated the same or better as these

14  defendants.

15         As for the government's argument that he poses an ongoing danger to his community, the

16  Court should not indulge this absurdity. There is no evidence Mr. Mattson is currently soliciting

17  investments from "friends and neighbors," as the government would have it. That Mr. Mattson

18  could somehow do so even if he wished is not credible.  Presently, he is under a preservation

19  court order from the NDCA Bankruptcy Court preventing him from selling, transferring, or

20  encumbering any real property in which he has an interest and any personal property in excess of

21  $15,000.00. **Exhibit A.** The government's investigation and the charges against Mr. Mattson have

22  been widely covered in the media. As for the physical danger the government believes Mr.

23  Mattson may pose, there is likewise no evidence whatsoever. Mr. Mattson is willing to surrender

24  firearms registered in his name to avoid any suggestion that he could pose a danger. As the

25  government concedes, this is a danger – however theoretical – that "may be mitigated."

26         The government's motion falls far short of the high bar needed to demonstrate that there is

27  no condition that can be imposed on Mr. Mattson to provide reasonable assurance of his

28  appearance at trial. The evidence that is known at this early stage in fact indicates the opposite.

1  The government's efforts to detain Mr. Mattson boil down to a laundry list of innocuous events
2  where the government claims it does not understand the events. That is not the result of a proper
3  investigation. And it turns the presumption of innocence and the burden on the government on its
4  head. Despite its claims of long-term and far-reaching fraud, the government cannot point to any
5  hidden or missing assets. None. That is remarkable. And despite its allegations, the government
6  cannot point to any international activity that would substantiate its claims of a risk of flight.
7  Similarly remarkable. Likewise, the government cannot point to a single instance in which Mr.
8  Mattson actually attempted to obstruct justice except its misguided and under-investigated claims
9  of deletion of computer files. The Court should deny the government's motion.

10  **II.      BACKGROUND**

11          Mr. Mattson has long-standing ties to the Bay Area.  For approximately 30 years he lived
12  in Piedmont with his wife and four children.  The children attended local schools.  He has been
13  residing in Sonoma for approximately 3-4 years.  His four children and grandchildren all live in
14  the Bay Area, three in Alameda County and one in Sonoma.

15          Mr. Mattson retained civil and criminal counsel approximately one year ago.  He has been
16  in regular contact with both counsel for the past year.

17  **III.     LEGAL STANDARDS**

18          Under the Bail Reform Act, the Court must release a criminal defendant on personal
19  recognizance or execution of an unsecured appearance bond unless the Court "determines that
20  such release will not reasonably assure the appearance of the person as required or will endanger
21  the safety of any other person or the community." 18 U.S.C. § 3142(b). Release is mandatory
22  except where the Court "finds that no condition or combination of conditions will reasonably
23  assure the appearance of the person as required and the safety of any other person and the
24  community." *Id.* § 3142(e); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008)
25  (same). That is because "[i]n our society liberty is the norm, and detention prior to trial or without
26  trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Only
27  in rare cases should release be denied, and doubts regarding the propriety of release are to be
28

1   resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir.

2   2015) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

3         To make a determination that "no condition or combination of conditions will reasonably

4   assurance the appearance" of the defendant and "the safety of any other person and the

5   community," the Court must evaluate four factors: (1) "the nature and circumstances of the

6   offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and

7   characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or

8   the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The

9   government has the burden to show that the defendant is a flight risk by a preponderance of the

10  evidence. *Motamedi*, 767 F.2d at 1406. The government must show by "clear and convincing

11  evidence" that "no condition or combination of conditions will reasonably assure the safety of

12  any other person and the community" other than pretrial detention. 18 U.S.C. § 3142(f). If the

13  Court determines that the government has met its burden or burdens, the Court must impose "the

14  least restrictive further condition, or combination of conditions" that "will reasonably assure the

15  appearance of the person as required and the safety of any other person and the community." *Id.*

16  § 3142(c)(1)(B).

## IV.   ARGUMENT

18        The government provides inadequate support for both bases of its motion. Mr. Mattson is

19  neither a flight risk nor does he pose a danger to anyone else. While the government has the

20  burden to demonstrate that Mr. Mattson poses a flight risk or is a danger to others, and has not

21  met that burden, Mr. Mattson refutes the government's assertions below to the best of his ability

22  given the late notice of the government's motion and late production to the defendant. The

23  government did not produce any documents to the defendant until late on the evening of May 24,

24  2025, in the middle of a holiday weekend. Even then, the production contained no evidence that

25  Mr. Mattson intentionally deleted files from his laptop on May 22, 2024, as the government

26  contends. Evidence related to the alleged laptop deletions – as weak as it is – was inexplicably not

27  produced until the evening of May 26, 2025, four days after the detention hearing. To the extent

28  the Court wants further information which the defense has not been able to fully investigate, it

1    should hold such delays against the government for its delinquency – not by holding Mr. Mattson

2    any longer.

