# EXHIBIT C

This transcript was exported on Jun 03, 2025 - view latest version here.

At 9:00 AM. Okay. Time waiver, anything?

David Ward:
Yes, Your Honor. The government would move-

THE COURT:
Oh, that's right. Sorry.

David Ward:
Yeah.

THE COURT:
All right. Anything further?

Taylor F.:
No, Your Honor.

THE COURT:
Great. Thank you.

Taylor F.:
Thank you.

David Ward:
Thank you, Your Honor.

THE COURT:
All right. I know we have a full audience here. The call will be [inaudible 00:17:02] Rodriguez next, Feister after that, and then the Matson detention hearing last. I don't know. They didn't... Other defendants aren't back there? Okay. All right. Sorry about that. We're going to take the Matson detention hearing. Now calling US... Excuse. 25CR126, USA versus Matson. State your appearances.

Ken:
Good morning, Your Honor. Christopher Lee and Kiel Bhagat, United States.

THE COURT:
Okay. Thank you.

Randy Sue Pollock:
Good morning, Your Honor. Randy Sue Pollock appearing on behalf of Mr. Matson, who is present.

THE COURT:
Okay. Thank you.

William P.:

William [inaudible 00:18:23] also for Mr. Matson, Your Honor.

THE COURT:

Okay. Thank you.

Elise Johnson:

Good morning, Your Honor. Elise Johnson with the US Pretrial Services.

THE COURT:

Okay. Thank you. All right. Let me make sure I get my paper in order. Is there anyone from the US Attorney's Office, the victim?

Ken:

Yes, Your Honor.

THE COURT:

And is that person in the audience?

Ken:

They are, Your Honor.

THE COURT:

Great. Can you raise your hand please? Stand up.

G:

Fernanda, can you?

THE COURT:

Yeah. Just somebody from... Okay. I just want to make sure that the people in the audience know that there's an individual at the US Attorney's Office that can be a point person for you. This is one of the few opportunities that you may have to see people so know that that... You may already be in contact with somebody from that office, but now you have a face back there. Okay? All right. Let me make sure that I have all the paper, yeah, and to everybody. I have Mr. Matson's opposition, government's reply. I have the Pretrial Services report. And I have numerous victim reports as well. Those were filed under seal. And I believe under the Crime Victim Rights Act that it's warranted that they remain under seal. It's been indicated to me that there are nine victims who would like to address the court. I have a list of those names. At what point do you want me to hear from the victims? Obviously before I make a decision.

G:

Thank you, Your Honor. I think what may make sense is some of the victims were here at the last court appearance and some were not. If I may, I think for background, including the benefit of the new victims in the courtroom may make sense to describe why we're here today. But I think to answer the court's

question, we believe the victims should speak first and then the court should take argument from Counsel.

THE COURT:

Okay. Defense, any feedback? How do you want to proceed?

William P.:

Your Honor, however you seek fit is fine with us.

THE COURT:

Okay. All right. All right. Seems like we should do that then. Okay. Let's see here. I do have a question that I don't think will change my decision, but it was raised in the papers that were filed last night, and that is there continues to be a large dispute over the proffers regarding the laptop. And I just want to make sure what I read, because I read it maybe quickly, and that is the government's proffer to me was that, and if it's not obvious, the laptop was important to me in granting the government's request for a detention hearing, and I'm still inclined to proceed with a detention hearing, but that the proffer that was made to me was that the imaged laptop, which was supposedly imaged, did not... There was no evidence that anything had been imaged, that there was no copy of the disk provided to the SEC. I believe Mr. Bhagat was the one who made that reference to me at the hearing. Maybe you want to remind me what you said with respect to... If there was some copying that was done, we never saw it.

G:

So yes, Your Honor. So the government's proffer was that according to the FBI's forensic analysis, we... So let me step back. We seized the laptop on May 24th of 2024-

THE COURT:

Well, first let's start with what you represented to me and then maybe things have changed. I don't know. If not, that's great.

