RANDY SUE POLLOCK (CA SBN 64493)
rsp@rspollocklaw.com
LAW OFFICE OF RANDY SUE POLLOCK
286 Santa Clara Avenue,
Oakland, CA 94610-2624
Telephone: 510.763.9967
Facsimile: 510.380.6551

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH W. MATTSON,<br><br>　　　　Defendant. | Case No. 4:25-cr-00126-JST<br><br>**NOTICE OF MOTION AND MOTION TO MODIFY PRE-TRIAL ASSET RESTRAINT**<br><br>Date:　July 18, 2025<br>Time:　2:00 p.m.<br>Judge:　Hon. Jon S. Tigar<br>Ctrm:　6 – 2nd Floor<br><br>Indictment Filed: May 13, 2025<br>Trial Date:　None set |

1  **NOTICE OF MOTION AND MOTION TO MODIFY PRE-TRIAL ASSET RESTRAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 18, 2025, at 2:00 p.m. or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California (Courtroom 6), located at 1301 Clay Street, Oakland, California 94612, Defendant Kenneth W. Mattson will, and hereby does, move the Court to modify the government's pre-trial asset restraints.

The grounds for this Motion include that the pre-trial asset restraints violate the defendant's Sixth Amendment right to counsel, as explained in the accompanying Memorandum of Points and Authorities.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration in support thereof, the pleadings and other files herein, and such other written and oral argument as may be presented to the Court.


Dated: June 25, 2025                                 LAW OFFICE OF RANDY SUE POLLOCK


                                                     By:   /s/ Randy Sue Pollock
                                                           RANDY SUE POLLOCK

                                                           Attorney for Defendant
                                                           KENNETH W. MATTSON

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | LEGAL STANDARDS | 4 |
| IV. | ARGUMENT | 5 |
| | A. | The Pre-Trial Restraint on Untainted Assets Implicates Mr. Mattson's Sixth Amendment Right to Counsel. | 5 |
| | | 1. Mr. Mattson's Assets Are Untainted. | 5 |
| | | 2. But for the Restraint on Mr. Mattson's Assets, Mr. Mattson Can Afford to Hire Counsel of His Choice. | 7 |
| | B. | In the Event of a Hearing, the Government Cannot Show Probable Cause. | 9 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bundy*,
    852 F.3d 945 (9th Cir. 2017)........................................................................................... 4

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,
    67 F.3d 766 (9th Cir. 1995)............................................................................................. 8

*Kaley v. United States*,
    571 U.S. 320 (2014)..................................................................................................... 4, 9

*Luis v. United States*,
    578 U.S. 5 (2016)...................................................................................................... 4, 6, 8

*Mangaoang v. Special Default Servs., Inc.*,
    427 F. Supp. 3d 1195 (N.D. Cal. 2019) .......................................................................... 8

*Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*,
    No. 2:18-cv-06742-RGK-PJW, 2019 WL 8892585 (C.D. Cal. Dec. 20, 2019) ............. 5

*United States v. Lacey*,
    No. CR-18-00422-001-PHX-DJH, 2021 WL 5882638 (D. Ariz. Dec. 10, 2021) ....... 4, 9

*United States v. Shelton*,
    No. 23-CR-00258-JSC-1, 2024 WL 4520944 (N.D. Cal. Oct. 17, 2024).................... 8

*United States v. Unimex, Inc.*,
    991 F.2d 546 (9th Cir. 1993).......................................................................................... 4

*Wheat v. United States*,
    486 U.S. 153 (1988)................................................................................................... 4, 8

**Statutes**

18 U.S.C.
    §152(7)........................................................................................................................... 2
    § 981(a)(1)(C) ................................................................................................................ 2
    § 982(a)(1)...................................................................................................................... 2
    § 1343 ............................................................................................................................. 2
    § 1519 ............................................................................................................................. 2
    § 1957 ............................................................................................................................. 2

28 U.S.C.
    § 2461(c) ........................................................................................................................ 2

## I. INTRODUCTION

The Sixth Amendment to the Constitution guarantees a criminal defendant the counsel of his choice. Nonetheless, the government has imposed improper pre-trial asset restraints that impair Kenneth Mattson's constitutional right to counsel. While attempting to keep Mr. Mattson behind bars pending trial, the government simultaneously moved to record notices of lis pendens against Mr. Mattson's properties. Doing so has deprived Mr. Mattson of the means to pay his counsel. Mr. Mattson seeks to use these assets to fund his legal defense against the criminal charges against him. While Mr. Mattson should be able to hire counsel of his choice through trial, the notices of lis pendens effectively freeze Mr. Mattson's untainted assets and constrain his financial ability to defend himself. Moreover, the government seeks to have an entirely separate property at 210 La Salle Avenue in Piedmont, California, posted as bail, which would further restrain Mr. Mattson's available assets. The Court can avoid asset restraint issues as to this property by accepting the posting of an alternative property.

