RANDY SUE POLLOCK (CA SBN 64493)
LAW OFFICES OF RANDY SUE POLLOCK
286 Santa Clara Avenue,
Oakland, CA 94610-2624
Telephone:    510.763.9967
Facsimile:    510.380.6551
rsp@rspollocklaw.com

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH W. MATTSON,<br><br>Defendant. | Case No. 4:25-cr-00126-JST<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO MODIFY PRE-TRIAL ASSET RESTRAINT**<br><br>Date:    July 31, 2025<br>Time:    9:30 a.m.<br>Judge:   Hon. Jon S. Tigar<br>Ctrm:    6 – 2nd Floor<br><br>Indictment Filed:  May 13, 2025<br>Trial Date:        None set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 2

    A. Legal Standard ........................................................................................................ 2

    B. Mr. Mattson Has Established a Prima Facie Sixth Amendment Violation and Satisfied His Burden for a Hearing .......................................................................... 3

    C. The Government Ignores the Sixth Amendment Implications Behind the Lis Pendens .................................................................................................................... 6

    D. The Government Has Still Not Provided Any Evidence That the Assets are Tainted and Cannot Establish Probable Cause .................................................................... 8

    E. If Any Tracing Dispute Exists, A Hearing Will Resolve This Issue ..................... 10

    F. Requesting A Substitution of Property Does Not Require a Full Review of Release Conditions .............................................................................................................. 10

III. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aronson v. City of Akron*,
  116 F.3d 804 (6th Cir. 1997) ................................................................................................. 7

*Castro v. Saxon Mortg. Services, Inc.*,
  2009 WL 837589 (N.D. Cal. Mar. 27, 2009) ........................................................................ 6

*Luis v. United States*,
  578 U.S. 5 (2016) ...................................................................................................... 2, 10, 11

*Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*,
  2019 WL 8892585 (C.D. Cal. Dec. 20, 2019) ............................................................. 2, 3, 4

*United States v. Bonventre*,
  720 F.3d 126 (2d Cir. 2013) .................................................................................................. 3

*United States v. E-Gold, Ltd.*,
  521 F.3d 411 (D.C. Cir. 2008) .............................................................................................. 3

*United States v. Feathers*,
  2016 WL 7337518 (N.D. Cal. Dec. 19, 2016) ....................................................................... 3

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ................................................................................................................ 7

*United States v. Monsanto*,
  924 F.2d 1186 (2d Cir. 1991) (en banc) ................................................................................ 2

*United States. v. Omidi*,
  2021 WL 7629897 (C.D. Cal. June 15, 2021) ............................................................ 2, 3, 4, 8

*United States v. Pole No. 3172, Hopkinton*,
  852 F.2d 636 (1st Cir. 1988) ................................................................................................. 8

*United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*,
  51 F.3d 1402 (9th Cir. 1995) ................................................................................................. 8

*United States v. Shelton*,
  No. 23-cr-00258-JSC-1, 2024 WL 4520944 (N.D. Cal. Oct. 17, 2024) ............................ 7, 9

*United States v. Unimex, Inc.*,
  991 F.2d 546 (9th Cir. 1993) ...................................................................................... 2, 3, 10

## I. INTRODUCTION

The government opposes Mr. Mattson's efforts to retain counsel of his choice and ignores the risk of a Sixth Amendment violation. Mr. Mattson filed his Motion to Modify Pre-Trial Asset Restraint, ECF No. 44 (the "Motion" or "Mot."), to modify the pre-trial restraints imposed on his and his wife's properties: 62 Farragut Avenue, Piedmont, California 94610; 1834–1836 Ocean Front, Del Mar, California 92014 (together, the "Forfeiture Properties); and 210 La Salle Avenue, Piedmont, California 94610 ("210 La Salle"). *See* ECF No. 44-1 ("Mattson Decl.") ¶¶ 1–4. Contrary to the government's characterization of Mr. Mattson's Motion, the request to remove the restraint on 210 La Salle implicates a constitutional right rather than modification of the terms of pre-trial release. In any event, the Sixth Amendment basis for the Motion was previously raised to the Magistrate Judge. The government's argument that the Motion appeals the Magistrate Judge's order ignores that context. Regardless, because of the restrictions placed on Mr. Mattson's assets due to both the government's forfeiture allegations and attempt to have 210 La Salle posted as bail, Mr. Mattson will not be able to retain the counsel of his choice, in violation of the Sixth Amendment.

