UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH W. MATTSON,<br><br>Defendant. | Case No. 25-cr-00126-JST-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR HEARING ON MOTION TO MODIFY PRETRIAL ASSET RESTRAINT**<br><br>Re: ECF No. 70 |

The Court previously denied without prejudice Defendant Kenneth W. Mattson's motion to modify pretrial asset restraint after concluding that he did not present sufficient evidence of his asserted inability to pay counsel of his choosing. ECF No. 68 at 3–5. The Court also explained:

> In addition, "to enable the court to conclude that a substantial claim is presented," [*United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) (citation modified)], any renewed motion should address the title issues raised by the government. The government presents evidence that KS Mattson Partners LP ("KSMP") holds title to 1834–1836 Ocean Front and to a portion of 62 Farragut. ECF No. 51 at 10. Mattson contends that these arguments "point to logistical challenges with disposing of real property, not to any legal shortcomings with Mr. Mattson's Sixth Amendment challenge," ECF No. 65 at 8, but the Court is not persuaded. Mattson's declaration acknowledges that he is "not able to dispose or otherwise control assets held by [KSMP] because KSMP is currently in bankruptcy proceedings." ECF No. 44-1 ¶ 5. Thus, if these assets are, indeed, held by KSMP, any restraints on them could not give rise to a Sixth Amendment violation because, even absent any restraints, Mattson could not sell them to pay for his defense.

*Id.* at 5.

Mattson has now filed a motion for a hearing on a renewed motion to modify pretrial asset restraint. ECF No. 70. He contends that this is an "emergency motion" because "he will likely be subject to involuntary bankruptcy proceedings on September 2, 2025. After that date, all

properties he owns or controls will be administered by the bankruptcy estate and none may be available to him to exercise his rights to defend his criminal case." *Id.* at 2.

Upon review of the bankruptcy court proceedings, the Court agrees with the government that the September 2 date is not significant in terms of Mattson's ability to dispose of assets. On April 14, 2025, the bankruptcy court entered an order prohibiting Mattson "from selling, transferring or encumbering any real property in which he has an interest" and "from selling, transferring or encumbering any personal property in excess of $15,000." *In re: Kenneth W. Mattson*, No. 24-10714 CN, ECF No. 72 (Bankr. N.D. Cal.). On May 15, 2025, the bankruptcy court entered a preservation order stating, "Sections 363 and 364 of Title 11 of the United States Code shall apply in this case to the same extent as if an order for relief had been entered." ECF No. 73-2 at 3. This requires Mattson to obtain approval for the sale of property "other than in the ordinary course of business," 11 U.S.C. § 363(b)(1), and Mattson does not contend that selling the real property at issue in his motion would constitute the ordinary course of business.

The preservation order also required Mattson to file "a declaration attesting, under penalty of perjury, to full compliance with the Court's April 14, 2025, *Order Continuing Hearing on Petitioning Creditors' Motion for Preservation Order* [Dkt. No. 72], as modified by the Court's oral rulings at the hearings of April 25, May 2, and May 9, 2025." ECF No. 73-2 at 3 (italics in original). Mattson filed the required declaration on May 21, 2025. *In re: Mattson*, ECF No. 96.

On July 10, 2025, Mattson agreed in a stipulation that he is subject to the preservation order, which "requires that any property sale or financing transaction sought by Mr. Mattson must be approved [by the bankruptcy court] under sections 363 or 364 of title 11 of the United States Code." ECF No. 73-3 at 3.[1] Mattson further agreed that the preservation order "shall remain in full force and effect until entry of the Order for Relief," which he agreed can be entered "at 9:00 a.m. Pacific Time on September 2, 2025." *Id.*

Mattson acknowledges that, after September 2, 2025, "all properties he owns or controls

---

[1] This stipulation also notes that the parties "wish to coordinate a smooth transition of Mr. Mattson into a *voluntary* case under the Bankruptcy Code." ECF No. 73-3 at 3 (emphasis added). Thus, Mattson's representation to this Court that he "will likely be subject to *involuntary* bankruptcy proceedings" is incorrect. ECF No. 70 at 2 (emphasis added).

2

1  will be administered by the bankruptcy estate and none may be available to him to exercise his

2  constitutional rights to defend himself." ECF No. 76 at 2. However, the preservation order

3  restricts asset sales "to the same extent as if an order for relief had been entered." ECF No. 73-2 at

4  3. Mattson is therefore under the same obligations before the bankruptcy court today as he will be

5  after the order for relief is entered on September 2. Because Mattson concedes that the bankruptcy

6  court will have authority to bar him from selling properties after September 2 even if the proceeds

7  of such sales might be used to fund his criminal defense, he implicitly concedes that the

8  bankruptcy court has the same authority today.

