RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: 510-763-9967
Facsimile: 510-380-6551
rsp@rspollocklaw.com

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-00126-JST-1 |
| Plaintiff, | **DEFENDANT KENNETH W.** |
| vs. | **MATTSON'S RENEWED MOTION TO** |
| | **MODIFY PRETRIAL RESTRAINT OF** |
| | **UNTAINTED ASSET** |
| KENNETH W. MATTSON. | **Hearing Date: November 21, 2025** |
| | **Hearing Time: 9:30 a.m.** |
| Defendant | |

I.  **INTRODUCTION**

Defendant Kenneth Mattson seeks release of the property at 210 La Salle in Piedmont, CA ("La Salle"), a property that is wholly unrelated to the allegations against him and for which the government makes no forfeiture claim. The continued restraint of the untainted property has put Mr. Mattson at a constitutional crossroad, imperiling his right to secure counsel of his choice. If the restraint on La Salle is not removed, Mr. Mattson will lose his ability to mount a vigorous defense in

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

1

a complex case involving many terabytes of discovery and requiring millions of dollars in legal and expert fees.

Mr. Matton's declaration and counsel's declaration under seal present facts that resolve the previous ambiguities regarding ownership of La Salle. Mr. Mattson's inability to pay for counsel without release of La Salle is now sufficiently detailed in his declaration, and the costs of his defense have been disclosed in counsel's under seal declaration. These facts demonstrate Mr. Mattson's substantial Sixth Amendment claim. All that remains is for this Court to vindicate Mr. Mattson's constitutional rights and release La Salle to help pay for his counsel of choice. Nor would doing so imperil the government's ability to seize and forfeit assets connected to the alleged crimes, as La Salle is, by the government's own omission, untainted and separate from the allegations.

## II.     BACKGROUND

### A. La Salle.

On May 28, 2025, the home at 210 La Salle was ordered by Magistrate Judge Tse to be one of two pieces of property securing Mr. Mattson's $4,000,000.00 bond. Mr. Mattson's wife has owned La Salle since 2003 via a grant deed from Mr. Mattson. See **Exhibit A**, counsel's Decl. ¶ 7. A deed of trust in the amount of $460,000 was executed in favor of the current tenant. *Id*. ¶ 17. La Salle is worth an estimated $5 million. *Id*. ¶ 14.

### B. Procedural History.

At a status conference on June 11, 2025, and at a hearing to modify the bond on October 11, 2025, the government renewed its request that La Salle be posted as security for Mr. Mattson's bail. The indictment contains no allegations that La Salle is tainted, and there is no evidence to date that it is traceable to the allegations in the indictment. While other properties owned by Mr. Mattson or his companies are targets for forfeiture, no forfeiture allegations have been made against La Salle.

Additionally, the house is not an asset of either the KSMP or Kenneth Mattson bankruptcy estates. In other words, according to the government's own theory of the case, La Salle has nothing to do with Mr. Mattson's alleged crimes.

### C. Bankruptcy Denial

In the Order denying defendant's Motion for Hearing on Motion to Modify Pretrial Asset Restraint on August 13, 2025, (Dkt. 78), this Court stated as follows:

> "Because Mattson has presented no indication that the bankruptcy court would approve sale of any of the properties even if this Court were to conclude that they are untainted assets, he has not made the required showing of a substantial claim under the Sixth Amendment." Pg. 4:17-21.

Following this Court's direction, counsel filed a motion before Judge Novak on August 23, 2025, seeking relief from the Preservation Order under 11 U.S.C.§303(f). Specifically, counsel sought to use the properties at 62 Farragut in Piedmont, the property at 1834-1836 Ocean Front in Del Mar, and 210 La Salle in Piedmont. At the time the motion was filed, the home at Farragut was Mr. Mattson's personal asset. Since Mr. Mattson entered voluntary personal bankruptcy on September 2, 2025, that is now an asset of his bankruptcy estate. The KSMP bankruptcy estate, Lefever Mattson debtors and the Committee of Unsecured Creditors objected to counsel's motion. It was denied on September 19, 2025.

