# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Alex G. Tse, Magistrate Judge

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) No. CR 25-00126-CRB
KENNETH W. MATTSON, )
Defendant. )

San Francisco, California
Wednesday, May 28, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 11:02 - 1:13/1:47 - 4:04 = 3 HOURS, 28 MINUTES

APPEARANCES:

For Plaintiff:

United States Attorney's Office
450 Golden Gate Avenue
Box 36055
San Francisco, California 94102
BY: NIKHIL BHAGAT, ESQ.

United States Attorney's Office
Northern District of California
60 South Market, Suite 1200
San Jose, California 95113
BY: CHRISTOFFER LEE, ESQ.

(APPEARANCES CONTINUED ON NEXT PAGE)

For Defendant:

286 Santa Clara Avenue
Oakland, California 94610
BY: RANDY S. POLLOCK, ESQ.

Morrison & Foerster, LLP
425 Market Street
San Francisco, California 94105
BY: WILLIAM FRENTZEN, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

MR. FRENTZEN: So -- yeah. So, Mattson on May 22nd, 2024, did, in fact, go to his lawyer's office, and that office, we understand that the state of the laptop was preserved. The timing of the supposed or alleged deletions that the Government has would be after Mr. Mattson went there and the -- and folks were working on the laptop.

I hope the Court can appreciate that at this juncture, where we are now, because the Government has alleged that this is an act of obstruction of justice, which it will -- will not bear out, and I will get into some of the facts, but if I talk a little circumspect, hopefully the Court understands that at this point --

THE COURT: Um-hmm.

MR. FRENTZEN: -- the -- the Government has alleged obstruction of justice. There are lawyers, not the lawyers here today, involved in that process. They have lawyers now. There are issues around attorney-client privilege. There are issues around work product privilege, and there are issues around the Fifth Amendment privilege that, unfortunately, are wrapped up in what the Government, as I'll get into in a minute, without substantial evidence or sufficient evidence as alleged as an obstruction of justice.

THE COURT: Okay.

MR. FRENTZEN: So, just --

THE COURT: I understand.

MR. FRENTZEN: -- if the Court has further questions, just please appreciate --

THE COURT: Understand.

MR. FRENTZEN: -- what I'm dealing with.

THE COURT: You will tell me you can't answer it or --

(Simultaneous speaking.)

THE COURT: -- that you'd rather not answer it, and I will respect that.

MR. FRENTZEN: I will tell you. If we have to, I'll --

THE COURT: Right.

MR. FRENTZEN: Maybe I'll answer it, but I would need to consider it.

THE COURT: Sure.

MR. FRENTZEN: So, on May 22nd, 2024, Mr. Mattson did deliver the laptop. The state of the laptop we understand, but counsel in the courtroom today do not have the -- what was copied, but it was copied. My understanding is that the files were, in fact, preserved. I under --

THE COURT: So -- so --

MR. FRENTZEN: Yeah.

THE COURT: -- this is a question that I have. The Government's proffer to me last week and today is that

if, in fact, there was a duplicate in it of the hard drive of the laptop, they've not seen it. All they have before them was that there was a deletion of files.

So, is there anything you can tell me about that, in fact, it was imaged?

MR. FRENTZEN: Yes.

THE COURT: That -- that exists somewhere?

MR. FRENTZEN: Yes, your Honor.

THE COURT: Okay.

MR. FRENTZEN: It was imaged. That exists.

THE COURT: Okay.

MR. FRENTZEN: As I noted a minute -- a moment ago, where we are now -- and, again, neither I nor my co-counsel here in court, Ms. Pollock, have -- have the image, but we also understand -- or the copy -- that it implicates these various privileges that we've talked about.

THE COURT: Sure.

MR. FRENTZEN: Had we had a conversation with Government counsel about this sometime ago, perhaps we would have resolved that. Where we are now is where we are now. And -- and they have the burden of proving this case.

What I can tell the Court is -- and I got -- we finally got access to the discovery related to this issue on Monday evening. And, so, I've had sometime to look at this and to consult.

