RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: 510-763-9967
Facsimile: 510-380-6551
rsp@rspollocklaw.com

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 25-cr-00126-JST-1 |
| Plaintiff, | ) |
| vs. | ) **DEFENDANT KENNETH W.** |
| | ) **MATTSON'S REPLY TO** |
| | ) **GOVERNMENT'S OPPOSITION TO** |
| | ) **MOTION TO QUASH GRAND JURY** |
| KENNETH W. MATTSON. | ) **SUBPOENA** |
| | ) |
| Defendant | ) |

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ................................................................................................................ 3

II.    **THE FOREGONE CONCLUSION EXCEPTION DOES NOT APPLY** ........................... 5

   A.   **Legal Standard.** ..................................................................................................... 5

   B.   **The government fails the authentication prong of the foregone conclusion exception.** ...... 5

   C.   **The government does not have enough information to authenticate the digital files sought.** ................................................................................................................. 8

III.   **THE DOMINANT PURPOSE OF THE SUBPOENA IS TO PROVE THE OBSTRUCTION CHARGE, NOT TO INVESTIGATE ADDITIONAL CRIMES.** .................. 10

   A.   **The government's statements show that the subpoena is predominantly focused on the existing obstruction charge.** ......................................................................... 10

   B.   **The government's cited cases are distinguishable.** ............................................. 12

   C.   *Simels* **applies to this case.** ................................................................................. 12

IV.   **PRODUCING THE ENTIRE CONTENTS OF THE DRIVE WOULD VIOLATE MR. MATTSON'S FIFTH AMENDMENT RIGHTS AND ATTORNEY-CLIENT PRIVILEGE** ... 13

V.    **CONCLUSION** .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Bellis v. United States*, 417 U.S. 85, 88 (1974) .................................................................................... 5

*In re Boucher,* No. 2:06-MJ-91, 2009 WL 424718, at *3-4 (D. Vt. Feb. 19, 2009) .............................. 9

*In re Grand Jury Proc.,* 586 F.2d 724, 725 (9th Cir. 1978) .................................................................. 11

*In re Grand Jury Subpoena (85–W–71–5)* ............................................................................................ 12

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels* ......................................... 10, 12

*In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F.3d 87, 93 (2nd Cir. 1993) ............ 9

*In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 912 (9th Cir. 2004) ..................... 5, 6

*In re Special Grand Jury Proc. (Goodman),* 1996 WL 14241 ............................................................. 12

*United States v. Calandra,* 414 U.S. 338, 345-349 (1974) .................................................................. 11

*United States v. Hatfield,* No. 06-CR-0550 (JS) .................................................................................... 9

*United States v. Nguyen*, 267 F. App'x 699, 703 (9th Cir. 2008) ......................................................... 11

*United States v. Rue*, 819 F.2d 1488, 1489-90 (8th Cir. 1987) .............................................................. 8

*United States v. Sideman & Bancroft, LLP,* 704 F.3d 1197, 1202 (9th Cir. 2013) ........................ 4, 7, 8

## I. INTRODUCTION

The Court should grant Mr. Mattson's motion to quash the Subpoena to halt the government's overreach and abuse of the grand jury process. While a grand jury's powers are certainly broad, abuse occurs when those powers are extended for the dominant purpose of gathering evidence to prove counts in a filed indictment.

Other fundamental legal and constitutional rights are at stake in Mr. Mattson's motion to quash. The Subpoena impinges on Mr. Mattson's Fifth Amendment privilege against self-incrimination because the act of production would be testimonial and potentially incriminating. The government revealed in its opposition that personal income tax-related charges may be forthcoming against Mr. Mattson. Given that the names of the deleted files suggest the presence of documents that are solely personal to Mr. Mattson, such as those related to his own tax returns, enforcing the Subpoena would compel self-incrimination, regardless of the collective entity rule argument the government raises concerning KSMP, LM, and other related entities. The Court should quash the Subpoena to prevent this violation of Mr. Mattson's constitutional rights.

The government asserts that the foregone conclusion exception negates Mr. Mattson's Fifth Amendment rights. This argument must be rejected because the government cannot satisfy the authentication prong of the test for applying this exception.

