UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KENNETH W. MATTSON,<br>Defendant. | Case No. 25-cr-00126-JST-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO QUASH GRAND JURY SUBPOENA**<br><br>Re: ECF No. 115 |

Before the Court is Defendant Kennth W. Mattson's motion to quash a grand jury subpoena issued to Fennemore Craig, P.C. ECF No. 115. The Court will deny the motion.

## I.   BACKGROUND

On May 13, 2025, a grand jury returned a nine-count indictment against Mattson, including an obstruction charge based on Mattson's alleged deletion of more than 10,000 files from his personal computer on or about May 22, 2024. ECF No. 1 ¶¶ 51–62. According to the indictment:

> These files related to "off-books" investors and limited partnerships in the scheme to defraud, tax documentation such as Form K-1s, partnership agreements, as well as financial and real estate documents. For example, the names of more than 280 of the deleted files contained the word "Divi," or "DDT," more than 125 file names contained "Heacock" or "HPLP," 13 file names contained the last name of D.R. [an alleged victim], at least three file names that contained the last name of K.B. [a second alleged victim], and at least three file names that contained the last name of K.A. [a third alleged victim]. The names of several of the deleted files referenced LM [LeFever Mattson] or KSMP [KS Mattson Partners, LP].

*Id.* ¶ 59. The indictment further alleges that Mattson "was at or near 1111 Broadway in Oakland, California," "[a]t the time these files were deleted." *Id.* ¶ 60. These charges followed the

government's forensic analysis of a laptop computer seized from Mattson's personal residence on May 22, 2024, that found that over 10,000 files had been deleted from the computer's recycle bin, and that another over 4,000 files had been deleted from the computer's hard drive.

It is not disputed that Fennemore Craig, P.C., Mattson's former counsel in a related civil proceeding, has offices at 1111 Broadway. At Mattson's initial appearance before a magistrate judge on May 23, 2025, defense counsel represented that Mattson brought his laptop to Fennemore for forensic imaging on May 22, 2024. The government unsuccessfully asked Mattson's criminal defense counsel for a copy of files in Fennemore's possession. It also sent a preservation letter to Fennemore on May 29, 2025, and communicated multiple times with Fennemore's outside counsel, including in September 2025, after Fennemore had stopped representing Mattson. On June 17, 2025, Fennemore's outside counsel confirmed that Fennemore has maintained its billing records and that it "never imaged Mr. Mattson's laptop" but "did copy some files from his laptop onto a hard drive." ECF No. 124-6 at 2. On September 15, 2025, outside counsel "confirmed that Fennemore was still in possession of the files and would continue to preserve them." ECF No. 124-1 ¶ 10. Fennemore continues to refuse to produce those files to the government voluntarily.

On October 16, 2025, the government obtained a subpoena for Fennemore to testify before a grand jury. The subpoena asks Fennemore to provide:

> 1. Any and all digital files you received from Kenneth W. Mattson ("Mr. Mattson") on May 22, 2024, or any copies or digital forensic images thereof.
>
> 2. Billing records related to Fennemore's representation of Mr. Mattson for work that took place on May 22, 2024 sufficient to identify persons involved with or who have knowledge of the creation of any forensic image of or any files provided by and/or transferred from any computer owned, controlled, or possessed by Mr. Mattson.

ECF No. 115-2 at 4. Mattson now moves to quash the subpoena. ECF No. 115.

## II.  DISCUSSION

### A.  Purpose of Subpoena

"The grand jury occupies a unique role in our criminal justice system. It is an

2

investigatory body charged with the responsibility of determining whether or not a crime has been committed," and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297, 300 (1991). "Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.* at 300. A grand jury witness may not be called "[s]olely to prepare a previously-indicted case for trial," but "the government has every right to interrogate witnesses on subjects relevant to a pending indictment," and "the duties of the grand jury are not performed until every clue and all witnesses are examined in order to charge the proper person with the appropriate crime." *In re Grand Jury Procs. (Pressman)*, 586 F.2d 724, 725 (9th Cir. 1978) (per curiam).

