RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: 510-763-9967
Facsimile: 510-380-6551
rsp@rspollocklaw.com

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 25-cr-00126-JST-1 |
| ) | |
| Plaintiff, ) | **DEFENDANT KENNETH W.** |
| vs. ) | **MATTSON'S APPEAL FROM** |
| ) | **MAGISTRATE'S ORDER DENYING** |
| ) | **RENEWED MOTION TO MODIFY** |
| ) | **BOND** |
| KENNETH W. MATTSON. ) | |
| ) | Hearing Date:  January 9, 2026 |
| Defendant ) | Hearing Time: 9:30 a.m. |

## I.    INTRODUCTION

Defendant Kenneth W. Mattson appeals from Magistrate Judge Alex G. Tse's Order denying Defendant's Renewed Motion to Modify Bond. See **Exhibit A**, **Dkt. 140**. The bond currently in place violates the Eighth Amendment of the Constitution because it is excessive. More than six months have passed since the initial bail hearing in this matter. In that period, Mr. Mattson has proven that he is neither a flight risk nor a danger to the community. These facts are particularly evident now because Mr. Mattson does not, as originally alleged in May 2025, have substantial financial means at his disposal to flee or initiate any fraudulent schemes.

Even more importantly, certain facts known at the time of the first bail hearing have not changed. Mr. Mattson continues to have no criminal history, still lives in Northern California as he has his entire life, and has maintained substantial ties to his community and family that reside locally. Mr. Mattson has not solicited investments from "friends and neighbors" as the government previously argued might happen. In fact, it is now evident that he does not even have the ability to do so. And now, as in May 2025, the government cannot point to any international activity that would support a claim that Mr. Mattson is a flight risk.

The current bail is excessive and far more than is necessary to ensure Mr. Mattson's appearance in court. His appearance can be secured by reducing bail to an amount that does not violate the Eighth Amendment, and the Court should set aside the magistrate's order denying the modification request.

## II.     PROCEDURAL BACKGROUND RELEVANT TO THE PRESENT APPEAL

Bail hearings before the magistrate in this matter occurred on May 23, May 28, June 11, October 1 and December 10th. At the conclusion of the May 28th detention hearing, the magistrate adopted the recommendation of pretrial service and released Mr. Mattson on a $4 million dollar bond of which $3.9 million dollars was to be secured by two pieces of property and $200,000. The properties were (1) a home owned by Mr. Mattson's brother-in-law and sister-in-law in Reno, Nevada, owned free and clear and worth over $600,000 and (2) a home owned by Mrs. Stacy Mattson at 210 La Salle in Piedmont, valued at $5 million dollars. Mr. Mattson has been under pretrial supervision, with a GPS monitor, since his May 28th release on bond. He has been fully compliant with the terms of his pretrial release under the supervision of officer Brad Wilson, who regularly visits him in Sonoma.

The previous motions to modify the bond did not focus on the Eight Amendment argument that it was excessive, but rather whether it needed to be secured by the La Salle property. Litigation before this Court addressed whether the posting of the La Salle property would be a violation of Mr. Mattson's Sixth Amendment right to counsel.

Magistrate Judge Tse held bail hearings in this matter on May 23rd, May 28th, June 11th, May 28th and June 11th. In the original pre-bail report, which was considered at the May 28th hearing, pretrial services said that Mr. Mattson posed a risk of non-appearance and a financial danger to the community that could be reasonably mitigated by a combination of release conditions. They noted the following information in their report regarding risk of flight and danger to the community:

**Aggravating Factors Re. Flight:**

- Nature of the offense charged
- Possible significant assets as reflected in public records

**Mitigating Factors Re. Flight**:

- Family ties to the district or community
- Length of residency in the district or community
- Strong family support
- Available bail resources
- History of employment

**Aggravating Factors Re. Danger to the Community**:

- Nature of the offense

**Mitigating Factors Re. Danger to the Community**

- No prior criminal history
- No history of violence

- Third party custodian available

At the bail hearing on December 10th the defense argued for a modification of the bond because of the pending trustee auction sale of La Salle, Mr. Mattson's changed financial conditions and the passage of time since Mr. Mattson's original release on bond. Because of these factors, the defense argued that the requirement of deeding La Salle to the court should be deleted.

### III.  Standard of Review

Although the standard of review is not set forth in the statute, courts appear in general agreement that the district court should make its own independent conclusions and review the magistrate's findings *de novo*. See *United States v. Leon*, 766 F.2d 77, 80 (2nd Cir. 1985).

### IV.  ARGUMENT

#### A. Legal Standard.

The Eighth Amendment states, "[e]xcessive bail shall not be required." U.S. Const. Eighth Am. "Bail set at a figure higher than an amount reasonably calculated to fulfill" the purpose of securing a defendant's appearance "is 'excessive' under the Eighth Amendment." *Stack v. Boyle,* 342 U.S. 1, 5 (1951). Further, "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." *Id*. Also see *Galen v. County of Los Angeles,* 477 F.3d 652, 659–60 (9th Cir.2007) (holding that bail may not be set in an amount that is excessive in relation to the interests sought to be achieved). To find a violation of the Excessive Bail Clause, the Court must determine that a condition of release such as bail is excessive "in light of the perceived evil." *United States v. Salerno,* 481 U.S. 739, 754 (1987).

