RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
286 Santa Clara Avenue
Oakland, CA 94610
Telephone: 510-763-9967
Facsimile: 510-380-6551
rsp@rspollocklaw.com

Attorney for Defendant
KENNETH W. MATTSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-00126-JST-1 |
| Plaintiff, | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT KENNETH W. MATTSON'S APPEAL FROM MAGISTRATE'S ORDER DENYING RENEWED MOTION TO MODIFY BOND |
| vs. | |
| KENNETH W. MATTSON. | |
| Defendant | Hearing Date: January 9, 2026 <br> Hearing Time: 9:30 a.m. |

**I.    Introduction**

The government in its opposition skirts dangerous constitutional ground by focusing on victims' rights and the allegations in the indictment, which have not been proven. Mr. Mattson is innocent until proven guilty, yet the government acts as if a verdict has already been rendered. Mr. Matton's actions since May 2025, not allegations in the indictment or putative victims' statements, should guide the Court's decision on whether Mr. Mattson is a flight risk or not, and whether to find that bail is excessive in this case.

*REPLY TO GOV'T OPPOSITION TO APPEAL FROM MAGISTRATE'S ORDER DENYING RENEWED MOTION TO MODIFY BOND*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

1

The fact remains that Mr. Mattson was not afforded a reevaluation by Pretrial Services of the conditions of his release before or after the December 10th hearing denying bond modification. At the very least, the Court should order a reevaluation of Mr. Mattson's release conditions by Pretrial Services to determine if they still consider him a flight risk or a danger.

**II.     The Government's Overemphasis on the CVRA at this Stage of the Proceedings Implicates Mr. Mattson's Presumption of Innocence.**

The government rightly acknowledged "that victim statements are not a determinative factor under the Bail Reform Act," but nevertheless inexplicably spent an entire page of its brief discussing victims' rights. The right of victims to be present at the pretrial hearings in this case is not at issue nor is it contested. However, the government's overemphasis on the CVRA comes into direct conflict with Mr. Mattson's presumption of innocence. In *United States v. Turner,* a case cited by the government (Dkt. 152 at 18), the court grappled with the inconvenient truth that at the pretrial stage, "the CVRA may impermissibly infringe upon the presumption" of a defendant's innocence. *United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005). On this point, the *Turner* court said:

> At this stage of the case, however, the defendant continues to enjoy a presumption that he is innocent of the charge that he committed a Federal offense. Strictly speaking, then, I might be constrained to presume that there is no person who meets the definition of "crime victim" in this case. That syllogism-which renders the CVRA inapplicable to this or any other criminal case unless and until the defendant is proved guilty beyond a reasonable doubt-produces an absurd result that I must presume Congress did not intend. Nevertheless, I cannot ignore the possibility that by requiring me to afford rights to "crime victims" in this case, the CVRA may impermissibly infringe upon the presumption of Turner's innocence. *Id*.

The *Turner* court's analysis is directly applicable to this case, where Mr. Mattson has faced throngs of victims at every hearing and constant media scrutiny. The Court is urged to respect Mr. Mattson's presumption of innocence and not use victim statements or the unproven allegations in the indictment as determinative factors in deciding whether the conditions of bail are excessive.

### III. The Government Continues to Promote the Same Factual Inaccuracies It Has Since May 2025.

#### A. The Mattsons Were Not Required to Provide a Financial Declaration to Pretrial Services.

The government continues to insinuate that the Mattsons were less than forthcoming by not providing a financial declaration to Pretrial Services, see Dkt. 152 at 10 ("[b]oth Mattson and his wife refused to tell Pretrial Services anything about his finances"); Dkt. 105 at 5 ("[n]otably, according to the Pretrial Services officer, both the defendant and his wife, Stacy Mattson, 'declined to discuss' financial resources"). When the government first used this trope at the May 28, 2025 detention hearing, Magistrate Judge Tse responded "…that's not unusual given in the interview he's been charged…and he doesn't have to incriminate himself to answer that…" Exhibit E to Dkt. 112 (Transcript of Detention Hearing, pp. 33-35).

The defense thought it had heard the last of this "fact" back in November when it pointed out the constitutional implications of this assertion in its November 10, 2025 reply (Dkt. 112). Apparently, the government thinks that this will find more receptive ears in front of this Court, however the defense response is exactly what it said back in November: basic constitutional principles mandate that no adverse inference can be drawn from a defendant exercising his Fifth Amendment rights, so the Court should ignore the government's attempt to do so here.

#### B. Many of the Government's Facts Are Wrong

The government continues to argue that Mr. Mattson has access to other assets despite the fact that they are in regular contact with bankruptcy counsel in the related litigation and they know that all his assets are either in KSMP Chapter 11 proceedings or in his personal Chapter 7 bankruptcy estate. The Chapter 7 trustee controls all his assets. See **Exhibit A**, Declaration of Ruth Auerbach, Mr. Mattson's personal bankruptcy counsel. The only assets outside of bankruptcy are

REPLY TO GOV'T OPPOSITION TO APPEAL FROM MAGISTRATE'S ORDER DENYING RENEWED MOTION TO MODIFY BOND
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

3

homes that have *lis pendens* placed by the government. These assets could not be used even if there were no bankruptcy estates. Additionally, it should be noted that Mr. Mattson did not want to go into personal bankruptcy. The creditors put him into an involuntary case.