3        **A.    The Government Fails to Show That Mr. Mattson Is a Flight Risk**

4        **1. The "nature and circumstances" of the charges do not warrant pretrial detention.**

5    The government charges Mr. Mattson with wire fraud, money laundering, and obstruction of

6    justice. ECF No. 1. These are not the sorts of offenses that the statute contemplates should result

7    in pretrial detention. There are multiple recent examples in this District where criminal

8    defendants facing wire fraud and charges based on significant allegations of fraud and obstruction

9    of justice were not subjected to pretrial detention. Instead, in keeping with the mandates of the

10   Bail Reform Act, the courts fashioned conditions of release suitable to each defendant's situation.

11   These prominent examples include the following:

| Case | Charges | Release Conditions |
|------|---------|--------------------|
| *United States v. Holmes*, No. 5:18-cr-00258-EJD (Holmes) | Wire Fraud | Released on a $500,000 unsecured $500,000 bond in a case involving alleged impact on patient health care. Travel permitted outside of N.D. Cal. to D.D.C. in order to meet with counsel by agreement of the parties. ECF No. 22 at 8. |
| *United States v. Holmes*, No. 5:18-cr-00258-EJD (Balwani) | Wire Fraud | Released on a $500,000 unsecured bond in a case involving alleged impact on patient health care. Travel permitted outside of N.D. Cal. to W.D. Wash. in order to meet with counsel by agreement of the parties. ECF No. 22 at 8. |
| *United States v. Lynch*, No. 3:18-cr-00577-CRB | Wire Fraud, Securities Fraud | Defendant not detained in the largest fraud case in the history of the district in terms of loss ($11.7 billion) even though the court found defendant posed a serious flight risk because all assets, family, and property were based in the United Kingdom and defendant had previously fought extradition from the United Kingdom. ECF No. 165. Travel not permitted and foreign national defendant with no ties to District released to personal residence in San Francisco. ECF Nos. 157, 164. |
| *United States v. Hussain*, No. 3:16-cr-00462-CRB-1 | Wire Fraud, Criminal Forfeiture | Defendant in the largest fraud case in the history of the district in terms of loss ($11.7 billion) voluntarily chose to come to United States to face trial. Despite concerns raised by the government at status conference, the court concluded that |

| Case | Charges | Release Conditions |
|---|---|---|
| | | there was no serious risk of flight even where defendant was a foreign national with few ties to the United States. ECF. No. 34. |
| *United States v. Stevenson*, No. 3:21-cr-00018-CRB-1 | Wire Fraud | Defendant was a resident of W.D. Mich. Defendant was released on home confinement in W.D. Mich. and later surrendered his passport. ECF No. 14. |
| *United States v. Gerrans*, No. 3:18-cr-00310-EMC | Wire Fraud, Obstruction of Justice, Witness Tampering | Release conditions imposed. ECF No. 69. |
| *United States v. Wallach*, No. 3:20-cr-00365-MMC | Wire Fraud | Release conditions are not public. The court approved defendant's wife as surety. ECF No. 4. |
| *United States v. Sullivan*, No. 3:20-cr-00337-WHO | Obstruction of Justice, Misprision of a Felony | Government moved to have bond secured with property. Release conditions are not public. Defendant surrendered his passport. ECF No. 16. |
| *United States v. Levandowski*, No. 3:19-cr-00377-WHA | Trade Secrets Theft | Government argued that defendant posed a serious flight risk due to his wealth and status as a dual citizen but agreed to release conditions. ECF No. 19. |
| *United States v. Andrade*, No. 3:20-cr-00249-RS-1 | Wire Fraud, Money Laundering | Defendant was released after initial appearance in Texas. ECF No. 12. |
| *United States v. Kim*, No. 3:20-mj-70923-MAG | Wire Fraud | Defendant was released after initial appearance and not permitted to leave the United States. ECF No. 6. |
| *United States v. Beckman*, No. 3:25-cr-00012-RFL (Beckman) | Wire Fraud, Securities Fraud | Release conditions imposed. ECF No. 9. |
| *United States v. Beckman*, No. 3:25-cr-00012-RFL (Lau) | Wire Fraud, Securities Fraud, Obstruction | Lau was accused of attempting to delete hundreds of files during a pending grand jury investigation. Release conditions imposed. ECF No. 10. |

Here, the government fails to articulate the logic that would have Mr. Mattson detained pending trial. The government merely points to the Federal Sentencing Guidelines in concluding that Mr. Mattson has an incentive to flee. ECF No. 6 at 12-13. But courts in this District have not so interpreted the statute. Courts found no need to detain Elizabeth Holmes, Ramesh Balwani, Michael Lynch, Sushovan Hussain, and others. Holmes stood accused of two counts of conspiracy to commit wire fraud and ten counts of wire fraud for defrauding investors of hundreds of millions of dollars. Michael Lynch faced seventeen charges, including fourteen

1    counts of wire fraud. These defendants also faced wire fraud charges carrying statutory

2    maximums of 20 years in prison. By contrast, Mr. Mattson faces fewer counts of wire fraud than

3    either Holmes of Lynch and the alleged losses are far less.