G:

No. They haven't, Your Honor.

THE COURT:

Great. Perfect. Okay.

G:

So the government seized the laptop on May 24th of 2024. The FBI's forensic analysis, which happened after obviously we seized it, showed that there were a number of files, thousands of files, deleted on May 22nd, 2024 from that laptop when we obtained it. [inaudible 00:22:22] said at the hearing to the court and Ms. Pollock then wrote a similar thing in her papers last night that the reason that Mr. Matson had the laptop at his lawyer's office that day was because his civil lawyers wanted to image it. So there's apparently an image that the civil lawyers have that we haven't seen, but the image that we made from the laptop that we received on May 24th showed that those 10,000 files had been deleted by someone using the account MRSKWM, which we know Mr. Matson to use in his email addresses and other things.

This transcript was exported on Jun 03, 2025 - view latest version here.

**THE COURT:**

Okay. And the takeaway from that proffer is that if the defendant's response is that they were just going to image something, there would be a duplicate somewhere. The government thinks it should see it. It should have seen it somewhere.

**G:**

Correct.

**THE COURT:**

In the production either to the SEC before or whatever.

**G:**

Correct. And our understanding of the... We've seen the SEC subpoena. That served one of the bases of the obstruction of justice charge. The SEC subpoena called for all relevant information in kind of this fraud. We understand from the SEC that they have not received any sort of digital evidence from Mr. Matson.

**THE COURT:**

Okay. Great.

**G:**

That's the proffer.

**THE COURT:**

Okay. I'll turn it over to the defense now. You indicated in your papers that you might've seen or been provided more information over the weekend and you took an even stronger position in your papers that you felt like the laptop, there was no evidence of a deletion or obstruction. So you can go ahead and respond to... My understanding is correct based on what Mr. [inaudible 00:23:55] just said. So what would you like to add if anything, or respond?

**William P.:**

Yeah, Your Honor, I don't know if you want to wait until we get into the weeds of this-

**THE COURT:**

No. I want to hear on this because this is an important point and predicated my decision to grant the government a detention hearing. So if you have something that is drastically different than what was presented to me or in response to what the government just said, then it might affect what I might rule on whether or not there should be a detention hearing.

**William P.:**

Understood, Your Honor. So-

**THE COURT:**

Okay.

This transcript was exported on Jun 03, 2025 - view latest version here.

William P.:

Yeah. So Mr. Matson on May 22nd, 2024 did in fact go to his lawyer's office, and at that office we understand that the state of the laptop was preserved. The timing of the supposed or alleged deletions that the government has would be after Mr. Matson went there and folks were working on the laptop. I hope the court can appreciate that at this juncture where we are now because the government has alleged that this is an act of obstruction of justice, which that will not bear out and I'll get into some of the facts, but if I talk a little circumspect, hopefully the court understands that at this point the government has alleged obstruction of justice. There are lawyers, not the lawyers here, today involved in that process. They have lawyers now. There are issues around attorney-client privilege, there are issues around work product privilege, and there are issues around the Fifth Amendment privilege that unfortunately are wrapped up in what the government, as I'll get into in a minute, without substantial evidence or sufficient evidence has alleged as an obstruction of justice.

THE COURT:

Okay.

William P.:

On May... So just-

THE COURT:

Understood.

William P.:

If the court has further questions, just please appreciate what I'm dealing with.

THE COURT:

Understood. You will tell me you can't answer it or that you'd rather not answer it and I will respect that.

William P.:

I will tell you. If we have to, maybe I'll answer it, but I would need to consider it.

THE COURT:

Sure. Okay.

William P.:

So on May 22nd, 2024, Mr. Matson did deliver the laptop. The state of the laptop we understand but Counsel in the courtroom today do not have what was copied, but it was copied, my understanding is that the files were in fact preserved. I under... Yeah.