The government's theory for its pre-trial restraint on assets is that the properties will be subject to forfeiture if it proves its allegations. To date, however, the government has failed to provide *any* evidence that the restrained properties are traceable to the allegations in the indictment. The indictment contains no allegations that investor funds were used to purchase or finance any of the restrained assets. Nor does the indictment allege that Mr. Mattson improperly attempted to shield these assets from post-trial forfeiture proceedings. The government has failed to establish probable cause that the assets should be restrained pending trial. As it stands, these unsupported pre-trial restraints will impair Mr. Mattson's ability to afford his counsel of choice through trial. The Court should modify the pre-trial asset restraints to protect Mr. Mattson's Sixth Amendment rights.

## II. BACKGROUND

The government alleges that Mr. Mattson engaged in a Ponzi scheme involving investments in dozens of properties. On the government's theory, Mr. Mattson made misrepresentations to investors who believed they were investing in limited partnerships managed by LeFever Mattson LP ("LM"), while instead Mr. Mattson used their investments for other

purposes. ECF No. 1, ¶¶ 1-2. On May 22, 2025, Mr. Mattson was arrested and the indictment against him was unsealed. ECF No. 4. Mr. Mattson was charged with seven counts of wire fraud under 18 U.S.C. § 1343, ECF No. 1, ¶¶ 44–46; one count of money laundering under 18 U.S.C. § 1957, *id.* ¶¶ 47–50; and one count of destruction of evidence under 18 U.S.C. § 1519, *id.* ¶¶ 51–62.

The government also alleges forfeiture upon conviction under 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c) for two properties owned or controlled by Mr. Mattson:

    a. 62 Farragut Avenue, Piedmont, California 94610; and

    b. 1834-1836 Ocean Front, Del Mar, California 92014 (together, the "Forfeiture Properties"). *See* ECF No. 1 at 18–19.

The indictment alleges, among other things, co-mingling of funds between LM, investor money, and "millions of dollars of personal expenses, such as mortgages on homes owned by KSMP in Piedmont, CA and Del Mar, CA." ECF No. 1, ¶ 40. The indictment, however, contains no specific allegations regarding any of the Forfeiture Properties. The indictment alleges only that funds relating to the Forfeiture Properties were co-mingled, but not that any investor funds were actually used to purchase or maintain any of the Forfeiture Properties.

Prior to Mr. Mattson's arrest, the government executed search warrants in connection with and describing the government's understanding of the Forfeiture Properties. In a warrant dated May 23, 2024, the agent acknowledged that Mr. Mattson's "principal residence for many years had been 62 Farragut Avenue in Piedmont, California (in the Northern District of California). The basis for this understanding is, in part, that open-source property records indicate this is a current and active address for MATTSON and he has owned this residence since the year 1999." Ex. A, ¶ 46. Like the indictment, that warrant did not contain specific allegations relating to the Piedmont property.

An April 30, 2025, warrant concerned two Del Mar properties, including 1834-1836 Ocean Front, and detailed suspicions that Mr. Mattson transferred these properties to fraudulently conceal ownership in violation of 18 U.S.C. Section 152(7). Ex. B, ¶¶ 4, 43–59. Though the warrant was ultimately executed, Mr. Mattson was not charged with fraudulent concealment in

connection with 1834-1836 Ocean Front. *Cf.* ECF No. 1.

The government moved for a detention hearing following Mr. Mattson's arrest. ECF No. 6. As a result, Mr. Mattson remained in custody pending the detention hearing over a long holiday weekend. While Mr. Mattson was in custody, the government submitted and recorded notices of lis pendens against each of the Forfeiture Properties. ECF Nos. 11, 12. These notices act as a functional freeze on assets. At the detention hearing, the government failed to marshal evidence sufficient to show that Mr. Mattson should remain detained pending trial. The Court ordered Mr. Mattson released following a determination that he could be released with conditions. ECF No. 22. As part of his release conditions, Mr. Mattson must notify the Court each time he spends over $5,000 in a transaction.

At a status conference on June 11, 2025, the government asked that an additional property, titled in the name of Mr. Mattson's wife, be posted as security for Mr. Mattson's bail. The value of this property, located at 210 La Salle Avenue, Piedmont, California 94610 (together with the Forfeiture Properties, the "Restrained Properties"), would otherwise also be available to fund Mr. Mattson's legal defense. As with the Forfeiture Properties, the indictment contains no allegations related to the property located at 210 La Salle Avenue.