In its opposition, the government seeks to impose an out-of-circuit burden on Mr. Mattson and require him to prove his innocence before trial. ECF No. 51, Opposition, ("Opp."). But Mr. Mattson has established a prima facie case that his assets are untainted and that he lacks adequate assets to retain counsel of his choice. Given the government's failure to show how the properties are tainted despite numerous opportunities to do so, the Court can decide the Motion without a hearing.

If the Court is inclined to hold a hearing, Mr. Mattson has more than satisfied the requirements for one. Preliminary analysis refutes that investor monies were used to finance or maintain Mr. Mattson's or KS Mattson Partners, LP ("KSMP") properties. That analysis shows nearly $15 million more flowing from KSMP to LeFever Mattson ("LM") than the reverse. For its part, the government points to speculative sources of funds, but this speculation does not stand up to scrutiny and only distracts from the ultimate issue: Mr. Mattson's current inability to retain the counsel of his choice. To the extent any factual dispute concerning the government's

1  probable cause exists, a hearing will resolve this issue.  Should the Court hold a hearing, Mr.
2  Mattson welcomes the opportunity to test the government's unsubstantiated tracing analysis.  As
3  for the government's attempts to distract from the Sixth Amendment violation by pointing to
4  various logistical concerns about disposing of real property, none of that is relevant to the
5  constitutional issue before this Court.  The Court should grant Mr. Mattson's Motion or, in the
6  alternative, hold a hearing to establish the government's probable cause.

7  **II.     ARGUMENT**
8       **A.     Legal Standard**
9       The Sixth Amendment right to counsel is implicated when the government places
10 restraints on "untainted property"—that is, property that "belongs to the defendant" and is "not
11 traceable to a criminal offense"—and those restraints prevent the defendant from hiring counsel
12 of his choice.  *Luis v. United States*, 578 U.S. 5, 10–12 (2016) (citing *Caplin & Drysdale,* 491
13 U.S. 617, 624 (1989)).  If a defendant shows necessity, then the Sixth Amendment protects access
14 to the "untainted assets needed to retain counsel of choice." *Luis*, 578 U.S. at 10, 12.

15      A defendant may challenge the pre-trial restraints of his assets if "the moving papers filed,
16 including affidavits, are 'sufficiently definite, specific, detailed, and nonconjectural, to enable the
17 Court to conclude that a substantial claim is presented[.]'" *United States v. Unimex, Inc.*, 991
18 F.2d 546, 551 (9th Cir. 1993) (citing *Cohen v. United States* 378 F.2d 751, 761 (9th Cir. 1967)).
19 In the Ninth Circuit, a defendant is only required to make a "threshold showing demonstrating his
20 or her lack of funds and access to funds" to merit a pre-trial hearing.  *United States. v. Omidi*,
21 2021 WL 7629897, at *5 (C.D. Cal. June 15, 2021).

22      Once a defendant provides sufficient evidence to support a "substantial claim" that his
23 Sixth Amendment rights are implicated and moves for a pre-trial restraint hearing, the "Court
24 must hold a hearing on whether release of funds is necessary" to pay counsel.  *Matter of Seizure*
25 *of: Any & all funds held in Republic Bank of Arizona Accts.*, 2019 WL 8892585, at *8 (C.D. Cal.
26 Dec. 20, 2019) (citing *Unimex*, 991 F.2d at 551); *see also United States v. Monsanto*, 924 F.2d
27 1186, 1191 (2d Cir. 1991) (en banc), *abrogated on other grounds by Kaley v. United States*, 571
28 U.S. 320 (2014)) ("[A] pre trial adversary hearing is required where the question of attorney's

1   fees is implicated."). This hearing is referred to as a *Monsanto* hearing, where "the government
2   has the burden to show probable cause" that the assets in question are tainted. *United States v.*
3   *Feathers*, 2016 WL 7337518, at *6 (N.D. Cal. Dec. 19, 2016).