9      Mattson argues that "the case law . . . is uniform in vesting the district court, not the

10 bankruptcy court, with the authority to adjudicate questions regarding a defendant's constitutional

11 rights." ECF No. 76 at 2. This is true as far as it goes, but the case law also supports the

12 conclusion that a bankruptcy court is not required to allow liquidation of an estate's assets to fund

13 a debtor's criminal defense. In a case cited by the government in its opposition but not addressed

14 by Mattson in his reply, the Ninth Circuit considered a similar procedural posture, where a

15 criminal defendant was subject to restraining orders by the Office of Thrift Supervision ("OTS")

16 "to ensure that [his] assets would not be dissipated or hidden." *United States v. Spiegel*, 995 F.2d

17 138, 139 (9th Cir. 1993). The court affirmed the district court's refusal "to issue an order

18 authorizing [the defendant] to use his own assets to pay attorneys' fees in advance and to pay

19 counsel at their customary hourly rates, despite the OTS order to the contrary." *Id.* at 140 (citation

20 modified). Analogizing the defendant's position to a defendant subject to a bankruptcy court

21 order, the Ninth Circuit held that a district court could not "modify the OTS's order" even if that

22 order "affect[ed] the exercise" of the defendant's constitutional right to counsel:

> [The defendant] is in no different a position than any other criminal defendant whose assets are tied down by a lien, a prejudgment attachment or a bankruptcy court order. In all such cases, *the freezing of defendant's assets may interfere with his ability to pay a lawyer; but this does not empower the district court to interfere with the bankruptcy proceeding*, or to lift the lien or attachment imposed by another court, state or federal.

27 *Id.* at 141 (emphasis added).

28     Even if this Court were not bound by *Spiegel*, the cases cited by Mattson are in accord.

3

1    Although "Sixth Amendment issues are the concern of the court trying the criminal case, not the
2    bankruptcy court," a defendant's Sixth Amendment rights do not "supersede[] the 'benefit to the
3    estate' requirement" that the bankruptcy court must consider, and "[a]lmost all courts that have
4    addressed the issue have held that criminal defense counsel does not benefit the estate." *In re*
5    *Kearney*, 609 B.R. 383, 387–88 (Bankr. D.N.M. 2019).  Paying criminal defense counsel would
6    "benefit the debtor but not the estate," and the estate need not "be burdened with nonbeneficial
7    expenses." *Id.* at 387, 389; *see also In re Dixon*, 143 B.R. 671, 679 (Bankr. N.D. Tex. 1992),
8    *aff'd*, 85 F.3d 626 (5th Cir. 1996)  ("Courts in this Circuit and elsewhere applying § 330 have
9    generally refused to authorize the use of estate funds post-petition for payment of criminal counsel
10   on the grounds that those expenses neither benefitted the estate, nor were actual and necessary to
11   the estate.").  Potential "violations of the debtor's constitutional rights posed by criminal
12   investigations or prosecutions occurring after the filing" cannot "give the debtor any greater
13   interest in the private rights surrounding the estate being administered by a bankruptcy court." *In*
14   *re Duque*, 48 B.R. 965, 975 (S.D. Fla. 1984); *accord In re Dixon*, 143 B.R. at 679 ("Dixon's Sixth
15   Amendment right does not entitle him to any greater rights in Bankruptcy Court or any greater
16   claims against the bankruptcy estate's assets.").

17   Mattson cannot sell any of the properties in question without approval from the bankruptcy
18   court.  That is true now, just as Mattson concedes it will be true after September 2.  Because
19   Mattson has presented no indication that the bankruptcy court would approve sale of any of the
20   properties even if this Court were to conclude that they are untainted assets, he has not made the
21   required showing of a substantial claim under the Sixth Amendment.  Accordingly, the Court
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

4

denies Mattson's motion for a hearing on his renewed motion to modify pretrial asset restraint.[2]

**IT IS SO ORDERED.**

Dated: August 13, 2025



JON S. TIGAR
United States District Judge

---

[2] The Court notes a few additional issues, which it need not resolve, that further call into question whether Mattson has adequately presented a constitutional claim. This list is not intended to be exhaustive. First, Mattson has not attempted to separate out attorney's fees or costs that he contends are required for his criminal proceedings as opposed to his defense in a related civil case, *SEC v. Mattson*, No. 25-cv-4387 (N.D. Cal.), in which he is represented by the same counsel; nor has he explained why the Court should not consider that distinction. Second, counsel has not presented any estimate of future costs for the defense of this matter or discussed whether her retainer agreement allows her to bill any additional legal fees. *See* ECF No. 76-1 ¶ 3 ("My retainer called for legal fees in the amount of $500,000.00 that would cover pretrial and trial fees. The costs for experts were not included in the professional fees. . . ."). Third, Mattson does not discuss what assets are being used to pay for his bankruptcy counsel and whether that is a factor the Court must consider. Fourth, it is not clear that Mattson possesses title to 1834–1836 Ocean Front. His declaration states that he "transferred title to KSMP in connection with obtaining financing for the property" and that, "[o]nce the loan was paid off, title should have reverted to me under the terms of the loan," ECF No. 70-1 ¶ 22, but he presents no evidence that title ever actually transferred back.

5