### III. ARGUMENT

**A. The Holding in *Luis* Controls the Intersection between a Defendant's Sixth Amendment Rights and the Determination of Suitable Conditions for Pretrial Release.**

#### 1. Legal Standard.

A criminal defendant's Sixth Amendment right to assistance of counsel "is a fundamental constituent of due process of law." *Luis v. United States*, 578 U.S. 5, 19 (2016). Deprivation of the right to chosen counsel is "complete" when a defendant is "erroneously prevented from being

3

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

represented by the lawyer he wants…". *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). The intersection between a defendant's Sixth Amendment rights and the determination of suitable conditions for that defendant's pretrial release begins and ends with *Luis*, where the Court ruled that "*pretrial* restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis* at 10 (emphasis added). Justice Thomas concurred, writing that a "pretrial freeze of untainted assets violates a criminal defendant's Sixth Amendment right to counsel of choice." *Id*. at 24.

Both formulations of this rule are clear, unequivocal, and broad. *Luis* clearly applies to a variety of pretrial situations in which the government seeks to place restraints on assets, *see, e.g.*, *United States v. Rivera,* No. 22-20552-CR, 2023 WL 4363544, at *4-5 (S.D. Fla. July 6, 2023) (applying *Luis*, court rejected government lis pendens over untainted property); *United States v. Marin,* No. 15-CR-252 (PKC), 2018 WL 5282873, at *3 (E.D.N.Y. Oct. 24, 2018) (court denied request to access bail money for legal fees after trial, noting that "*Luis* involved a *pre-trial* asset freeze, whereas this case involves a *post-conviction* holding of assets"); *United States v. Shelton*, No. 23-CR-00258-JSC-1, 2024 WL 4520944 (N.D. Cal. Oct. 17, 2024) (government conduct interference with defendant's ability to retain counsel of choice paid by third party violated Sixth Amendment); *contra United States v. Yang*, No. 16-CR-00334-LHK-1 (VKD), 2018 WL 5733659 (N.D. Cal. Oct. 30, 2018).

Therefore, the principles enunciated in *Luis* must be applied in any determination of suitable conditions for pretrial release. In the present case this means determining whether Mr. Mattson's Sixth Amendment rights have been violated by the restraint placed on an untainted asset to secure bail.

2. ***Luis* Focused on the Nature of the Assets and the Importance of the Sixth Amendment, Not the Government's Interests.**

4

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

Despite the clear, unambiguous import of the holding in *Luis* ("pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment"), some courts in this circuit and this district have shifted the focus from "the nature of the assets" and the primacy of a defendant's Sixth Amendment rights to a balancing test between competing interests.

In *United States v. Lillard*, the Ninth Circuit held that the government does not violate a defendant's Sixth Amendment right to counsel of choice when it seizes untainted funds pursuant to a valid restitution order and judgment *from a prior case*. *United States v. Lillard,* 57 F.4th 729, 733 (9th Cir. 2023) (emphasis added). Thus, the reach of *Lillard* is limited. Later, in what is arguably dicta, the *Lillard* court said the "dispositive" question was "not whether the assets were tainted, but instead whether the government [has] a substantial property interest in the assets." *United States* v. *Lillard,* 57 F.4th 729, 734 (9th Cir. 2023). This is simply not what the *Luis* court said. Rather, the *Luis* court emphatically underscored the crucial distinction between tainted and untainted property:

> The relevant difference consists of the fact that the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime. The Government may well be able to freeze, perhaps to seize, assets of the latter, "tainted" kind before trial. As a matter of property law the defendant's ownership interest is imperfect. ... The property at issue here, however, is not loot, contraband, or otherwise "tainted." It belongs to the defendant. *Luis*, 578 U.S. 5 at 12-13.

No exceptions or carve outs were articulated by the *Luis* court. If its holding was qualified as suggested in *Lillard*, it would read "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment *unless the government can show a greater interest.*" Regardless, the government cannot show a "substantial property interest" in La Salle that outweighs Mr. Mattson's Sixth Amendment rights. Mr. Mattson is not a flight risk; he has lived here his entire life and has extensive family ties to Northern California. Further, he is not an economic danger because he has no longer has any assets.