The RCFL report that the Government is relying on for these alleged deletions makes reference to the recycle bin. The recycle bin, as I understand it, indicates files that were removed from the system. Let's put it that way.

THE COURT: Um-hmm.

MR. FRENTZEN: And they're in a long list, and RCFL looked at it according to the report and found all these files in a recycle bin. Significantly, according to the report and multiple references, the file path is a E file, E as in the letter E. My understanding is that is an external -- for this particular device, would be an external drive. In other words, what is shown as being allegedly deleted was not removed from the laptop in the instances reflected that I see in the RCFL report. They were removed from an external device. In other words, what was copied to an external device on May 22nd, 2024 at the location they've indicated, which is their attorneys' offices --

THE COURT: Um-hmm.

MR. FRENTZEN: -- things were removed from an external drive, not necessarily from the laptop, though utilizing the laptop. And I'll just -- so -- so, that would be consistent with somebody making a copy of the laptop and then for whatever reason, perhaps, removing items from the external drive, this E drive.

To the extent that the recycle bin shows all these

deleted files -- let me just as a brief aside, if anyone really wanted to hide files, you wouldn't leave the recycling bin. You'd hit one button that says "clear recycling bin", and you would clear that out, and then there'd be no indication of that. And, so, there's really not a sign of an effort to obscure here.

And, by the way, everything we're talking about is not Mr. Mattson, and the Government can't show it was Mr. Mattson. It's other individuals.

I went back to look, in fact, at whether or not items they say were deleted apparently from this external drive, were deleted from the computer itself, and I've got -- and I'll just hand up to the Court, but I've got copies of something that the Government in its brief, the one they filed the night that they arrested Mr. Mattson and before we came here the first time, your Honor, the Government listed filenames that it claims were deleted. I looked at the --

THE COURT: And let's be precise here. The position is -- you're taking the position nothing was deleted from the laptop. It was -- you -- the laptop was used in the imaging, but nothing was deleted from the laptop. It was deleted from an external drive, and that external drive was seized from Mr. Mattson I presume?

MR. FRENTZEN: No, your Honor. The --

THE COURT: Okay.

MR. FRENTZEN: -- external drive we believe was -- here's what I'm saying, your Honor, just --

THE COURT: Yes.

MR. FRENTZEN: -- because the -- your Honor's putting in a little bit of absolutes. What I'm saying is --

THE COURT: I understand. I understand.

MR. FRENTZEN: -- given -- getting stuff Monday night, getting ready for the hearing today, this is what we have been able to locate so far, and I'm just -- this is just an example, but this is what the Government produced to us. What I handed up is apparently what they got off of the laptop in discovery -- in its discovery production. And if the Court -- this is a screenshot of, you know, what they sent us digitally. But if the Court takes a look at the first PDF on the left -- lefthand corner, upper lefthand corner of what I handed up, that exactly matches the filename of the first file that we could identify because they redacted.

So, in their brief on whatever day that was, last Thursday or Friday, I think Thursday, they listed files that they claim were deleted. This is -- I just looked -- they redacted names from them. So, I looked for one that didn't have redactions.

THE COURT: Um-hmm.

MR. FRENTZEN: It's hard to pony up what they say

was deleted with what we have gotten from them because they put them in bullet points, and, so, it's got to be phrased exactly accurately. But I looked at the first. We looked at the first, and this first file they listed without redactions as items that were deleted from the laptop is 2009 Divvy Divvy Tree LP Form 1065-only.pdf. That's the exact same file that apparently is here on the laptop.

THE COURT: Um-hmm.

MR. FRENTZEN: I don't have what was copied. What I can tell the Court is that I've been informed that the -- that the files that the Government says --

THE COURT: Do you believe the Government has --

MR. FRENTZEN: I believe they have --

(Simultaneous speaking.)

MR. FRENTZEN: I don't know what they have. I don't know what they copied. I don't know how their copying went. There's another important point here, just so the Court understands. In the RCFL report, it indicates that certain items the examiner could not locate in part because if the computer's running, things can be I guess lost or deleted, and apparently, though they seized the device in -- on May 22nd of 2024, the -- the examiner did not examine it until January, February of 2025, and in the interim, according to the report, the device was left plugged in and powered on or powered on, I assume it would have had to have

been plugged in.