The attorney-client privilege also would be implicated in any production because Mr. Mattson relinquished his laptop to counsel for the purpose of obtaining legal advice about potential culpability in this matter. Enforcing the Subpoena in these circumstances would make it impossible for clients to share information with their counsel for fear of the government getting it directly from counsel later, thus having a chilling effect on the attorney-client privilege.

The Court should quash the Subpoena to thwart the government's abuse of the grand jury process and to protect the sanctity of Mr. Mattson's Fifth Amendment rights and the attorney-client privilege.

## II. THE FOREGONE CONCLUSION EXCEPTION DOES NOT APPLY.

### A. Legal Standard.

The foregone conclusion exception only applies if the government establishes "its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents." *United States v. Sideman & Bancroft, LLP,* 704 F.3d 1197, 1202 (9th Cir. 2013) (citing *United States v. Bright,* 596 F.3d 683, 692 (9th Cir. 2010) (internal quotations omitted). "The authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents 'are in fact what they purport to be.'" *Id*. at 1203 (citing *In re Grand Jury Subpoena, Dated Apr. 18, 2003,* 383 F.3d 905, 912 (9th Cir. 2004)).

The independent verification requirement has two components. First, the government must "show that the documents sought to be compelled would be admissible independent of the witness' production of them…" *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 912 (9th Cir. 2004). Second, courts must inquire "whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id*. (citing *In re Grand Jury Proceedings,* 41 F.3d 377, 381 (8th Cir. 1994) and *United States v. Fox,* 721 F.2d 32, 39 (2nd Cir.1983)).

### B. The government fails the authentication prong of the foregone conclusion exception.

The government claims that the Subpoena is limited to "two discrete categories of information," but also alleges that a plethora of different document types are among the deleted files it hopes to match with the subpoenaed digital files. Dkt. 124 at 12, 7-8. The government says the names of the missing files "suggest" that a variety of tax forms may be included. *Id*. at 7-8. At the same time, the government cites heretofore undisclosed "evidence" that Mr. Mattson "failed to file his own tax returns…" *Id*. at 17 FN 3. When put together, these allegations raise the possibility that irrespective of any materials covered under the collective entity rule, see *Bellis v. United States*, 417 U.S. 85, 88 (1974), documents that are potentially incriminating and solely personal to Mr. Mattson could be produced if the Subpoena is enforced. Mr. Mattson would thus be compelled "to use his discretion in selecting and assembling the responsive documents," an outcome that led to a rejection of the government's assertion of the foregone conclusion exception in *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, a case cited by the government. *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, *supra*, 383 F.3d at 912.

In *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, the Ninth Circuit held that the appellant's production would have a testimonial aspect protected by the Fifth Amendment. *Id*. at 907. The government served the appellant with a subpoena in connection with an antitrust investigation into price fixing in the Dynamic Random Access Memory chip market. *Id*. The appellant's motion to quash was denied by the district court and the Ninth Circuit reversed and remanded, citing in part "the government's limited knowledge of the documents sought…" *Id*. In considering whether the foregone conclusion exception applied, the court cited the rule that it must inquire "into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents…" *Id*. at 912. If discretion in selecting and assembling responsive documents was

required, a witness would be "tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id*.

The subpoena commanded Doe to produce all documents "relating to the production or sale of Dynamic Random Access Memory ("DRAM") components, including but not limited to, handwritten notes, calendars, diaries, daybooks, appointment calendars, or notepads, or any similar documents." *Id*. Importantly, this universe included many documents the appellant "created himself," and production would force him "to discriminate among the many documents he might possess, requiring him specifically to identify and produce to the grand jury those that related to the production or sale of DRAM." *Id*.

The court noted that the government "made little effort to demonstrate how anyone beside Doe could sift through his handwritten notes, personal appointment books, and diaries" to produce an estimated "4,500 documents related to the production or sale of DRAM." *Id*. The court said that if forced to comply, the appellant "would provide the government with the identifying information that it would need to authenticate these documents." *Id.* The foregone conclusion exception did not apply because the government failed to demonstrate that it could authenticate the documents "without the identifying information that Doe would provide by using his knowledge and judgment to sift through, select, assemble, and produce the documents." *Id*. at 913.