Mattson argues that the government wants to use the subpoena solely or primarily to gather evidence on the existing obstruction charge against him, but the Court is not persuaded. He criticizes the government for knowing "that Mr. Mattson was present at 1111 Broadway at the time of the alleged deletions but apparently [doing] nothing to investigate why or how those deletions could have come about—or even who had the laptop during the time of the alleged deletions." ECF No. 115 at 3. That is exactly what the government seeks to have the grand jury investigate through the subpoena. And while Mattson asserts that it is "ludicrous" to suggest that Fennemore employees may have been involved with any file deletions, *id.* at 5; ECF No. 130 at 11, he cites no authority to support that conclusion. In any case, a "grand jury can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not," *R. Enters.*, 498 U.S. at 297 (citation modified), and it may "embark[] upon an inquiry focused upon individuals suspected of wrongdoing, or is directed at persons suspected of no misconduct but who may be able to provide links in a chain of evidence relating to criminal conduct of others," *United States v. Mandujano*, 425 U.S. 564, 573 (1976). Moreover, Mattson does not dispute that the government is entitled to investigate potential additional crimes, and the government has provided examples of other alleged victims beyond the individual investments identified in the indictment. *See* ECF No. 124 at 16–17. Given these permissible purposes, the

3

1  Court is not persuaded that the sole or even primary purpose behind the subpoena is to prepare the
2  already existing obstruction count for trial.
3       Additionally, the Court does not find Mattson's reliance on *In re Grand Jury Subpoena*
4  *Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26 (2d Cir. 1985), to be persuasive.  In that
5  case, the government had issued and withdrawn a trial subpoena seeking the same evidence it
6  subsequently sought by a grand jury subpoena.  *Id.* at 29–30.  The court concluded that there was
7  "no reason to believe" that the change in approach "signified a shift in the uses to which the
8  government intended to put the information sought," and that quashing the grand jury subpoena
9  was therefore an "appropriate remedy."  *Id.*  Here, by contrast, the government issued an evidence
10 preservation letter indicating that the material was "relevant to an ongoing federal criminal
11 investigation."  ECF No. 115-1 at 2 (emphasis omitted).  Such language was not limited to the
12 indictment against Mattson that was already filed; the letter did not request any material
13 specifically for use at trial; and no trial date has even been set in this case.  The Court therefore
14 finds *Simels* to be factually distinguishable.
15      For the above reasons, the Court will not quash the subpoena on grounds that the
16 government seeks to use it for an improper purpose.
17      **B.**    **Timing**
18      Nor does the Court find that the timing of the subpoena warrants quashing it.  Mattson
19 argues that the government failed to comply with its own guidelines to make "all reasonable
20 attempts . . . to obtain the information from alternative sources before issuing the subpoena to an
21 attorney."  U.S. Dep't of Just., Just. Manual § 9-13.410(2), https://www.justice.gov/jm/jm-9-
22 13000-obtaining-evidence#9-13.410 [https://perma.cc/B4J4-6FNS].  But the guidelines explain
23 that those attempts "shall include reasonable efforts to first obtain the information voluntarily from
24 the attorney," *id.*, which the government attempted to do multiple times.  Additionally, the policy
25 requires authorization by the Assistant Attorney General or a Deputy Assistant Attorney General
26 for the Criminal Division, *id.* § 9-13.410(1), which also explains some of the delay in obtaining
27 the subpoena.
28

4

**C.      Billing Records**

Other than arguing that seeking Fennemore's billing records indicates that the subpoena was sought for an improper purpose, Mattson makes no arguments regarding production of the billing records. Because the Court has already rejected Mattson's improper purpose argument, it will deny the motion to quash as to this category of documents.

**D.      Files**

Mattson makes two additional arguments regarding producing the files copied from his laptop: that it would be testimonial and therefore violate his Fifth Amendment rights, and that it would violate attorney-client privilege.

On the first argument, the Ninth Circuit has explained:

> The Fifth Amendment grants persons the privilege not to provide the State with self-incriminatory evidence of a testimonial or communicative nature. This protection extends not only to oral questioning but also applies to prevent an individual from having to produce documents for investigative bodies if the act of production itself would be testimonial. This protection also extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights. . . .
>
> Nevertheless, where the existence and location of the papers are a foregone conclusion and the [respondent] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers, enforcement of the summons does not touch upon constitutional rights. For the foregone conclusion exception to apply, the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents.

*United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201–02 (9th Cir. 2013) (citation modified).

The government asserts that there are no Fifth Amendment issues because the foregone conclusion exception applies. Mattson challenges only the authenticity prong of the exception and does not contest that the government has established independent knowledge of the documents' existence or the respondent's possession or control of the documents.

> The authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents are in fact what they purport to be.

5

> Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents.

*In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 912 (9th Cir. 2004) (citation modified). The authenticity prong is not satisfied where "the government has failed to demonstrate that it can authenticate the documents . . . described in the subpoena without the identifying information that [the respondent] would provide by using his knowledge and judgment to sift through, select, assemble, and produce the documents." *Id.* at 913. By contrast, the authenticity prong is satisfied "where the government had prior knowledge that the documents were in the custodian's possession and the government could independently confirm their existence and authenticity through the accountants who created them." *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 412–13 (1976)).