B. **The Current Bail is Excessive and Violates the Eighth Amendment.**

1. **The "nature and circumstances" of the charges do not justify the current bail amount.**

Mr. Mattson is charged with wire fraud, money laundering, and obstruction of justice. **Dkt. 1**. While these charges are not trivial, defendants facing far more serious charges have successfully argued that their bail was excessive in violation of the Eighth Amendment.

In *United States v. Leisure*, the defendants were charged with making and possessing a destructive device, racketeering, and obstruction of justice. *United States v. Leisure*, 710 F.2d 422, 423 (8th Cir. 1983). The court considered the nature and circumstances of the offenses charged and the weight of the evidence, noting that the defendants were "accused of very serious and extremely violent crimes," including threats to a government witness. *Id*. at 426. Despite the gravity of these circumstances, the court nevertheless found that the $2 million dollar bail for the named defendant was excessive. *Id*.

The court identified a variety of facts, all similar to the present case, to support its conclusion "that bail in an amount substantially less than the amounts set by the district court would be reasonably calculated to assure appellants' appearance at trial." *Id*. All defendants had either lived in the jurisdiction all their lives or for many years, as did their immediate families. *Id*. at 425. All except one defendant owned property in the area, and each had either not been on bond or had appeared in court when required to do so in the past. *Id*. at 425-26. All this evidence "indicated that appellants would appear at their trial," and the court concluded that "the very substantial cash bonds" did not "represent a reasonable calculation of the conditions necessary to assure the appellants' appearance at trial." *Id*. at 425.

After finding that the district court abused its discretion in refusing to reduce the appellants' bail, the court reduced the total amount of bail to a quarter of the value it had previously been. *Id*. at

427. Specifically, the $2 million dollar bail was reduced to "$500,000, of which $200,000 [was] secured by a 10% cash deposit, $200,000 [was] secured by real property owned by appellant…and $100,000 [was] secured by corporate surety or 10% cash deposit or other real property owned by appellant or his relatives or any combination thereof." *Id*.

> Compared to the facts in *Leisure*, the nature and circumstances of the charges in this case do not warrant the current excessive bail amount. The crimes alleged against Mr. Mattson are not violent like those in *Leisure*. Mr. Mattson has also never threatened any witnesses like the defendants in *Leisure*. The facts used to support the ruling in *Leisure* are present here. Like the *Leisure* defendants, Mr. Mattson has lived in the district all his life and owned multiple properties here. His immediate family lives in California. Most importantly, he has no criminal history, and to date has made all appearances required in this case. The bond secured by his brother and sister-in-law's home in Reno, prior to the deeding of the La Salle property, had been adequate to ensure his appearances in court. Based on these factors, the Court

should follow the example set in *Leisure*, find the current bail excessive under the Eighth Amendment, and reduce the bond accordingly.

**2. Mr. Mattson is not a flight risk, and the government cannot show that he is.**

The current $4 million dollar bail was based on a determination that Mr. Mattson was a flight risk. Time has proven that he is not. The Ninth Circuit has ruled that defendants with substantially less ties to their jurisdiction than Mr. Mattson has to this District nevertheless failed to pose flight risks. In *United States v. Motamedi*, the Ninth Circuit found that the government failed to establish by a preponderance of the evidence that an Iranian citizen who allegedly maintained large foreign bank accounts and acted as an agent of the Iranian government posed a flight risk. *United States v. Motamedi*, 767 F.2d 1403, 1404 (9th Cir. 1985). Even the defendant's alienage as an Iranian citizen

with substantial international ties did not "point conclusively to a determination" that he posed "a serious risk of flight." *Id*. at 1408.

The court also considered the defendant's conduct during the pendency of the government's investigation as a factor in determining that he was not a flight risk. *Id.* at 1409. The defendant pointed out that his knowledge of the government's investigation predated his arrest and indictment. *Id*. at 1408. Notably, the government informed him upon his arrest that an indictment was forthcoming, and he was nevertheless released for several weeks before the indictment was issued. *Id*.

Mr. Mattson has much greater ties to his community and this jurisdiction than the defendant in *Motamedi*, and he should not be considered a serious flight risk either. Mr. Mattson has no credible international ties like the defendant in *Motamedi*. Mr. Mattson's behavior while the investigation in this case was pending also negates any risk of flight imagined by the government. Mr. Mattson knew about the government's investigation over a year before the indictment, a fact that the government conceded. Since the search of his home on May 24, 2024, Mr. Mattson has maintained his residence in Sonoma and carried on his daily life despite intense media scrutiny. As previously stated, Mr. Mattson is a lifelong resident of Northern California, where his wife, four children, and grandchildren reside. Further, Mr. Mattson has no criminal history and was not on probation, parole, or other release at the time of his arrest. Importantly, his passport is now expired and has been in the possession of his counsel for over a year. Mr. Mattson's actions over the past year demonstrate that he is not a flight risk, a factor which supports a reduction of his bond to an amount that does not violate the Eighth Amendment.