Government counsel continues to raise more points that he knows are mistatements. First, Mr. Mattson did own his Sonoma home in May 2025. Title was in the name of his company, KSMP. It was not until June 6, 2025, that KSMP consented to the entry of a stipulated order for relief in the involuntary case, which was signed by Judge Novak on June 9, 2025. Second, he did not fail to disclose the interest of the tenant at La Salle. There is a recorded deed of trust in favor of the tenant that is evident in any title search. Third, Mr. Mattson does not have interests in any securities or IRA accounts as past filings have shown. Fouth, he did not submit the "customary financial CJA affidavit" when counsel asked to be appointed on December 10th because the Magistrate Judge did not ask him to do so. This list could go on and on, but the real issue is whether he now is a flight risk or a danger and whether a $4 million dollar bond is necessary to secure his appearance.

### IV.     The Government Misconstrues Excessive Bail Clause Jurisprudence.

The government's contention that "no court has ever found a financial condition of release to violate the Eighth Amendment" defies a plain reading of the rulings and facts of *Leisure* and *Stack*. Dkt. 152 at 19. The courts in *Leisure* and *Stack* considered financial conditions and both ruled that bail was excessive.

The court in *Leisure* said, "[t]he test for excessiveness is not whether [the] defendant is financially capable of posting bond but whether the amount of bail is reasonably calculated to assure the defendant's appearance at trial." *United States v. Leisure*, 710 F.2d 422, 425 (8th Cir. 1983) (citations omitted). Regardless of the statutory framework used, the fact remains that the court in *Leisure* found the $2 million- and $1 million-dollar financial conditions of bail excessive. *Id*. at 426.

4

REPLY TO GOV'T OPPOSITION TO APPEAL FROM MAGISTRATE'S ORDER DENYING RENEWED MOTION TO MODIFY BOND
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

The court subsequently "conclude[d] that the amount of bail set by the district court…[was] excessive…" *Id*. This ruling, based on the words of the excessive bail clause, directly implicates the Eighth Amendment.

The defense cited *Stack v. Boyle* for the general proposition that "[b]ail set at a figure higher than an amount reasonably calculated to fulfill" the purpose of securing a defendant's appearance "is 'excessive' under the Eighth Amendment." Dkt. 151 at 4 (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). While *Stack* was decided under a superseded statutory regime, its general premise, that excessive bail violates the Eighth Amendment, is still valid. Further, the *Stack* court considered the financial condition of $50,000 bail for each petitioner and ruled "we are of the opinion that the fixing of bail" at that amount could not "be squared with the statutory and constitutional standards for admission to bail." *Id*. at 3-6.

In contrast, cases the government cited are factually distinguishable. *United States v. Gardner*, Dkt. 152 at 19-20, did not deal with financial conditions of release and focused instead on whether "the conditions imposed by the Adam Walsh Act…constituted excessive bail in violation of the Excessive Bail Clause of the Eighth Amendment…" *United States v. Gardner,* 523 F. Supp. 2d 1025, 1028 (N.D. Cal. 2007). Another case the government cites, *United States v. Fidler*, Dkt. 152 at 19, dealt with a defendant who was detained because he could not post bond. *United States v. Fidler,* 419 F.3d 1026, 1027 (9th Cir. 2005). Mr. Mattson has posted bond, so *Fidler* is distinguishable based on that fact.

V.     **Conclusion**

To reach its decision on whether bail as currently set is excessive, the Court should focus on what has transpired since May 2025, and what has not. Mr. Mattson *has* cooperated with Pretrial Services, stayed in this district, maintained ties with his children and grandchildren whom he sees on

5

*REPLY TO GOV'T OPPOSITION TO APPEAL FROM MAGISTRATE'S ORDER DENYING RENEWED MOTION TO MODIFY BOND*
UNITED STATES VS. KENNETH W. MATTSON Case No. 25-cr-00126-JST-1

a regular basis every week, and he immediately recorded the La Salle property on December 11th as ordered by the Court.[1] Mr. Mattson *has not* fled, committed any crimes, or been a threat to his community. These are the factors that matter the most, and the Court should not, at this stage of the proceedings, allow the government to paint Mr. Mattson guilty before a verdict has been reached.

The most recent bail modification request heard by the Magistrate Judge on December 10th raised two new issues: (1) the pending foreclosure sale of La Salle set for December 30th[2] and (2) Mr. Mattson's changed financial situation.  The Court never asked Pretrial Services if their position on flight and danger had changed since their initial report on May 28th.  They are in the best position to weigh in since they have supervised him for six months. The Court should order Pretrial Services to reassess the conditions of release and grant Mr. Mattson's motion to reduce the amount of the bond to an amount less than the $4 million.

Date: January 2, 2026                                            Respectfully submitted,

                                                                                    /s/_____
                                                                                 RANDY SUE POLLOCK
                                                                                 Counsel for Kenneth W. Mattson

---

[1] The home was docketed by the Clerk's Office on December 12th. Government counsel was sent a copy of the recorded deed on December 11th.
[2] The trustee sale has been indefinitely postponed.