4         Nor does the statutory text support detention here. The Bail Reform Act contemplates

5    pretrial detention where the defendant is charged with violence or other serious misconduct

6    involving minor, drugs, or sex trafficking. This factor reads in full: "the nature and circumstances

7    of the offense charged, including whether the offense is a crime of violence, a violation of section

8    1591 [i.e., sex trafficking], a federal crime of terrorism, or involves a minor victim or a controlled

9    substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). None of these

10   crimes is alleged here.

11   **2. The weight of the evidence does not support pretrial detention.**

12   At this point, the allegations against Mr. Mattson are just that – allegations. The government

13   already has gotten a number of facts wrong. A non-exhaustive list of facts that have been

14   misrepresented so far in this case include but are not limited to the following (**See Exhibit B**):

15   1.  The centerpiece of the government's motion is the $9,104 found in Mr. Mattson's vehicle

16       at the time of his arrest on May 22, 2025. The government concludes that this is evidence

17       of "unaccounted-for assets," which could give Mr. Mattson means to flee or to solicit new

18       investors. ECF No. 6 at 11, 17. The government included this in its brief and mentioned

19       this fact at Mr. Mattson's initial appearance before the Court on May 23, but failed to tell

20       the Court that this cash was recovered in a number of envelopes. The government also

21       failed to inform the Court or counsel for Mr. Mattson that there was writing on the

22       envelopes. It did produce photographs of these envelopes to counsel for defendant

23       following a demand for photographs of the envelopes. One of the envelopes substantiates

24       what Mr. Mattson's counsel informed the Court of during the initial hearing – that the

25       cash **is a monthly rent collection:**

26

27

28



Rather than an "unaccounted-for asset," the innocuous and correct explanation for the cash is that it is the expected monthly income from rental properties and that was known to the government. **Exhibit C, photos**

2. The government alleges that the LeFever Mattson bank account ending in -1059 was "controlled by Mattson" (ECF No. 6 at 6) and that Mr. Mattson allegedly used this account to deposit funds from and to pay "off-books" investors (*id.* at 14). Even a cursory review of the bank statements from this account shows that LeFever Mattson's other principal, Tim LeFever, also signed checks drawn on this account. One such example is below:

1
2
3
4
5
6
7
8
9
10
11



12  The signature on the check in the upper lefthand corner is Mr. Mattson's. The other

13  signatures belong to Mr. LeFever. Whatever the government's allegations about the uses

14  of this account, the implication that Mr. Mattson "controlled" it and used it to conceal a

15  fraudulent scheme is not supported by the evidence. There are no credible allegations of

16  overseas accounts or hidden funds to perpetrate the alleged fraud in this case. Documents

17  show the -1059 account was known, and used, by Mr. Mattson's business partner and by

18  multiple employees working for Le Fever Mattson's property management entity, Home

19  Tax Services.

20  3.  The government represents that Mr. Mattson and KS Mattson Partners have failed to file

21  tax returns since at least 2017. ECF No. 6 at 6. This is also false. Both Mr. Mattson and

22  KS Mattson Partners have filed tax returns through tax year 2022and copies of those tax

23  returns are held by counsel for Mr. Mattson.[1]

24  4.  As for the government's allegations regarding deletion of files from Mr. Mattson's laptop

25  computer, here, too, the evidence known at this time does not support the implications the

26  government wishes to draw. Prior to the time the government alleges that documents were

27  _____

28  [1] For obvious reasons, tax returns will not be attached to this publicly filed document. But counsel for Mr. Mattson can confirm being in possession of such documents.

1  deleted from the "Recycle Bin" on the laptop, Mr. Mattson provided the computer to

2  counsel at 1111 Broadway for the purpose of preserving documents contained on it. It

3  strains all reasonable belief to believe that Mr. Mattson somehow deleted files with the

4  purpose of obstructing justice during the time or after he had instructed his counsel to

5  preserve documents. There is no evidence that Mr. Mattson intentionally deleted files

6  from his computer to obstruct justice and the government has provided none.[2]

7     5. As pointed out during the initial argument, the government's claims in this case will fail.