THE COURT:

So this is a question that I have. The government's proffer to me last week and today is that if in fact there was a duplicate image of the hard drive of the laptop, they've not seen it. All they have before them was that there was a deletion of files. So is there anything you can tell me about that in fact it was imaged?

This transcript was exported on Jun 03, 2025 - view latest version here.

**William P.:**

Yes. Sure.

**THE COURT:**

And that exists somewhere?

**William P.:**

Yes, Your Honor.

**THE COURT:**

Okay.

**William P.:**

It was image that exists. As I noted a moment ago, where we are now, and again, neither I nor my co-counsel here in court, Ms. Pollock, have the image, but we also understand, or the copy, that it implicates these various privileges that we've talked about.

**THE COURT:**

Sure.

**William P.:**

Had we had a conversation with government counsel about this some time ago, perhaps we would have resolved that. Where we are now is where we are now. And they have the burden of proving this case. What I can tell the court is, and we finally got access to the discovery related to this issue on Monday evening, and so I've had some time to look at this and to consult, the RCFL report that the government is relying on for these alleged deletions makes reference to the recycle bin. The recycle bin, as I understand it, indicates files that were removed from the system. Let's put it that way. And they're in a long list. And RCFL looked at it according to the report and found all these files in a recycle bin.

Significantly, according to the report and multiple references, the file path is an E file, E as in the letter E. My understanding is that is an external... For this particular device would be an external drive. In other words, what is shown as being allegedly deleted was not removed from the laptop in the instances reflected that I see in the RCFL report. They were removed from an external device. In other words, what was copied to an external device on May 22nd, 2024 at the location they've indicated, which is attorneys' offices, things were removed from an external drive, not necessarily from the laptop, though, utilizing the laptop. And I'll just... So that would be consistent with somebody making a copy of the laptop and then for whatever reason, perhaps removing items from the external drive, this E drive.

To the extent that the recycle bin shows all these deleted files, let me just... As a brief aside, if anyone really wanted to hide files, you wouldn't leave the recycling bin. You'd hit one button that says Clear Recycling Bin and you would clear that out and then there'd be no indication of that. And so there's really not a sign of an effort to obscure here. And by the way, everything we're talking about is not Mr. Matson and the government can't show it was Mr. Matson. It's other individuals. I-

PART 1 OF 5 ENDS [00:30:04]

This transcript was exported on Jun 03, 2025 - view latest version here.

William P.:

-- can't show is Mr. Mattson's other individuals. I went back to look, in fact, at whether or not items they say were deleted, apparently from this external drive, were deleted from the computer itself. And I'll just hand up to the Court, but I've got copies of something that the government in its brief, the one that it filed the night that they arrested Mr. Mattson and before we came here the first time, Your Honor, the government listed file names that it claims were deleted. I looked at the...

THE COURT:

And let's be precise here. You're taking position, nothing was deleted from the laptop. The laptop was used in the imaging, but nothing was deleted from the laptop. It was deleted from an external drive, and that external drive was seized from Mr. Mattson, I presume.

William P.:

No, Your Honor.

THE COURT:

Okay.

William P.:

The external drive, we believe was... Here's what I'm saying, Your Honor-

THE COURT:

Yes.

William P.:

Because Your Honor's putting in a little bit of absolutes. What I'm saying is-

THE COURT:

I understand. I understand.

William P.:

... given getting stuff Monday night, getting ready for the hearing today, this is what we have been able to locate so far. And this is just an example, but this is what the government produced to us, what I handed up, is apparently what they got off of the laptop in its discovery production. This is a screenshot of what they sent us digitally, but if the Court takes a look at the first PDF on the left-hand corner, upper left-hand corner of what I handed up, that exactly matches the file name of the first file that we could identify because they redacted. So in their brief on... Whatever day that was last Thursday or Friday, I think Thursday, they listed files that they claim were deleted. They redacted names from them. So I looked for one that didn't have redactions. It's hard to pony up what they say was deleted with what we have gotten from them because they put them in bullet points.