Due to the government's measures to impose pre-trial restraints on Mr. Mattson's assets, Mr. Mattson currently has access to only nominal – and grossly insufficient – funds to support his legal defense. Ex. C, ¶ 8. Moreover, Mr. Mattson's property investment and management company, KS Mattson Partners LP ("KSMP"), has entered bankruptcy. ECF No. 35-1. KSMP is now controlled by a court-appointed Responsible Individual, Robbin L. Itkin. ECF No. 35-1, 35-2. Mr. Mattson currently has no authority to liquidate assets of KSMP in furtherance of his defense.

At the present stage, Mr. Mattson's ability to retain his longstanding counsel of choice is jeopardized by his extremely limited, unfrozen assets. Mr. Mattson retained Randy Sue Pollock in approximately April 2024 to represent him in connection with civil and criminal investigations. Mr. Mattson subsequently retained William Frentzen of Morrison & Foerster LLP as counsel beginning in February 2025 in connection with civil and criminal investigations. Both

1  Ms. Pollock and Mr. Frentzen have entered an appearance in this proceeding and Mr. Mattson has
2  been in regular contact with both counsel since his arrest. Mr. Mattson relies on both attorneys
3  and seeks to have them represent him through trial.

### III. LEGAL STANDARDS

The Sixth Amendment guarantees a defendant the fundamental "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Luis v. United States*, 578 U.S. 5, 12 (2016) (citing *Caplin & Drysdale,* 491 U.S. 617, 624 (1989)). The Sixth Amendment right to assistance of counsel includes the right "to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Moreover, "a defendant's Sixth Amendment right to counsel 'is not exhausted once [the defendant] has one competent criminal defense lawyer.'" *In re Bundy*, 852 F.3d 945, 953 (9th Cir. 2017).

Restraints on "untainted" property—that which "belongs to the defendant" and "not traceable to a criminal offense"—implicate the Sixth Amendment if they prevent the defendant from hiring counsel of his choice. *Luis*, 578 U.S. at 10, 12. If the defendant shows necessity, then access to the "untainted assets needed to retain counsel of choice" is protected by the Sixth Amendment. *Luis*, 578 U.S. at 10. A defendant establishes necessity by showing that his "net financial resources and income are insufficient to pay for counsel." *United States v. Lacey*, No. CR-18-00422-001-PHX-DJH, 2021 WL 5882638, at *9 (D. Ariz. Dec. 10, 2021). To impose a constitutional restraint on a defendant's property, the government bears the burden of establishing probable cause that the assets in dispute are traceable to the crime charged in the indictment. *See Luis*, 578 U.S. at 23 (citing *Kaley v. United States*, 571 U.S. 320, 324 and n.3 (2014)).

Once a defendant makes a prima facie showing that his Sixth Amendment rights are implicated, the Court must hold a hearing to determine whether release of funds is necessary. *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) (citing *Cohen v. United States* 378 F.2d 751, 761 (9th Cir. 1967)). Such a hearing may be heard by the District Judge. *See, e.g.*, *Kaley*, 571 U.S. at 325 ("The District Court then concluded that it should hold a hearing, but only as to whether the restrained assets are traceable to or involved in the alleged criminal conduct.") (internal quotation marks omitted). A prima facie showing exists where "the moving

papers filed, including affidavits, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*, No. 2:18-cv-06742-RGK-PJW, 2019 WL 8892585, at *8 (C.D. Cal. Dec. 20, 2019). This is not a high bar but requires "some showing that [a defendant] lacks other funds to pay counsel." *Id.* (citing *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) ("[a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel[.]"); *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013) ("[A] defendant seeking a . . . hearing must demonstrate, beyond the bare recitation of the claim, that he or she has insufficient alternative assets to fund counsel of choice.")).

IV.    **ARGUMENT**

   A.    **The Pre-Trial Restraint on Untainted Assets Implicates Mr. Mattson's Sixth Amendment Right to Counsel.**

Mr. Mattson's Sixth Amendment right is implicated by the government's unconstitutional restraint on his untainted assets. The government has not alleged that the Restrained Properties are tainted by the alleged criminal activity of Mr. Mattson. Without the ability to sell the Restrained Properties, Mr. Mattson lacks the financial means to fund his legal defense. The government has not established any connection between the properties and the allegations in the indictment, and thus cannot establish probable cause for the continuation of the lis pendens against the properties.