4         The government's reliance on the *Jones-Farmer* rule is misplaced—that rule does not
5   apply in the Ninth Circuit.[1] Under the government's formulation, a criminal defendant must
6   establish his financial need for the restrained assets *and* provide the evidence that the assets in
7   question cannot be traced to tainted funds. *See* Opp. at 12 (citing *United States v. Jones,* 160 F.3d
8   641, 647–48 (10th Cir. 1998); *United States v. Farmer*, 274 F.3d 800, 804–805 (4th Cir. 2001)).
9   But to the contrary, district courts in California routinely grant *Monsanto* hearings—without
10  mention or acknowledgement of the *Jones-Farmer* rule's two-step analysis—to determine
11  whether there is probable cause that the assets in dispute are tainted or whether a defendant has a
12  financial need for the restrained assets. *See, e.g., Feathers*, 2016 WL 7337518, at *5–6; *Republic*
13  *of Arizona Accts.*, 2019 WL 8892585, at *8; *Omidi,* 2021 WL 7629897, at *4.

14        **B.**    **Mr. Mattson Has Established a Prima Facie Sixth Amendment Violation and Satisfied His Burden for a Hearing**

16        Mr. Mattson has satisfied his burden for a *Monsanto* hearing by making a "prima facie
17  showing" that his "Sixth Amendment rights are implicated." *Republic Bank of Arizona Accts.*,
18  2019 WL 8892585, at *8 (citing *Unimex*, 991 F.2d at 551). As required, Mr. Mattson's Motion,
19  including his declaration, is "sufficiently definite, specific, detailed, and nonconjectural" to
20  establish that a "substantial claim" is presented. *Unimex, Inc.*, 991 F.2d at 551 (citation and
21  internal quotation marks omitted). Mr. Mattson has sufficiently pointed out that the government
22  has not shown the Forfeiture Properties are tainted and attested that he has insufficient assets to
23  retain counsel for a nonconjectural reason: assets of KSMP, to which he formerly had access, are

---

[1] Notably, the Second and D.C. Circuits have rejected the *Jones-Farmer* rule. *See United States v. Bonventre,* 720 F.3d 126, 131 (2d Cir. 2013) (holding that a defendant was not required to make a showing that assets were illegitimately restrained to obtain a *Monsanto* hearing); *United States v. E-Gold, Ltd.*, 521 F.3d 411, 419 (D.C. Cir. 2008), abrogated on other grounds by *Kaley v. United States*, 571 U.S. 320 (2014) ("We thus join the Second Circuit in holding that defendants have a right to an adversary post-restraint, pretrial hearing.").

in bankruptcy proceedings. Mattson Decl. ¶ 9. Thus, the "Court must hold a hearing to determine whether the release of funds is necessary." *Republic Bank of Arizona Accts.*, 2019 WL 8892585, at *8 (citing *Unimex*, 991 F.2d at 551).

First, Mr. Mattson has established a sufficiently definite, specific, detailed, and nonconjectural claim that the assets are untainted. The Mattsons have owned their Piedmont homes—62 Farragut Avenue and 210 La Salle—well before any fraud is alleged to have occurred. Moreover, 1834–1836 Ocean Front was identified in a search warrant, but Mr. Mattson was not charged in connection with that property—suggesting that the government failed to uncover evidence connecting it to a crime. The government has failed to provide any particularized evidence that the properties are tainted by the alleged fraud. In fact, the defense's preliminary analysis shows nearly $15 million more flowing from KSMP's bank account to LM's "1059 Account" (*see* ECF No. 1, ¶ 40) than flowing in the opposite direction in the period 2020-2023. Pollock Decl. ¶¶ 6-8. That fact alone refutes any notion that investor monies were somehow funneled into KSMP's or Mr. Mattson's properties. When confronted with Mr. Mattson's analysis in open court, the government has been unable to rebut it. The government now claims that Mr. Mattson failed to refute its conclusory forfeiture allegation, ECF No. 1 at 18–19, but plainly ignores Mr. Mattson's evidence disputing those allegations. Thus, Mr. Mattson presents a prima facie case that the Forfeiture Properties are untainted.