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

5

The *Luis* court noted that the government's interests were "important," but pointed out that whereas the government could look to tainted property to secure its interests, deprivation of a defendant's rights is "complete" when he "is erroneously prevented from being represented by the lawyer he wants." *Luis* at 19. (citing *Gonzalez–Lopez, supra,* 548 U.S. at 148). The Court thereafter established the primacy of a defendant's Sixth Amendment rights. "Compared to the right to counsel of choice," the government's interests "would seem to lie somewhat further from the heart of a fair, effective criminal justice system." *Id.* Thus, "[t]he nature and importance of the constitutional right taken together with the nature of the assets" led the Court to its unequivocal conclusion that pretrial restraint of untainted assets violates the Sixth Amendment. *Id*. at 10.

### B. Mr. Mattson has Demonstrated a Substantial Sixth Amendment Claim.

**1. Access to La Salle is crucial because Mr. Mattson has no other resources for retaining counsel of choice.**

Mr. Mattson faces a complete deprivation of his Sixth Amendment rights like the defendant in *Luis* if La Salle is not released for use in his defense. Other than La Salle, he and his wife have no real property. See **Exhibit B**, Mattson Decl. ¶ 18. All other properties in which he had an interest are either in bankruptcy or under *lis pendens* by the government. *Id*. ¶¶ 13-14;26.

Mr. Mattson is currently unemployed, has no cash or fungible accounts to pay for counsel, and his wife's accounts are also insufficient for that purpose. *Id.* ¶¶ 1-4. The value of other assets is either inadequate or inaccessible to Mr. Mattson. *Id.* ¶¶ 6-7 (value of two vehicles); ¶ 20 (home furnishings); ¶ 19 (personal property controlled by entity under bankruptcy).

Mr. Mattson has endeavored to address the factual shortcomings previously identified by the Court with his prior declarations, and has now made "a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice." *United States v. Bonventre*, 720 F.3d 126, 131 (2nd Cir. 2013). This evidentiary showing demonstrates Mr. Mattson's need for La

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

6

Salle for the purpose of protecting his Sixth Amendment rights, see *Luis,* 578 U.S. 5 at 12 ("[b]ut the Government would undermine the value of [defendant's Sixth Amendment rights] by taking from Luis the ability to use the funds she needs to pay for her chosen attorney").

**2. Without La Salle, Mr. Mattson cannot retain counsel of his choice due to the complexity and cost of his defense.**

Mr. Mattson's lack of available resources with which to hire counsel of his choice must be considered along with the complexity of the case against him. Defending the allegations in the indictment will require significantly more resources than a solo practitioner can muster. As explained further in the under-seal declaration, co-counsel with the resources for discovery review, legal research, preparation of pretrial and trial motions, experts, and investigators is needed. A firm has been identified, but retention will require a reasonable yet sizeable upfront flat fee which Mr. Mattson does not have the means to pay without access to La Salle. Counsel has also received an estimate of fees going forward for forensic accounting alone which will be hundreds of thousands of dollars, among other foreseeable costs and expenses that accompany complex white-collar cases such as this one.

District courts in complex white-collar cases like this one have allowed defendants to access untainted assets to pay for counsel of choice. The court in *United States v. Malik* considered the *Luis* decision "in broad terms" and granted a motion for reconsideration in part. *United States v. Malik,* No. CR MJG-16-0324, 2017 WL 491225, at *1-2 (D. Md. Feb. 7, 2017). In that case, the defendant was the beneficiary of a life insurance policy and was entitled to receive $5,000,000.00 in policy proceeds. *Id*. at *1. There was no contention by the government that the insurance proceeds were "tainted" assets, just as there is no allegation here that La Salle is "tainted." *Id*. The court in *Malik* ultimately ordered the Clerk to remit $1,750,000.00 to defendant's counsel. *Id*. at *2.