And, so, according to the examiner, things could have been lost. So, I don't know what they do or don't have exactly, but I looked at what they gave us to see, and the exact same filename that they say is the first file, I looked at the first one -- we got it, you know, recently --

THE COURT: Right.

MR. FRENTZEN: -- and it appears to still be on the laptop in their possession. And -- and, so, I question whether these deletions ever occurred on the laptop versus utilizing the laptop to an external device.

The other part of this that I'll raise, your Honor, is that, as I've said, it -- it has been represented to me that the items have been preserved. Let's put it that way, and so, you know, this is not Mr. Mattson deleting files off his laptop. He would have had to have gone to his lawyer's office, decided to do it at the lawyer's office and, oh, by the way, plug in an external device and then delete off of an external device. It -- it makes absolutely no sense, your Honor. This is not an obstruction case. This is not a charge that's ever going to get to trial I don't believe. Again, this is preliminary. And, in any event, the evidence, my understanding is -- again, I have not looked at it. My understanding is the evidence is preserved. They -- they've said, Well, give it to us. I said, There's

privileges. You know, we're going to have to work through this --

THE COURT: Right.

MR. FRENTZEN: -- and -- but this is your burden. You brought this case. You decided when to bring this case, and this is just I'm working on 24 hours of my investigation here, our investigation here versus however long they had to do all of this, and this is -- this is not an obstruction charge, your Honor. And, so, if there's any other specifics that the Court has concerns about, I'm happy to address them, but that's -- I think that's the state of the --

THE COURT: Okay.

MR. FRENTZEN: -- alleged obstruction from a laptop.

THE COURT: Okay. All right. That's very helpful. Thank you.

MR. BHAGAT: Your Honor, may I respond briefly?

THE COURT: Yeah, but I don't know if I -- I need a -- we're not going to decide the issue of that charge --

MR. BHAGAT: Yes.

THE COURT: -- right now. I needed enough to figure out if the proper still -- proffer that was provided last week still holds, and I'll give you an opportunity to respond, but I don't -- I don't necessarily need a point-by-point recitation. I did hear more details today that I did

not appreciate, for example, the external drive. Again, I don't know what it is, and maybe I should just tell you what I'm thinking, and that is that the proffer that was given to me earlier was obstruction, and the Defense has been very clear they don't believe that's a real charge, but that's up to you to fight later on.

But given the other instances where the Government has raised the covering up cameras, the -- the money in the car, while I will say that isn't the strongest evidence for me, I feel like the deletion -- the alleged deletion of files is a much stronger reason to -- to give you the detention hearing, I don't think I'm going to reverse myself and say that there isn't -- the Government hasn't met its burden to get a detention hearing today.

With that said, go ahead, Mr. Bhagat.

MR. BHAGAT: Yes, your Honor. So, three quick points. I -- I can't speak to the -- the external drive or what the -- what drive the files were deleted off of. I know that the forensic report says that the files were actually emptied from the recycle bin. It's not just that Mr. Mattson or someone placed it in the recycle bin. The report indicates that they were actually emptied, deleted from the recycle bin. So, that's number one.

MR. FRENTZEN: Your Honor, I'm sorry. I don't mean to interrupt, but can I just inquire where in the

report that is? Because that's contrary to my reading of the report.

MR. BHAGAT: I -- I have --

MR. FRENTZEN: I have it right in front of me to look at.

MR. BHAGAT: I don't have the report in front of me. That's my understanding of --

THE COURT: Well he has the report.

MR. BHAGAT: -- the report.

THE COURT: Mr. Frentzen has the report. If you -- if you have -- again, I'm hoping not to spend a lot of time. I just needed to be satisfied that what I was reading in the papers this morning, that you were learning much more detail than what was delivered to the Court. I wanted to make sure that I could still support my ruling that the Government satisfied its burden on the proffer to get a detention hearing today.

MR. FRENTZEN: And, again, your Honor, my understanding is the recycle bin shows other items having been deleted, but, as I --

THE COURT: But the recycle bin is on the laptop.