Enforcement of the Subpoena would require Mr. Mattson to cull through the digital files and discriminate between documents he has a Fifth Amendment right to withhold because they are personal to him, and those subject to the collective entity rule. The government has no other independent way to authenticate the subpoenaed files to prove they "are in fact what they purport to be" other than the names and metadata of the missing files. *Sideman & Bancroft, supra,* 704 F.3d at 1203. Further, the number of files Mr. Mattson would have to cull through is approximately 14,000,

over three times the 4,500 documents in *April 18, 2003* and demonstrably burdensome. See Dkt. 124 at 7 ("…approximately 10,120 files had been deleted from the Recycle Bin" and "approximately 4,070 other files had been deleted from the computer's hard drive"). For these reasons, the government fails the authentication prong of the foregone conclusion exception.

### C. The government does not have enough information to authenticate the digital files sought.

The cases the government cites to assert the foregone conclusion exception demonstrate that by comparison, its evidence is lacking and cannot satisfy the authentication prong. In *United States v. Sideman & Bancroft, LLP*, the defendant's criminal counsel in an IRS investigation appealed from an order enforcing an administrative summons to produce certain records. *Sideman & Bancroft, supra*, 704 F.3d at 1199-1200. The IRS identified the documents sought based on detailed descriptions given by the defendant's accountant and income tax preparer. *Id*. The court ruled that the government satisfied the authenticity prong of the foregone conclusion exception because it would be able to independently authenticate the summonsed records. *Id*. at 1204. In so ruling, the court pointed to the accountant's "extensive knowledge" of the tax records' "distinctive characteristics and contents" gleaned from personally reviewing and working with the documents. *Id*. The court reasoned that the accountant would be able to adequately identify and authenticate the documents based on this intimate personal knowledge. *Id*.

The government says it knows "the specific information that Fennemore possesses" on an external drive, but can only offer basic information about missing laptop files such as file name, size, and time of modification as the basis for establishing authenticity. See Dkt. 124 at 17, 24. This information falls far short of the level of authentication that supported the ruling in *Sideman*. The accountant in *Sideman* knew the "distinctive characteristics and contents" of the records and could therefore independently verify that the documents were "in fact what they [were purported] to be." *Id*.

at 1203-04. Here, the government knows nothing about the actual files copied by Fennemore and only has information about the missing laptop files. *Sideman* does not apply because of these factual distinctions.

In *United States v. Rue* (cited in Dkt. 124 at 25), the IRS sought four categories of documents from a dentist via a summons, including individual patient cards and records. *United States v. Rue*, 819 F.2d 1488, 1489-90 (8th Cir. 1987). The court analyzed the authenticity prong of the foregone conclusion exception and affirmed the district court's decision that the exception applied. *Id*. at 1494. The court found that authenticity could be independently established "by comparing the *contents* of the patient cards with information from other documents whose authenticity is already established…or from information provided by the patients themselves." *Id*. (emphasis added). Further, an IRS agent was previously permitted by the defendant to examine a blank patient card and thus the agent "would be able to provide some foundation for purposes of authentication." *Id*. Here, the government knows nothing about the contents of the digital files, and has not had access to those materials like the IRS agent in *Rue*. Again, the government's foundation for authentication is demonstrably lacking compared to the cases it cites such as *Rue* and *Sideman*.

Other cases the government cites do not apply. *United States v. Hatfield* is distinguishable because the defendant "implicitly" authenticated the metadata at issue in that case by complying with the subpoena; here, no compliance has occurred. See *United States v. Hatfield,* No. 06-CR-0550 (JS), 2010 WL 1423103, at *2 (E.D.N.Y. Apr. 7, 2010) (…"[i]mplicit authentication occurs when an individual who receives a [subpoena] demanding production of documents complies…and thereby implicitly testifies that he owns or at least possesses the documents"). In *In re Boucher*, the court denied a motion to quash and ruled that the defendant's act of producing an unencrypted version of a drive containing child pornography would not be necessary to authenticate the drive because a