In this case, Fennemore has confirmed that it received the files that are the subject of the subpoena from Mattson, and Mattson also does not dispute that he had possession of the files. Nor does Mattson contend that the files copied by Fennemore include any documents of which the government is not already aware. For example, he does not argue that the responsive documents might include files that were not located on his laptop when the government obtained it and also are not among the documents for which the government has presented evidence of deletion. Consequently, "the Government is in no way relying on the truth-telling of [Mattson] to prove the existence of or his access to the documents." *Fisher*, 425 U.S. at 411 (citation modified). In addition, the subpoena requests copies of all digital files Fennemore received from Mattson on May 22, 2024—which does not require Fennemore (or Mattson) to "sift through, select, [or] assemble" anything. *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d at 912. The Court therefore concludes that the act of production would not be testimonial.

The Court must still consider whether the government can sufficiently establish the authenticity of any documents produced in response to the subpoena. "The government need only make a prima facie showing of authenticity, as the rule requires only that the court admit evidence

if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). Evidence may be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with the circumstances." Fed. R. Evid. 901(b)(4).

The documents that Fennemore might produce in response to the subpoena fall into two categories: either they are copies of documents the government already has from Mattson's laptop or they are documents for which the government has found evidence of deletion from Mattson's laptop. As to the first category, authenticity could be established by asking the jury to compare the contents of those documents with the contents of documents found on Mattson's laptop. *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993).

As to the second category, while Mattson correctly observes that "the government did not cite any cases where the contents of subpoenaed documents were authenticated based on file names," ECF No. 130 at 10, the government does not rely solely on file names to attempt to authenticate any files that may have been deleted from Mattson's laptop but for which Fennemore may have a copy. To the contrary, the government seeks to rely on file names, extensions, file sizes, and last modified information to allow comparisons between documents:

> If copies of the files that were deleted from Mr. Mattson's computer on May 22, 2024 exist on another device, attributes from those files can be compared with the information in Exhibit 2 to determine if there was some evidence that the files were the same files that were deleted from Mr. Mattson's computer. This includes, for example, the information in the following columns of Exhibit 2: Filename (Column G), Extension (Column H), FileSize (Column I), and LastModified (Columns X and Y). If the information from the files match the information in Exhibit 2, it would tend to show (although not definitively prove) that they were copies of the files that were deleted from Mr. Mattson's computer on May 22, 2024.

ECF No. 124-8 ¶ 10. Additionally, the files themselves may contain "distinctive metadata," such as date and time stamps, that would "meet the threshold of authenticity." *Tamares Las Vegas Props., LLC v. Travelers Indem. Co.*, 586 F. Supp. 3d 1022, 1030 (D. Nev. 2022). Reliance on such "distinctive characteristics," Fed. R. Evid. 901(b)(4), is sufficient for the government to make a prima facie showing of authenticity as to this category of documents.

For the above reasons, the Court rejects Mattson's arguments regarding authenticity and

concludes that the foregone exception applies. Accordingly, "enforcement of the [subpoena] does not touch upon constitutional rights," *Sideman & Bancroft*, 704 F.3d at 1202 (citation modified), and the Court will not quash the subpoena on the basis that Mattson's Fifth Amendment rights would otherwise be violated.

Finally, Mattson argues that enforcing the subpoena would violate the attorney-client privilege because it would require production of incriminating documents. Application of the attorney-client privilege in these circumstances is derivative: If the documents in question are "unobtainable by summons from the client, [they] are also unobtainable by summons directed to the attorney by reason of the attorney-client privilege." *Fisher*, 425 U.S. at 405. The case on which Mattson relies explains that "[t]he proper inquiry when material has been transferred to an attorney for the purpose of legal advice and the subpoena is directed to the attorney . . . is whether the subpoena, if directed to the client himself or herself, would require (1) compulsion of a (2) testimonial communication that is (3) incriminating." *In re Grand Jury Subpoena (85-W-71-5)*, 784 F.2d 857, 860 (8th Cir. 1986) (citation modified). As discussed above, the Court does not find the act of production at issue here to require any testimonial communication— one of the three required elements—and it is therefore immaterial whether the production might be incriminating.

## CONCLUSION

Mattson's motion to quash the grand jury subpoena to Fennemore is denied. The Court "makes no ruling on whether the Government can in fact authenticate" any files produced in response to the subpoena, and it also prohibits the government from making use of Fennemore's "act of production to authenticate [any files produced in response to the subpoena] either before the grand jury or a petit jury." *In re Boucher*, No. 2:06-mj-91, 2009 WL 424718, at *4 & n.2 (D. Vt. Feb. 19, 2009).

**IT IS SO ORDERED.**

Dated: December 22, 2025

_____
JON S. TIGAR
United States District Judge

8