///

///

///

**3. Mr. Mattson is not a danger to the community, and the government cannot show that he is.**

Previous government arguments that Mr. Mattson is a danger to the community are even less persuasive now with the passage of time. The government argued in the past that Mr. Mattson would be an "economic danger" because he could still solicit clients for investments. **Dkt. 6** at 17-18. At that time, bankruptcy proceedings were pending but Mr. Mattson was not yet in personal bankruptcy. As of September 2, 2025, he has been in Chapter 7 bankruptcy. Moreover, there are specific conditions of his bond that he not act as a fiduciary and not have new investments. Additionally, because he and his company KSMP are both in bankruptcy proceedings he has absolutely no assets at his disposal.

> Regarding the firearms registered to Mr. Mattson, there was never any evidence that he posed a danger to anyone, and no evidence ever surfaced of any violent acts on his part since May. He has no history of violence or any criminal history at all. Any speculative dangers that Mr. Mattson posed have been mitigated by the conditions of his release and should not factor in considering whether to reduce his bond.

**A. Similarly Situated Defendants in this District have been Released on Much Less Bond than Mr. Mattson's.**

Criminal defendants in this District facing charges of fraud on a wider scale than alleged here have been released on much smaller bonds than Mr. Mattson. Mr. Mattson should be treated the same or better than these defendants.

In *United States v. Holmes*, the defendant was released on an unsecured $500,000 bond in a case involving conspiracy and substantive wire fraud counts impacting patient health care nationwide. *United States v. Holmes*, No. 5:18-cr-00258-EJD (Holmes) (**Dkt. 22** at 8). The wire

transfers in that case totaled more than $140 million dollars.[1] In an adjunct case, the co-defendant was also released on an unsecured $500,000 bond. *United States v. Holmes*, No. 5:18-cr-00258-EJD (Balwani) (**Dkt. 22** at 8). That defendant faced wire fraud charges and allegations of deliberately concealing defects in health care technology to induce more than $730 million dollars in investments.[2]

Most recently, this Court ordered the release of a defendant in a $120 million dollar securities fraud involving funding for a private Canadian technology company. The Series B-1 funding round raised $86.2 million from five U.S. investors who are mentioned in the SEC complaint filed on September 25th. Criminal wire fraud charges were filed in September 2025 against Matthew Hudson, a Canadian citizen who lives in Cambridge, England, who was arrested at SFO on his way back to the UK. (Case No. 25-00349-RFL-AGT). Mr. Hudson's only tie to the United States and this district are his aunt and uncle who live in Los Gatos. While the Office of Pretrial Services did not propose a specific monetary amount for the bond, they recommended release. This Court released Mr. Hudson on a $250,000 secured bond and a One-million-dollar unsecured bond signed by his aunt and uncle. He was ordered to reside with his relatives and to be subject to GPS monitoring. His relatives could not serve as custodians as they travel frequently.

By contrast to Mr. Hudson, Mr. Mattson has lived in California all his life and has resided in Alameda County for thirty years prior to moving to Sonoma where he has lived for the past four years. His children and grandchildren live in Alameda and Sonoma County. He has been under pretrial supervision with GPS monitoring since his release from custody on May 28th and his officer

---

[1] https://www.justice.gov/usao-ndca/pr/theranos-founder-elizabeth-holmes-found-guilty-investor-fraud

[2] https://www.justice.gov/usao-ndca/pr/theranos-president-sentenced-more-12-years-fraud-jeopardized-patient-health-and-bilked

visits him monthly. His wife is his custodian. He has been fully compliant with the conditions of his release.

In comparison, Mr. Mattson's bond is eight times as much as the defendant in *Holmes*, which on its face is excessive. The Court can remedy this Eighth Amendment violation by reducing Mr. Mattson's bond so that it comports with other defendants in this District who faced similar but even more serious allegations.

None of the speculative theories of flight and economic danger the government presented at the initial bail hearing in May to support the current bond have come to pass. By staying in this district, maintaining his familial relationships, adhering to his conditions of release, and most importantly, making appearances when required, Mr. Mattson has proven he is neither a flight risk nor a danger.

At the last bail hearing on December 10th the Court required the deeding of the La Salle property to fully secure the $4 million dollar bond, but there was never a review of whether Mr. Mattson remains a flight risk or a danger to warrant such an excessive bond. Pretrial Services has never weighed in on whether their initial conclusion in May 2025 that he was a risk of flight and a danger would still be their position six months later and whether the bond secured by only $600,000 was sufficient.

///

///

///

///

///

This case has generated a great deal of press and the government most recently submitted approximately one hundred letters from former investors calling for Mr. Mattson to be in custody. While the sentiments of alleged victims are important, they are not a determinative factor under the Bail Reform Act. Other defendants charged with more expansive fraud charges recently in this district have received drastically lower bonds than Mr. Mattson. All these factors demonstrate that Mr. Mattson's bail is excessive under the Eighth Amendment and should be reduced accordingly

Date: December 19, 2025

Respectfully submitted,
/s/_____
RANDY SUE POLLOCK
Counsel for Kenneth W. Mattson