8        The government cannot prove that Mr. Mattson is responsible for any LPs receiving their

9        rightful interests from LM. Rather, it was after Mr. LeFever and Mr. Smith kicked Mr.

10       Mattson out of LM that LPs failed to be taken care of. While the government asserts that

11       this was a Ponzi scheme, the math does not add up. While counsel for Mr. Mattson does

12       not yet have full records, preliminary analysis shows approximately $15 million more

13       flowing into LM's 1059 account than flowing out. If the government has a different

14       analysis, it has not shared it with Mr. Mattson or with the Court. If accurate, that would

15       mean 1) this is the first Ponzi scheme in history to cost the perpetrator far more than he

16       stole from others, and 2) the government's claims of missing assets and commingled

17       proceeds of the crime are false because any money taken from LM was returned to LM

18       and far more.

19 Not only do these facts weigh against pretrial detention here, but they also call into question the

20 adequacy of the government's investigation. The Court should not be led astray by the

21 government's misrepresentations.

22

23

24

25

_____

26 [2] The government maintains the burden both to show that pretrial detention is warranted based on
the weight of the evidence and, ultimately, to prove that Mr. Mattson obstructed justice. The

27 defendant need not produce any evidence here because production would implicate Mr. Mattson's
Fifth Amendment privileges, the attorney-client privilege, and the work product doctrine. Again,

28 the government chose the time and the manner of bringing charges and arresting Mr. Mattson.

1    **3.  Mr. Mattson's behavior during the pendency of the investigation and his**

2    **substantial ties to the community negate the risk of flight.**

3         As the government concedes, Mr. Mattson has known about the government's

4    investigation of his activities for over a year. A search warrant was executed at his home on May

5    24, 2024. Since then, Mr. Mattson has maintained his residence in Sonoma and carried on as best

6    he can with his daily life, despite intense media scrutiny. Mr. Mattson is a lifelong resident of

7    Northern California, where his wife, four children, and grandchildren reside. Even where a

8    defendant was a foreign national, courts in this District have not seen fit to impose pretrial

9    detention. *See, e.g.*, *United States v. Lynch*, No. 3:18-cr-00577-CRB, ECF No. 2 (N.D. Cal.);

10   *United States v. Hussain*, No. 3:16-cr-00462-CRB-1, ECF No. ## (N.D. Cal.).  The government's

11   reference to the *He* case (CR. 24-00329-CRB) in their detention memorandum does not mention

12   that Ms. He was ordered detained because she is a citizen of China with substantial ties to China

13   and only thin ties to the U.S. including no fixed residence where she has resides for any

14   substantial period.  ECF 32.

15       On top of all that, Mr. Mattson has no criminal history. He was not on probation, parole,

16   or other release at the time of his arrest. He gave his passport to his attorney, who continues to

17   hold it. As the government well knows, he owns several properties in Northern California.

18   Mr. Mattson's actions over the past year demonstrate that he is not a flight risk.

19   **B.    The Government Fails to Show That Mr. Mattson Is a Danger, Let Alone by**
     **Clear and Convincing Evidence**

20

21       The government utterly fails to meet its burden of showing by clear and convincing

22   evidence that Mr. Mattson would pose any danger should he be released pending trial. The risk of

23   harm is virtually non-existent. According to the government, Mr. Mattson remains an "economic

24   danger" because he may still solicit clients for investments. ECF No. 6 at 17-18. There is

25   absolutely no evidence that he would do so. The government characterizes the laptop and flash

26   drives seized from his vehicle at the time of his arrest as "tools of the trade for someone who was

27   soliciting new investor business." *Id.* at 17. But it has no evidence that this ordinary consumer

28   technology was, in fact, being used in that manner or that Mr. Mattson had any intension of so

1  using it. Nor is it plausible that with the media scrutiny that has focused on Mr. Mattson that he

2  could solicit new business.

3    As for the government's argument regarding the firearms registered to Mr. Mattson, there

4  is again no evidence that he poses any danger to anyone. He has no history of violence or any

5  criminal history at all. For the avoidance of all doubt, Mr. Mattson is willing to surrender the

6  firearms to appropriate custodians during the pendency of the charges against him. As the

7  government concedes, the danger that Mr. Mattson could pose – however theoretical or

8  speculative it may be – can be mitigated by conditions of release. ECF No. 6 at 18.

9  **V.    CONCLUSION**

10    For these reasons, the Court should deny the government's motion and order Mr. Mattson

11  be released subject to appropriate conditions to prevent the risk of flight or danger to others.

12

13  Dated: May 27, 2025                          LAW OFFICE OF RANDY SUE POLLOCK

14

15                                               By: /s/

16                                               RANDY SUE POLLOCK
                                                 Attorney for Defendant
17                                               Kenneth W. Mattson

18

19

20

21

22

23

24

25

26

27

28