And so it's got to be phrased exactly accurately, but I looked at the first, we looked at the first, and this first file they listed without redactions as items that were deleted from the laptop is 2009 Divi Divi tree, LP form 1065-only.PDF. That's the exact same file that apparently is here on the laptop. I don't have

Case 3:25-cr-00126-JST    Document 33-1    Filed 06/09/25    Page 9 of 12

This transcript was exported on Jun 03, 2025 - view latest version here.

what was copied. What I can tell the Court is that I have been informed that the files that the government says-

THE COURT:

Do you believe the government has the imaged copy?

William P.:

I don't know what they have. I don't know what they copied. I don't know how their copying went. There's another important point here, just so the Court understands. In the RCFL report, it indicates that certain items, the examiner could not locate, in part because if the computer's running, things can be, I guess lost or deleted. And apparently, though they seized the device on May 22nd of 2024, the examiner did not examine it until January, February of 2025. And in the interim, according to the report, the device was left plugged in and powered on, or powered on, I assume it would have to have been plugged in. And so according to the examiner, things could have been lost. So I don't know what they do or don't have exactly, but I looked at what they gave us to see, and the exact same file name that they say is the first file... I looked at the first one. We got it recently.

THE COURT:

Right.

William P.:

And it appears to still be on the laptop in their possession. And so I question whether these deletions ever occurred on the laptop versus utilizing the laptop to an external device. The other part of this that I'll raise, Your Honor, is that, as I've said, it has been represented to me that the items have been preserved, let's put it that way. And so this is not Mr. Mattson deleting files off his laptop. He would've had to have gone to his lawyer's office, decide to do it at the lawyer's office, and oh, by the way, plug in an external device, and then delete off of an external device. It makes absolutely no sense, Your Honor. This is not an obstruction case. This is not a charge that's ever going to get to trial, I don't believe. Again, this is preliminary, and in any event, the evidence, my understanding is, again, I have not looked at it, but my understanding is the evidence is preserved. They've said, "Well, give it to us." I've said, "There's privileges. We're going to have to work through this."

THE COURT:

Right.

William P.:

But this is your burden. You've brought this case, you decided when to bring this case, and this is just... I'm working on 24 hours of my investigation here, our investigation here, versus however long they had to do all of this. And this is not an obstruction charge, Your Honor. And so if there's any other specifics that the Court has concerns about, I'm happy to address them, but I think that's the state of the alleged obstruction from a laptop.

THE COURT:

Okay. All right. That's very helpful. Thank you.

This transcript was exported on Jun 03, 2025 - view latest version here.

G:

Your Honor, may I respond, please?

THE COURT:

Yeah, but I don't know if I need a... We're not going to decide the issue of that charge right now. I needed enough to figure out if the proper still proffer that was provided last week still holds, and I'll give you an opportunity to respond, but I don't necessarily need a point-by-point refutation. I did hear more details today that I did not appreciate. For example, the external drive. Again, I don't know what it is, and maybe I should just tell you what I'm thinking, and that is that the proffer that was given to me earlier was obstruction. The defense has been very clear. They don't believe that's a real charge, but that's up to you to fight later on.

But given the other instances where the government has raised, the covering up cameras, the money in the car, while I will say that isn't the strongest evidence for me, I feel like the alleged deletion of files is a much stronger reason to give you the detention hearing. I don't think I'm going to reverse myself and say that the government hasn't met its burden to get a detention hearing today. With that said, go ahead, Mr. [inaudible 00:37:01].

G:

So yes, Your Honor. So three quick points. I can't speak to the external drive or what drive the files were deleted off of. I know that the forensic report says that the files were actually emptied from their cycle bin. It's not just that Mr. Mattson or someone placed it in their cycle bin. The report indicates that they were actually emptied, deleted from their cycle bin. So that's number one.