   1.    **Mr. Mattson's Assets Are Untainted.**

As a threshold matter, the Restrained Properties are untainted assets. Mr. Mattson has owned his home at 62 Farragut Avenue, Piedmont, since 1999—well before any fraud is alleged to have occurred. The same is true of 210 La Salle Avenue, Piedmont, which Mr. Mattson's wife has owned since 2000. In fact, the indictment does not even mention the Forfeiture Properties except to allege forfeiture upon conviction for other, unrelated charges, and does not mention the 210 La Salle Avenue property at all. Moreover, the government does not allege that the assets were obtained because of the conduct alleged in the indictment. Only the search warrants

referred to 1834-1836 Ocean Front. Despite that search, Mr. Mattson was not charged in connection with 1834-1836 Ocean Front, which further indicates that no Restrained Properties bear any connection to the allegations at issue in the case. Simply put, the properties are untainted funds that "belong[] to the defendant." *Luis*, 578 U.S. at 12. The government has provided no evidence to indicate otherwise.

Even though the government seeks forfeiture of the Restrained Properties, the government has failed to even establish that a pre-trial asset restraint is appropriate. Mr. Mattson cannot use the Restrained Properties for any improper means. Mr. Mattson is currently on supervised release. He must report any transactions over $5,000 to the Court, which will verify that proceeds are used for legitimate purposes, including payments to his counsel of choice. A continued restraint would prevent Mr. Mattson from retaining the counsel of his choice.

Serious questions have already emerged regarding the sufficiency of the government's evidence. The government alleges that Mr. Mattson used the LM "1059 Account" to pay for "millions of dollars in personal expenses." ECF No. 1, ¶ 40. Yet preliminary analysis shows approximately $15 million more flowing from KSMP's accounts to the 1059 Account than flowing out. That analysis, of course, cannot be reconciled with an allegation that Mr. Mattson siphoned investor money out of the 1059 Account to pay personal expenses. Mr. Mattson has requested the government's analysis to trace funds into and out of the 1059 account and requested that if the government has a different analysis to share that analysis with the defendant. So far, the government has refused to provide such analysis. In fact, when confronted with Mr. Mattson's analysis in open court the government has been unable to refute it. While the government may argue about co-mingling of the proceeds of fraud, if there are more funds going into the business venture from the defendant than coming out of the venture, then the co-mingling loses its character. In other words, the defendant is actually funding the business venture with his own money rather than stealing the money. While the government may still argue diversion and fraud in a convoluted theory, in real economic terms it will not be able to show use of investor funds for personal gain.

On top of that, the government's allegation that Mr. Mattson deleted files from his laptop

when under a preservation order is now on extremely shaky footing.  The government has been utterly unable to describe its theory of the charge or that it was Mr. Mattson who made the alleged deletions.  This allegation formed the basis of the destruction of evidence charge in the indictment and was the alleged centerpiece of the government's argument for pre-trial detention.  *See* ECF No. 1, ¶¶ 59-61; ECF No. 6 at 6-7.  Here, too, preliminary evidence undercuts the government's case.  As described at the detention hearing, forensic analysis and privileged actions and communications show that at exactly the same time as the government alleges the files were deleted from the laptop Mr. Mattson was at his counsel's office and the laptop was being copied for preservation.  *See* ECF No. 33-1 at 6.  While this analysis remains ongoing, it is clear that the government's theory that it was Mr. Mattson who deleted the files will not be supported by the government's evidence.[1]

### 2. But for the Restraint on Mr. Mattson's Assets, Mr. Mattson Can Afford to Hire Counsel of His Choice.

First, Mr. Mattson seeks to retain qualified attorneys.  Mr. Mattson desires to be represented by Ms. Pollock and Mr. Frentzen as his defense counsel.  Ex. C, ¶ 7.  Ms. Pollock and Mr. Frentzen are each qualified attorneys admitted to the State Bar of California and the bar of the Northern District of California.  Both have represented Mr. Mattson in connection with the civil and criminal investigations, as well as these proceedings, and are familiar with the facts of the case.

Second, Mr. Mattson can afford to hire Ms. Pollock and Mr. Frentzen.  The properties currently restrained by the lis pendens notices are worth an estimated $21 million.  Ex. C, ¶ 2.

---

[1] The government has thus far refused to produce evidence regarding its own searches for files that it alleged Mr. Mattson deleted from the laptop.  Likewise, the government has thus far refused to produce its communications with the LM bankruptcy creditors' committee, LM and related entities, Tim LeFever, Scott Smith, or other potential cooperating entities and individuals.  Not only are these communications and the evidence related to the government's search for files producible under *Brady v. Maryland*, 373 U.S. 83 (1963), they are directly relevant to this motion.  If the government's communications with these entities and individuals reflects efforts to prevent Mr. Mattson from use of his properties, they shed light on potential violations of Mr. Mattson's Sixth Amendment right to counsel.  Similarly, evidence regarding searches for files allegedly deleted from Mr. Mattson's laptop is directly relevant to the government's destruction of evidence charge, which, in turn, formed a primary basis for its detention motion and the Court's conditions of release.