Second, Mr. Mattson has established a sufficiently definite, specific, detailed, and nonconjectural claim that he lacks sufficient assets to hire counsel of his choice. This is not a high bar. Even the authority the government cites explains that a defendant need only make a "threshold showing demonstrating his or her lack of funds and access to funds." *Omidi*, 2021 WL 7629897, at *5. Mr. Mattson declared, under penalty of perjury, that he has "access only to assets of a nominal value to pay for counsel." Mattson Decl. ¶ 8. Those funds are insufficient to pay his chosen counsel through trial. *Id.* Moreover, KSMP, which holds substantially all of Mr. Mattson's assets, is currently in involuntary bankruptcy. *Id.* ¶ 5. Mr. Mattson has no control over KSMP. *Id.* ¶ 6. Mr. Mattson presents a prima facie case that he lacks other funds to pay counsel because nearly all his funds are unavailable to him.

1    The government's scattered objections do not diminish Mr. Mattson's showing that he lacks sufficient assets. The government contends that Mr. Mattson possesses two cars worth $180,000, "neither of which are encumbered by a loan." Opp. at 14. But this figure falls apart on basic scrutiny. Cars are a notoriously depreciating asset. Even assuming the value of those vehicles remains the same today as when they were purchased, $180,000 is inadequate to retain defense counsel through trial. The government's additional figures are similarly unpersuasive. The government asserts that Mr. Mattson sold $2.9 million in classic cars between August 2024 and February 2025, and that the funds were "paid to Mattson *or* KSMP." Opp. at 15 (emphasis added). The government's brief ignores that, as the remittances and wire confirmations submitted in connection with the opposition attest, the proceeds from the sales were directed to KSMP. *See* ECF No. 51, Ex. K (filed under seal). Mr. Mattson has no control over KSMP assets. Mattson Decl. ¶¶ 5-6. As for allegations that the Mattsons attempted to sell jewelry and other luxury items, including to a retailer of secondhand goods, the government includes no details as to whether the items in fact sold or, if they did, the proceeds realized. *See* ECF No. 51 at 8-9 & Ex. L at 3 (filed under seal).

Other concerns find even less support. The government implies that Mr. Mattson has additional real property assets that he could use for his defense, claiming that "public records searches reflected the defendant was associated with 64 properties, sales of 23 properties. . . and 24 properties *possibly* owned by the defendant." Opp. at 2 (emphasis added). It should come as no surprise that Mr. Mattson would be associated with numerous properties through LM and KSMP. But properties titled in those entities' names are not presently available to fund Mr. Mattson's defense.

The remainder of the government's objections only distract from the constitutional issue before the Court. The government argues that it may not be possible to sell one parcel at 62 Farragut without selling the other. Opp. at 6. It argues that WITNESS-1 maintains an ownership interest in 210 La Salle. Opp. at 7-8. It argues that the Forfeiture Properties are "heavily encumbered." *Id.* at 15. These objections point to logistical challenges with disposing of real property, not to any legal shortcoming with Mr. Mattson's Sixth Amendment challenge. The

ultimate proceeds that properties may generate are not at issue here. Mr. Mattson's constitutional rights are the primary issue the Court need consider. Hurdles that are not the government's making and that Mr. Mattson must clear before selling properties are beyond the relief sought from the Court.