7

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

In *United States v. Marshall*, the court granted the defendant's emergency motion and allowed the release of traceable untainted assets of over $9.1 million "for the reasonable fees and expenses of defense counsel." *United States v. Marshall,* No. 5:15-CR-36, 2016 WL 3937514, at *5-6 (N.D.W. Va. July 18, 2016). The court noted that the case was "a complex white collar prosecution" with "at least 179 gigabytes of data in discovery" for which "[t]he sheer volume of documents that must be reviewed…will require defendants' attorneys and their firms to spend a significant amount of time and expense to complete." *Id*. at *1.

The same facts and circumstances present in *Malik* and *Marshall* are present here. The details provided under seal regarding legal defense costs to date and projections for anticipated future costs demonstrate (1) the complexity of defending this case and (2) that given these great costs, Mr. Mattson's current resources are wholly inadequate. This is why La Salle is needed to mount his defense using counsel of his choice. The declarations submitted are "sufficiently definite, specific, detailed, and nonconjectural" and should enable this Court "to conclude that a substantial claim" under the Sixth Amendment has been presented. *United States v. Unimex*, 991 F.2d 546, 551 (9th Cir. 1993).

The government has still failed to establish a link between La Salle and the indictment's allegations; thus, no hearing may be required to release La Salle from restraint. However, with Mr. Mattson's substantial Sixth Amendment claim now presented, if any traceability dispute exists, the Court should provide a hearing to determine "whether probable cause exists to believe that the assets in dispute are traceable to the crime charged in the indictment." *Kaley,* 571 U.S. 320, 324 (2014).

**C. No Blanket Bar Exists to Mr. Mattson's Use of Untainted Third-Party Assets for His Defense.**

Mr. Mattson cannot be prohibited from accessing La Salle for his defense merely because it is "another person's" property. An often-cited passage from *Caplin & Drysdale, Chartered v. United States* that appears to suggest such a prohibition must be read in context:

> A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney even if those funds are the only way that that defendant will be able to retain the attorney of his choice. Such money, though in his possession, is not rightfully his…Section 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets in the hands of the Government at the time of the criminal act giving rise to forfeiture. *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 618, 109 S. Ct. 2646, 2648, 105 L. Ed. 2d 528 (1989)

When read in context, the *Caplin* court was referring to forfeitable assets held by the government under a "relation-back" theory of title when it stated that "a defendant has no…right to spend another person's money." *Id.* Other courts interpreting this passage are in accord, *see SEC v. Coates,* No. 94 Civ. 5361(KWM), 1994 WL 455558, at *3 (S.D.N.Y. Aug.23, 1994) (citing *United States v. Monsanto,* 491 U.S. 600 (1989) and *Caplin*) ("[a] defendant is not entitled to foot his legal bill with funds that are tainted by his fraud. In a criminal case, such restrictions on a defendant's ability to obtain legal counsel do not violate his Sixth Amendment rights"); *United States v. Lacey*, 378 F. Supp. 3d 814, 820 (D. Ariz. 2019) (*quoting Caplin* and *Monsanto*) ("[a]llowing pretrial restraint of assets is consistent with 'the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture' to ensure that any 'ill-gotten gains' will not dissipate…").

The mere fact that untainted property like La Salle is not in Mr. Mattson's name cannot prevent this property from being used for his defense. "In a nutshell, the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain." *United States v. Stein*, 541 F.3d 130, 156 (2nd Cir. 2008).

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

9

## IV. CONCLUSION

The continued restraint on La Salle, a property completely unrelated to the allegations against Mr. Mattson, will soon prevent Mr. Mattson from retaining legal counsel of his choice in violation of the Sixth Amendment. Moreover, his Sixth Amendment rights outweigh the government's interest in preserving untainted assets. For these reasons, Mr. Mattson respectfully requests modification of the pretrial restraint on La Salle or, in the alternative, a hearing to put the government to its burden of showing probable cause that La Salle is connected to or the result of the crimes alleged in this case.

Date: October 20, 2025  Respectfully submitted,

_/s/_____
RANDY SUE POLLOCK
Counsel for Kenneth W. Mattson

*RENEWED MOTION TO MODIFY PRETRIAL RESTRAINT OF UNTAINTED ASSET*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

10