MR. FRENTZEN: Correct.

THE COURT: Correct? That's --

MR. FRENTZEN: Yes.

THE COURT: -- undisputed. And files were there

at some point and were no longer there on the laptop. Whether or not they were removed from a hard drive, external drive, at some point they were in the laptop --

MR. FRENTZEN: My understanding --

THE COURT: -- in some capacity.

MR. FRENTZEN: My understanding, your Honor, from handing that up is --

THE COURT: Yes.

MR. FRENTZEN: -- that they may well still be on the laptop, though deleted from an external drive.

THE COURT: Okay.

MR. BHAGAT: So, your Honor, I'm just looking at page four that says:

> "Upon removal from the recycle bin, files and folders which are deleted but still may be recoverable."

And then the examiner talks about his attempts to recover the files, which is sort of what I want to get into next.

MR. FRENTZEN: Your Honor, that's a generic reference to how the recycling bin works in general. It's not saying that's what happened in this case. What the examiner did was actually look at the recycle bin --

THE COURT: Um-hmm.

MR. FRENTZEN: -- and then makes a point that

items can be retrieved from the recycling bin but not if they were on an external device and the external device is no longer attached, and he says, I looked for Path E, and it's no longer there, and he then says you can also lose things from the recycling bin because it's been on, the computer -- some people have auto set or whatever. They plugged this thing in in May of '24. They didn't examine it until January, February of 2025. And, so, that's the examiner's description of I see things deleted in the recycling bin, but often you can't retrieve that and in part because if the computer's been on for 10 months, which is how long it's been on.

So, I don't know why any of that would be in the report but for what the examiner's looking at is what's in the recycling bin and is still showing up in the recycling bin.

MR. BHAGAT: So, your Honor, the examiner was able to identify a particular time period and a particular date that the files were actually deleted from the recycle bin. The stuff that's in the report about not being able to recover later is because as part of their examination, as part of their work in this case, the examiners actually tried to use forensic tools to recover the files that were deleted, and there's various mechanisms they can do that with. One of them is called carving. And the -- and the stuff in the report about the -- the laptop was left on for

a little bit, that helps to explain why it was difficult for the examiner to recover the files that were deleted.

Mr. Frentzen just handed you a screenshot of these PDFs. These were the sort of remnants of files that the examiner was able to recover through his work. This is all he could get.

Your Honor, I would submit to you if you click on those -- if you try to click on those files and open them, you will not be able to open them because the examiner was not able to recover through their forensic processes the files that were actually in existence at the time of deletion.

THE COURT: And the --

MR. FRENTZEN: That's --

THE COURT: -- Government's position that because your examiner was unable to open them, that they have been deleted?

MR. BHAGAT: I think that they have been deleted in the -- as the -- they have been deleted within the meaning of 1519.

THE COURT: Understood.

MR. BHAGAT: Which is the charge.

THE COURT: Let me -- let me ask this question too. Do they actually have to be deleted to -- to prove obstruction?

MR. BHAGAT: No, your Honor.

THE COURT: All right.

MR. BHAGAT: Alteration is enough.

THE COURT: Right. Right. Okay. I think I'm satisfied with -- with where I want to go today. Thank you for giving me the information about the laptop.

And now I think you want to call the victims.

MR. BHAGAT: Yes, your Honor.

THE COURT: Okay.

MR. BHAGAT: We'd note that there are more than 50 victims present in the courtroom. There were over 75 -- approximately 75 victim statements submitted, which the Court has now in its possession, some of which were redacted on the docket, some of which were filed under seal. There are nine victims who wish to speak. What we would propose is begin calling the victims up and identifying them by their first name.

THE COURT: Okay. Great. And what -- and what do you anticipate that they're going to do? Are they going to read their statement into the record or are they just going to --

MR. BHAGAT: I think it depends on the -- on the victims. The Crime Victims Rights Act is fairly broad in allowing victims an opportunity to convey to the Court the impact of the case. I would note that the issue today is detention and whether there's a risk of flight or danger to