government agent had already viewed the contents of files on the encrypted version. *In re Boucher*, No. 2:06-MJ-91, 2009 WL 424718, at *3-4 (D. Vt. Feb. 19, 2009). Similarly, the respondent in *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992* had already produced a copy of the subpoenaed calendar, and therefore production of the original was not "a necessary link to incriminating evidence…" *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F.3d 87, 93 (2nd Cir. 1993). Here, the digital files are a necessary link to potentially incriminating evidence because they exist nowhere else. These cases have nothing in common with the present case and do not apply because the government has not been given access to any of the materials it seeks like the prosecutions received in the above-referenced cases. Tellingly, the government did not cite any cases where the contents of subpoenaed documents were authenticated based on file names. For these reasons, the government cannot adequately authenticate the digital files and the foregone conclusion exception does not apply.

### III. THE DOMINANT PURPOSE OF THE SUBPOENA IS TO PROVE THE OBSTRUCTION CHARGE, NOT TO INVESTIGATE ADDITIONAL CRIMES.

**A. The government's statements show that the subpoena is predominantly focused on the existing obstruction charge.**

"It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial…" *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 29 (2nd Cir. 1985) (quoting *United States v. Dardi,* 330 F.2d 316, 336 (2nd Cir.), *cert. denied,* 379 U.S. 845 (1964)). "The question of a grand jury's dominant purpose is…the application of a legal standard designed to ensure that the grand jury…is not misused by the prosecutor for trial preparation." *Id*. Despite the government's efforts to justify the Subpoena by identifying potential additional charges it might investigate, its own words demonstrate that the dominant purpose of the Subpoena is to bolster the obstruction charge.

The billing records are one of the "two discrete categories of information" sought. Dkt. 124 at 12. This category is solely focused on the obstruction charge-no other explanation exists for its inclusion. Specifically, the government says these records will assist "in determining who else was present while files were copied from Mattson's computer and whether any of those individuals later participated in deleting them." Dkt. 124 at 20. If such evidence were uncovered, it would speak directly and solely to the obstruction charge. The government says obtaining these records is necessary for the grand jury to "assure itself that no other individuals committed crimes in connection with the deletion of evidence from Mattson's computer." *Id*. at 21. The only identifiable people in the billing records are Fennemore employees, and as such the government acknowledges its intent to pursue the ludicrous idea that these employees may have committed obstruction. This is a fishing expedition of the highest order. These justifications demonstrate that the government is abusing the grand jury to obtain evidence for trial, regardless of whether a trial is scheduled now or not.

The government went to great lengths to muster potential new crimes the grand jury could investigate, but failed to show how the other category of information, the digital files, specifically relates to any potential crimes or co-defendants. See Dkt. 124 at 16-17. The government's statement that it possesses "strong circumstantial evidence that some or all of the files in Fennemore's possession are copies of those that once existed on Mattson's computer" again speaks not to additional crimes, but rather proof of obstruction. Dkt. 124 at 23. In another instance where the government tipped its hand on the dominant purpose for the Subpoena, the government said "the files themselves are also likely to contain their own metadata that may assist in identifying the individual and/or the computer user who created or last modified the document," a direct reference to obstructive behavior. *Id*. at 24. All of these instances indicate that the dominant purpose of the Subpoena is to impermissibly gather evidence for trial.

**B. The government's cited cases are distinguishable.**

The government seems to suggest with some of its case citations that a grand jury's powers are borderline limitless. These cases are distinguishable. *United States v. Calandra*, cited for the "wide latitude" grand juries are afforded "to inquire into violations of criminal law," dealt with "[t]he power of a federal court to compel persons to appear and testify before a grand jury…" and "whether to extend the exclusionary rule to grand jury proceedings…" *United States v. Calandra,* 414 U.S. 338, 345-349 (1974). *Calandra* did not explore the use of a grand jury solely for preparing a previously indicted case for trial, which is the issue here. In *In re Grand Jury Proc. (Pressman),* the court noted the distinction between a "previously-indicted case" and "a pending indictment," the latter being at issue in that case. *In re Grand Jury Proc.,* 586 F.2d 724, 725 (9th Cir. 1978). *Pressman* is therefore distinguishable from the present case.