William P.:

Your Honor, I'm sorry, I don't mean to interrupt, but can I just inquire where in the report that is? Because that's contrary to my reading of the report, but [inaudible 00:37:31] to look at.

G:

I don't have the report in front of me. That's my understanding-

THE COURT:

Well, he has the report. Mr. Frentzen has the report. Again, I'm hoping not to spend a lot of time. I just needed to be satisfied that what I was reading in the papers this morning that you were learning much more detail than what was delivered to the Court. I wanted to make sure that I could still support my ruling that the government satisfied its burden on the proffer to get a detention hearing today.

William P.:

And again, Your Honor, my understanding is the recycle bin shows other items having been deleted, but as I said-

THE COURT:

But the recycle bin is on the laptop.

William P.:

This transcript was exported on Jun 03, 2025 - view latest version here.

Correct.

THE COURT:
Correct?

William P.:
Yes.

THE COURT:
That's undisputed. And files were there at some point and were no longer there on the laptop. Whether or not they were removed from a hard drive, external drive, at some point, they were on the laptop.

William P.:
My understanding is-

THE COURT:
In some capacity.

William P.:
My understanding, Your Honor, from handing that up-

THE COURT:
Yes.

William P.:
Is that they may well still be on the laptop, though deleted from an external drive.

THE COURT:
Okay.

G:
So Your Honor, I'm just looking at Page 4 that says, "Upon removal from the recycle bins, files and folders are deleted, but may still be recoverable." And then the examiner talks about his attempts to recover the files, which is sort of what I want to get into next.

William P.:
Your Honor, that's a generic reference to how the recycling bin works in general. It's not saying that's what happened in this case. What the examiner did was actually look at the recycle bin, and then makes a point that items can be retrieved from the recycling bin, but not if they were on an external device and the external device is no longer attached. And he says, "I look for Pathy and it's no longer there." And he then says, "You can also lose things from the recycling bin because it's been on..." Some people have auto set or whatever. They plug this thing in in May of 2024. They didn't examine it until January, February of 2025. And so that's the examiner's description of, "I see things deleted in the recycling bin, but often, you can't retrieve that. And in part, because if the computer's been on for 10 months," which

This transcript was exported on Jun 03, 2025 - view latest version here.

is how long it's been on. So I don't know why any of that would be in the report, but for what the examiner's looking at is what's in the recycling bin and is still showing up in the recycling bin.

G:

So Your Honor, the examiner was able to identify a particular time period and a particular date that the files were actually deleted from the recycle bin. The stuff that's in the report about not being able to recover later is because as part of their examination, as part of their work in this case, the examiner's actually tried to use forensic tools to recover the files that were deleted, and there's various mechanisms they can do that with. One of them is called carving, and the stuff in the report about the laptop was left on for a little bit, that helps to explain why it was difficult for the examiner to recover the files that were deleted.

Mr. Frentzen just handed you a screenshot of these PDFs. These were the remnants of files that the examiner was able to recover through his work. This is all he could get. Your Honor, I would submit to you, if you try to click on those files and open them, you'll not be able to open them because the examiner was not able to recover through their forensic processes the files that were actually in existence at the time of deletion. And that's-

THE COURT:

The government's position that because your examiner was unable to open them, that they have been deleted?

G:

I think that they have been deleted as the... They have been deleted within the meaning of 1519, which is the charge.

THE COURT:

Let me ask this question too. Do they actually have to be deleted to prove obstruction?

G:

No, Your Honor. Alteration is enough.

THE COURT:

Right. Okay. I think I'm satisfied with where I want to go today. Thank you for giving me the information about the laptop, and now I think you want to call the victims?

Speaker 11:

Yes, Your Honor.

THE COURT:

Okay.

Speaker 11:

We would note that there are more than 50 victims present in the Courtroom. There were approximately 75 victim statements submitted, which the Court has now in is possession, some of which