The property at 210 La Salle Avenue is worth an estimated $4 million. *Id.*, ¶ 4. The value of Mr. Mattson's untainted assets is anticipated to be more than sufficient to cover legal services that he would require through trial. As such, Ms. Pollock and Mr. Frentzen are each counsel that Mr. Mattson "can afford to hire." *Luis*, 578 U.S. at 19 (citing *Caplin & Drysdale,* 491 U.S. at 624).

The restraints on Mr. Mattson's property prevent him from hiring counsel of his choice. The lis pendens notices act as a bar on the sale of Mr. Mattson's properties, and effectively freeze assets that he could otherwise use to fund his legal defense. *See Mangaoang v. Special Default Servs., Inc.*, 427 F. Supp. 3d 1195, 1210 (N.D. Cal. 2019) ("Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is expunged.") Although Mr. Mattson or his wife retains title over the Restrained Properties, he is unable to utilize their value to defend himself.

Currently, Mr. Mattson has access to only nominal funds in unfrozen assets. Ex. C, ¶ 8. That is plainly insufficient. With access to the funds from the untainted Restrained Properties, however, Mr. Mattson could afford to pay for his legal representation. The restraints on his assets will ultimately prevent Mr. Mattson from hiring legal counsel of his choice in violation of the Sixth Amendment. *Wheat*, 486 U.S. at 159.

Moreover, the defendant's Sixth Amendment rights precede the government's interest in preserving untainted assets in the event of a conviction. In a case involving one of the same prosecutors here, a court in this District recently held that the government violated the defendant's Sixth Amendment rights and that the government's pre-trial interest in preserving the defendant's untainted assets for payment of forfeiture and restitution to the victims of healthcare fraud did not outweigh the defendant's Sixth Amendment rights. *See United States v. Shelton*, No. 23-CR-00258-JSC-1, 2024 WL 4520944, at *2 (N.D. Cal. Oct. 17, 2024) (citing *Luis*, 578 U.S. at 19 ("[D]espite their importance, compared to the right to counsel of choice, these interests [ensuring funds for forfeiture/restitution] would seem to lie somewhat further from the heart of a fair, effective criminal justice system.")). To the extent there is any doubt, the Court may utilize its discretion in assessing modifications to the asset restraints. *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (district court must exercise

discretion in awarding fee applications when wrongdoing is not yet proven).

**B.     In the Event of a Hearing, the Government Cannot Show Probable Cause.**

Given that the government has not yet established any link between the Restrained Properties and the allegations, no hearing may be required to modify the asset restraints. To the extent any dispute about traceability exists, however, Mr. Mattson is entitled to a pre-trial hearing to determine whether the continued pre-trial restraint on his assets is appropriate. *Kaley,* 571 U.S. 320, 324, and n. 3, (2014) ("Since *Monsanto,* the lower courts have generally provided a hearing . . . [to determine] whether probable cause exists to believe that the assets in dispute are traceable . . . to the crime charged in the indictment"). Because Mr. Mattson has already demonstrated the need for the assets, if any question remains regarding the traceability of assets, the court must hold a hearing to resolve that dispute.

With Mr. Mattson's need of the Restrained Properties having been established, the burden shifts to the government to show probable cause that the assets are traceable to the alleged fraud. *Lacey*, 2021 WL 5882638, at *5 ("If the government cannot meet its burden to demonstrate probable cause that the property is traceable to the crime, the court may modify the [pre-trial restraint] and/or release of the funds."). The evidence presented to date indicates that the government cannot establish probable cause. The government has failed to allege that the Restrained Properties are traceable to the alleged conduct. The indictment contains no facts to indicate traceability. Moreover, the record indicates that the government previously considered charging Mr. Mattson in connection with 1834-1836 Ocean Front but declined to do so. The only reasonable conclusion is that the government lacked sufficient evidence connecting the properties to the conduct alleged in the indictment.

**V.    CONCLUSION**

For the foregoing reasons, Mr. Mattson respectfully requests modification of the pre-trial restraints imposed against his untainted assets or, in the alternative, a hearing before the District Judge to determine probable cause.

Dated: June 25, 2025

LAW OFFICE OF RANDY SUE POLLOCK

By: */s/ Randy Sue Pollock*
RANDY SUE POLLOCK

Attorney for Defendant
KENNETH W. MATTSON