The government also complains that Mr. Mattson has failed to provide an accounting of his defense expenses. Mr. Mattson has incurred litigation expenses thus far, including in hiring consultants to review the government's unsubstantiated allegations. The government alleged Mr. Mattson deleted files from his laptop. This allegation formed the basis of the destruction of evidence charge in the indictment and was the centerpiece of the government's argument for pre-trial detention. *See* ECF No. 1, ¶¶ 59-61; ECF No. 6 at 6-7. To review the evidence that would support such an allegation, Mr. Mattson hired a digital forensics consultant, who has determined that at exactly the same time as the government alleges the files were deleted from the laptop, Mr. Mattson was at his counsel's office and files were being copied for preservation. *See* ECF No. 33-1 at 6. Likewise, Mr. Mattson has incurred expenses in hiring a forensic accountant to analyze flows of money into and out of relevant bank accounts. Notwithstanding the government's distractions, Mr. Mattson has adequately demonstrated that he lacks sufficient funds to retain his counsel of choice and, as such, is entitled to an evidentiary hearing.

To the extent that the Court requires an estimate of defense costs or specific details about assets available to Mr. Mattson to fund his defense before deciding the Motion, counsel can provide that information ex parte and under seal to protect Mr. Mattson's Fifth Amendment and attorney-client privileges. For context, LM incurred $1 million in professional fees connected with its bankruptcy in May 2025 alone. Pollock Decl. ¶ 13.

### C. The Government Ignores the Sixth Amendment Implications Behind the Lis Pendens

In opposing the Motion, the government contends that a lis pendens is not a seizure and therefore does not implicate the Fifth Amendment, much less the Sixth. Opp. at 10–11. But this misstates Mr. Mattson's position and understates the severe restrictions that lis pendens impose on noticed properties. *Castro v. Saxon Mortg. Services, Inc.*, 2009 WL 837589, at *2 (N.D. Cal.

Mar. 27, 2009) ("[T]he practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. . . . The potential for abuse is obvious."). As the government concedes, the notices of lis pendens operate as a *functional* freeze on Mr. Mattson's assets. Opp. at 10 (citing Mot. at 7). This remains true, as the lis pendens effectively eliminate Mr. Mattson's ability to sell, mortgage, or otherwise utilize the value of the properties in support of his defense. Even if they do not amount to a seizure—which is not the constitutional issue before the Court—they nevertheless operate as a pre-trial restraint on Mr. Mattson's financial ability to retain counsel he could otherwise afford. Regardless, Mr. Mattson's Sixth Amendment right takes priority over the government's interest in preserving assets for potential forfeiture. *United States v. Shelton*, No. 23-cr-00258-JSC-1, 2024 WL 4520944, at *2 (N.D. Cal. Oct. 17, 2024) [Pollock Decl., Ex. B] (citing *Luis*, 578 U.S. at 19) ("[D]espite their importance, compared to the right to counsel of choice, these interests [ensuring funds for forfeiture/restitution] would seem to lie somewhat further from the heart of a fair, effective criminal justice system.").

The government's cases are distinguishable. Mr. Mattson is not disputing that the filing of a lis pendens is "less restrictive" than wholesale seizure of property. *Cf. United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 58 (1993). Nor is Mr. Mattson seeking a hearing simply to address the lis pendens notices alone—although he may be entitled to do so if the government fails to substantiate its forfeiture allegations. *Cf. Aronson v. City of Akron*, 116 F.3d 804, 813 (6th Cir. 1997) ("[W]e do not read the contemporary caselaw as suggesting that a prosecutor is free to encumber a citizen's property interests on the strength of a forfeiture specification procured with knowledge that there was no factual basis for it."). Rather, Mr. Mattson contends that the functional effect of the notices reduces his available pre-trial assets and jeopardizes his right to counsel. As such, an evidentiary hearing is warranted to assess the probable cause of the forfeiture allegations and to vindicate Mr. Mattson's Sixth Amendment right.

**D.     The Government Has Still Not Provided Any Evidence That the Assets are Tainted and Cannot Establish Probable Cause**

The government asserts that its conclusory forfeiture allegations are sufficient to establish that the properties are tainted and thus provide probable cause for forfeiture. Despite the government's misguided efforts to shift the burden to Mr. Mattson, the government, for its part, has still failed to provide any evidence that the assets are tainted. To date, the government has been unable or unwilling to produce a tracing analysis supporting its allegations that the Forfeiture Properties are tainted.