The court in *United States v. Nguyen* had the benefit of grand jury transcripts to confirm that the government's subpoena was in fact for the purpose of determining "whether to charge anyone else…" *United States v. Nguyen*, 267 F. App'x 699, 703 (9th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Apr. 10, 2008). Mr. Mattson invites the government to follow the example set in *Nguyen* and provide the grand jury transcripts in this case to prove it is not using the Subpoena to prepare for trial. Short of such transparency by the government in this case, *Nguyen* does not apply. For the same reason, neither does *In re Special Grand Jury Proc. (Goodman),* where the government's *in camera* submission "more than satisfactorily" demonstrated "the relevancy of the subpoenaed documents to the grand jury's ongoing investigation." *In re Special Grand Jury Proc. (Goodman),* 1996 WL 14241, at *3 (9th Cir. 1996). Unlike the prosecutions in *Nguyen* and *Goodman*, the government has not disclosed any materials that would confirm the relevancy of its investigation.

**C. *Simels* applies to this case.**

The distinctions the government draws between this case and *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)* are irrelevant. See Dkt. 124 at 18-19. The fact that a trial subpoena was issued before the grand jury subpoena in *Simels* makes no difference. The *Simels* court stressed that "there was "no reason to believe that" the subsequent grand jury subpoena "signified a shift in the uses to which the government intended to put the information" it sought previously with the trial subpoena. *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 29-30 (2nd Cir. 1985). What mattered in *Simels* was the timing of the subpoena, which supported the defendants' "strong showing that the government's dominant purpose…was pretrial preparation." *Id.* at 30. The timing of the subpoena in this case also supports the conclusion that the government's dominant purpose here is to gather more evidence to prove its obstruction charge in preparation for trial.

**IV.    PRODUCING THE ENTIRE CONTENTS OF THE DRIVE WOULD VIOLATE MR. MATTSON'S FIFTH AMENDMENT RIGHTS AND ATTORNEY-CLIENT PRIVILEGE.**

When a client transfers materials to an attorney for the purpose of seeking legal advice, which occurred in this case, and a subpoena is directed to the attorney for those materials, the act of production itself would be incriminating, and therefore violate attorney-client privilege, see *In re Grand Jury Subpoena (85–W–71–5),* 784 F.2d 857, 860 (8th Cir.1986). Enforcing the Subpoena could have a chilling effect on attorney-client relations because if the government can circumvent the Fifth Amendment by sending subpoenas to attorneys when it needs more evidence, clients may be less inclined to share information with their counsel.

Mr. Mattson's Fifth Amendment rights are also at risk because the extensive types of documents on the subpoenaed drive may include incriminating personal documents, not just records related to business entities. To avoid compelling Mr. Mattson to incriminate himself by producing these documents, the court should either quash the subpoena in its entirety or at the very least

narrowly tailor it to exclude any personal, potentially incriminating documents from production.

V. **CONCLUSION**

The timing of the grand jury subpoena, requested nearly five months after the Indictment, coupled with the fact that the government had knowledge of Mr. Mattson's presence at his attorney's office before the Indictment was filed, strongly suggests that the government is improperly utilizing the grand jury to bolster its obstruction evidence. The government's stated intent to use the billing records to identify individuals involved in the deletion of files confirms the predominant focus on shoring up the obstruction count.

Furthermore, the Subpoena impermissibly violates Mr. Mattson's Fifth Amendment rights because the government has not established that the foregone conclusion exception applies. The government's claim that it can independently authenticate the files sought is inadequate; the government knows nothing about the actual contents of the files copied by Fennemore and cannot verify that they "are in fact what they purport to be." Moreover, requiring production of the files would force Mr. Mattson to discriminate between personal, incriminating documents and those belonging to collective entities, thus providing testimonial identifying information the government would need to authenticate the documents.

The attorney-client privilege is also at risk, as enforcing the Subpoena could have a chilling effect on attorney-client relations. The Court can prevent these rights violations and stop the government's abuse of the grand jury process by quashing the Subpoena or alternatively tailoring it more narrowly to exclude potentially incriminating personal files.

Date: December 5, 2025                                              Respectfully submitted,

                                                                    /s/_____
                                                                    RANDY SUE POLLOCK
                                                                    Counsel for Kenneth W. Mattson