The government relies on *United States v. Omidi* to argue that "proceeds of the scheme were used to make payments on mortgages at 62 Farragut and 1834-1836 Ocean Front which means there is probable cause for their forfeiture." Opp. at 17 (citing 125 F.4th 1283, 1288–89 (9th Cir. 2025)). But *Omidi* is markedly different. There, the court held that proceeds *derived from* a fraudulent scheme must be forfeited. *See Omidi,* 125 F.4th at 1288–89. Mr. Mattson has requested the pre-trial release of property that was acquired *before* the scheme alleged by the government, and the government has not credibly demonstrated otherwise. Property interests Mr. Mattson "purchased with legitimate assets" before any fraud is alleged to have occurred are not "forfeitable because [they are] not proceeds traceable to a [fraudulent] transaction." *United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1411 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988) ("We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment.").

As for payments on mortgages that occurred after the alleged fraud, preliminary analysis shows nearly $15 million more in net transfers from KSMP's bank account to LM's "1059 Account" than net transfers the other way during the period 2020-2023. Pollock Decl. ¶¶ 6-8. That refutes any notion that allegedly illicit funds acquired from investors were used for mortgage payments on Mr. Mattson's or KSMP's properties. Rather than taking money out of LM, Mr. Mattson, through KSMP, put money in. If the government has evidence refuting that analysis

1  or substantiating some other theory by which Mr. Mattson used ill-gotten gains for mortgage
2  payments, it has not shared it.

3  Mr. Mattson, through his counsel, asked for the government's tracing analysis at his
4  arraignment and detention hearings. Pollock Decl. ¶¶ 2, 4. The government failed to provide that
5  analysis even as it attempted to keep Mr. Mattson behind bars pending trial. Pollock Decl. ¶¶ 3,
6  5. It still has not been provided even as the government seeks to deprive Mr. Mattson of his
7  ability to retain his counsel of choice.

8  Despite its earlier refusal to provide any evidence of tracing of allegedly fraudulent funds,
9  the government now contends that it can "show that proceeds of the scheme were used to make
10 payments on mortgages" for the Forfeiture Properties. Opp. at 17. If that is the case, then the
11 government should be required to put its analysis forward at a hearing. To the extent that the
12 government continues to assert that Mr. Mattson has failed to establish the untainted nature of the
13 assets, the defense agrees only that it is impossible for Mr. Mattson to rebut conclusory
14 allegations in the absence of evidence.

15 Moreover, Mr. Mattson believes that potentially exculpatory materials are in the
16 government's possession, including communications from LM, Timothy LeFever, Scott Smith,
17 KSMP, and the LM creditors' committee. Any collusion or coordination with cooperators and
18 LM creditors designed to deprive Mr. Mattson of funds to defend his case would be a direct and
19 improper violation of Mr. Mattson's Sixth Amendment rights. In *United States v. Shelton*, the
20 government – including an AUSA now prosecuting this case – coordinated with the defendant's
21 former employer to dismiss select counts to deprive the defendant of indemnification rights on
22 which he had relied to pay his attorney. 2024 WL 4520944, at *2–3 [Pollock Decl., Ex. B]. The
23 court there found that dismissal of those counts would constitute a Sixth Amendment violation.
24 *Id.* at *5. To the extent that analogous communications between the government and third parties
25 exist here, such communications may give rise to a similar constitutional violation. The
26 documents and communications sought by the government from third parties may form the basis
27 of the government's tracing analysis and, given their potential for exculpation, should be provided
28 to Mr. Mattson's counsel immediately to test the validity of the analysis. The government,

however, has refused to produce those documents to Mr. Mattson. The Court should find that the government has not established probable cause as to the Restrained Properties.

### E. If Any Tracing Dispute Exists, A Hearing Will Resolve This Issue

To the extent a factual dispute exists, and the Court seeks to verify the government's probable cause, a hearing will resolve this issue. The government acknowledges that it bears the burden of demonstrating probable cause at a hearing. Opp. at 17. The government claims it "would show that proceeds of the scheme were used to make payments on mortgages" and establish probable cause for forfeiture if a hearing is held. *Id.* Mr. Mattson welcomes that opportunity because the government has repeatedly failed to provide its tracing analysis, generating serious doubts that it has probable cause for forfeiture. Conclusory allegations cannot be sufficient to prevent a criminal defendant from exercising his Sixth Amendment right to counsel of his choice. Further, it is the courts "[that] have experience separating tainted assets from untainted assets." *Luis*, 578 U.S. at 7 (2016). Here, Mr. Mattson's allegations are "sufficient, and factual issues are raised [as to the forfeitability of the assets in question, so] a hearing is required." *Unimex, Inc.* 991 F.2d at 551 (reversing the defendant's conviction because "[t]he government prevented [the defendant] from hiring counsel by taking all [his] property, and there was no showing at an adversary hearing at which [the defendant] could be heard that the property belong[ed] to the government.").

### F. Requesting A Substitution of Property Does Not Require a Full Review of Release Conditions

The government contends that Mr. Mattson seeks an appeal of the Magistrate Judge's release conditions. Opp. at 17. But both parties stipulated that this matter was properly before this Court. *See* ECF No. 43. The stipulation contemplated that Mr. Mattson would "file an opening brief regarding any potential Sixth Amendment violations," and the parties stipulated that "the Sixth Amendment issue should properly be brought to the District Judge." *Id.* at 1. The government now walks back that agreement by claiming that the Sixth Amendment question somehow implicates all aspects of Mr. Mattson's release conditions and requires a *de novo* review. Opp. at 1. But that is not the purpose of the Motion. Instead, Mr. Mattson seeks a

determination of whether his Sixth Amendment right is violated by the posting of 210 La Salle. Mr. Mattson should not be deprived of his right to counsel by forcing him to post an untainted property that would result in him lacking adequate resources to mount a defense. Given that the government concedes that 210 La Salle is untainted and argues that the other properties *are* tainted, forcing Mr. Mattson to post the only allegedly untainted asset of any size to which he currently has access would violate his Sixth Amendment right. *Luis*, 578 U.S. at 18 ("[I]nsofar as innocent (*i.e.,* untainted) funds are needed to obtain counsel of choice, we believe that the Sixth Amendment prohibits the court order that the Government seeks.").

The government has all but conceded that 210 La Salle is an untainted asset. For example, unlike the Forfeiture Properties, the government has not alleged that 210 La Salle is subject to forfeiture upon conviction. *Compare* ECF No. 1 at 18–19. Nor did the government object to the posting of 210 La Salle as security. The government's current objection is curious because the government previously contemplated, in good faith, the substitution of an alternative property as security as recently as June 25, 2025. *See* Pollock Decl. ¶ 10. At that time, prosecutors indicated that they "continue to be open to other substitute properties" instead of 210 La Salle. *Id.* ¶ 9. The government made no indication at that time that substitution of security would require a renewed hearing before the Magistrate Judge. It is not clear to the defense why the government has suddenly changed its position on the propriety of substitute properties. Nor is it clear why the government seeks to impose a greater bond on Mr. Mattson's release even as Mr. Mattson seeks relief to retain his counsel of choice.

### III. CONCLUSION

For the reasons included in the Motion and in this reply, Mr. Mattson respectfully requests modification of the pre-trial restraints imposed against his untainted assets or, in the alternative, a hearing before the District Judge to determine probable cause.

| | |
|---|---|
| DATED: July 18, 2025 | LAW OFFICES OF RANDY SUE POLLOCK |
| | By: */s/ RANDY SUE POLLOCK* |
| | RANDY SUE POLLOCK |
| | Attorney for Defendant |
| | KENNETH W. MATTSON |