CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NIKHIL BHAGAT (CABN 279892)
NOAH STERN (CABN 297476)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-6982

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH W. MATTSON,<br><br>Defendant. | CASE NO. 4:25-CR-00126 JST<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION REGARDING EXHIBIT LIST, WITNESS DISCLOSURE, AND DISCOVERY CUTOFF (ECF 220) |

Defendant Kenneth Mattson has moved the Court to impose three pretrial requirements on the government. First, Mattson asks the Court to order that all exhibit lists "approximate, as closely as reasonably possible, the exhibits actually offered at trial." Dkt. No. 220-2 (Mot.). Second, Mattson asks the Court to order the government to provide him its anticipated witness order five days before trial, prompt updates to any changes of the order, prompt disclosure of any information the government provides to its witnesses about the timing of their expected testimony, and 48-hours' notice (with Saturday and Sunday not counting) of the witnesses the government will call the next two trial days. Third, Mattson asks the Court to impose a discovery cutoff 30 days before the pretrial conference. The Court should deny all of Mattson's requests.

**A. Mattson's Exhibit List Request is Unprecedented, Unwarranted and Unworkable**

Mattson cannot point to a single instance where a court has ordered that exhibit lists "approximate, as closely as reasonably possible, the exhibits actually offered at trial," nor would it be workable to enforce such a requirement. The government, of course, will compile its exhibit list in good faith, listing only documents and objects that it intends to introduce into evidence at trial or otherwise believes it may need to use. *Cf.* N.D. Cal. Civ. L. R. 11-4(a) (duties of members of the bar). But it is impossible to compile an exact list in advance of trials because trials are unpredictable, issues likely will be resolved by stipulation (often times at the last minute), and the government does not know what defenses will be offered or how the defendant will cross-examine its witnesses. The purpose of exhibit lists is to give the opposing side fair notice of potential items that may come in at trial. *Cf.* Fed. R. Civ. P. 26(a)(3)(A) (in civil cases, requiring the party to disclose "each document or other exhibit" that it "expects to offer and those it may offer if the need arises"). If the defendant stipulates to certain facts, the government will not need certain exhibits. If a witness's testimony comes in differently than expected, the exhibits, too, will be different. If there are indications that the jury (or the presiding jurist) require less detail on particular issues than initially anticipated, that too may lead the government to streamline its presentation. But all of these decisions must happen in the midst of trial; they cannot be predicted beforehand. Given these uncertainties, it makes sense that in most trials, not every exhibit on a party's witness list is ultimately admitted into evidence, and in some cases, additional exhibits are added as the primary issues in dispute become clearer. The parties, therefore, must be afforded some flexibility to use their best efforts to compile exhibit lists, and that is why the general practice is to permit that flexibility.

Mattson provides no legal authority for the requirement he seeks to impose. Instead, he points to a recent trial, *United States v Andrade*, in which he states that the government listed 1,421 exhibits but only admitted 264 exhibits, 210 of which were on the original list.[1] But nothing about *Andrade* supports

---

[1] Mattson questions, in a single trial in which one of his lawyers participated, whether "sufficient discernment was applied to the creation of the [government's exhibit] list." ECF No. 220-2 at 3. He fails to mention that in that case, the defendant—who had no burden of proof—himself listed approximately 550 exhibits. *See* Defendant's Second Amended Exhibit List, ECF No. 580, *United States v. Andrade*, No. 3:20-CR-00249-RS (N.D. Cal.). Of these, just 44—eight percent—were ultimately admitted. *See* Joint Certification of Counsel Regarding Trial Exhibits, ECF No. 672, *Id.*

Mattson's argument. In that case, the government's list was a small portion of the voluminous discovery that was produced to the defense. The exhibit list, thus, *served its purpose* of significantly narrowing the world of documents likely to be at issue in trial and allowing the parties to more efficiently prepare for trial.

Mattson's request should also be rejected because there is no reasonable mechanism by which it could be enforced. The upshot of the rule Mattson requests would require the government to actually introduce at trial most of the exhibits on its list—a list compiled 45 days before trial. This would serve no purpose other than to waste the Court's and the jury's time and prevent the government from taking steps to more efficiently present its case based on how the evidence comes in at trial. At every stage, the government must be prepared to meet its burden by proving each element beyond a reasonable doubt. The government may list a number of documents to prove a particular fact in anticipation that the defense will put that fact in dispute. At the stage the exhibit lists are exchanged, the government must assume that the defense will put every factual issue in dispute and so must be prepared to prove every aspect of its case beyond a reasonable doubt. If at trial, the defense does not dispute a particular fact, or enters into a stipulation, the government should be free to abandon exhibits it listed to prove that fact. Not only would Mattson's proposed rule encourage inefficient trial practice and discourage judicial economy, it could also lead to reversible error. *See generally Old Chief v. United States*, 519 U.S. 172 (1997) (district court abuses its discretion under Rule 403 where it allows government to introduce conviction-related evidence despite defendant's stipulation).

Finally, Mattson ignores the prophylactic effect of the Court's standing order, which requires that the parties (1) pre-mark exhibits; (2) exchange them beforehand; and (3) "make a good faith effort to stipulate to exhibits' authenticity." Standing Order for all Criminal Cases Before District Judge Jon S. Tigar ("Standing Order") at 3. These requirements go a long way towards ameliorating the defendant's professed concerns about insufficient opportunities to prepare. The Court should deny Mattson's unprecedented request for a special pretrial order micromanaging the parties' exhibit lists.

**B. Mattson's Requests Relating to Pretrial Disclosure of Witnesses Will Not Support Trial Efficiency, are Unduly Burdensome, and are Unsupported by Precedent**

The Court's standing order requires the government to notify defense counsel of witnesses it

intends to call by the close of trial the day before the witness is offered. *See* Standing Order at 4. Without a single authority in support of his request, Mattson represents that his case is so singular and exceptional as to require the Court to jettison its standard rule and order an extraordinarily complex series of rules that go far beyond that requirement, requiring the government to provide:

a) A full list of the government's anticipated witness order five days before it expects to call its first witness;

b) Prompt notice of any changes to government's anticipated witness order;

c) Prompt notice of "any information [the government] provides to its witnesses on when it anticipates they will be called";

d) Notification at the end of each trial day of the witnesses it will call on the next two trial days, with a minimum of 48-hours' notice, with Saturday and Sunday not counting.

Mot. at 4. Mattson cites no cases in which courts in this district (or any other federal judges) have imposed similar requirements. Undersigned counsel are aware of none, and for good reason. As described more fully above, trials are dynamic—it is unreasonable to require the government to decide, five days before opening statements, its entire witness order. Moreover, witnesses (not to mention lawyers, judges, and jurors) are people—people who fall ill, run into travel delays, and experience other unforeseen disruptions. The length of any particular examination is also inherently uncertain—the length of a witness's testimony depends not only on the anticipated direct examination, but on the cross-examination, redirect examination, and possible re-cross and redirect. None of those are knowable to the government before trial, and they affect the government's plans for the next day's witnesses. That is why the Court's standing order makes sense—giving the other side a reasonable opportunity to prepare for the next day's witnesses while recognizing the unpredictability of trial.

Mattson's proposed contrary rule suffers from numerous problems stemming from the fact that it is difficult to predict who will testify on a given day well in advance of that day. While Mattson is correct that the government sometimes plans a tentative witness order in advance of trial, that witness order frequently changes to accommodate witness schedules, illnesses, personal commitments, and/or travel plans. Those changes happen not only before trial, but frequently during trial. In this case, where the government expects many witnesses will travel by plane, and many witnesses are likely to be of

advanced age and suffer health issues, witness logistics will be complex and the government expects that its plans for the order of witnesses will frequently change. Thus, providing a full witness order will be of little value to the defense and will simply provide the defense a reason to cry foul when the government inevitably changes the witness order in response to the dynamics of trial. Similarly, a requirement that the government notify the defense of changes to the anticipated witness order and to provide the defendant all information it provides to witnesses about when they may testify will not promote any trial efficiency, will create confusion, and improperly impede on the government's work product privilege.

Mattson's last proposed requirement—requiring the government to provide notice at the end of each trial day of the witnesses it will call on the next two trial days, with a minimum of 48-hours' notice with Saturday and Sunday not counting—suffers from the same problems. In addition to being complex, vague[2] and unworkable, that rule requires the government to predict what witnesses will testify on a given day too far in advance, such that those predictions will not be useful. And Mattson's concerns about adequate preparation are further mitigated by the fact that the government has agreed to disclose its witness lists *six weeks* in advance of trial. ECF No. 216 at 2.

The Court should reject Mattson's complex, unprecedented, and unworkable witness disclosure rules. These rules do not help provide the defense fair notice; rather, they are simply the defendant's attempt to require the government to constantly disclose its thought process regarding witnesses and trial strategy. The parties should be required to abide by the Court's standard rule: to disclose the following day's witnesses prior to the close of trial the preceding day.

**C. The Court Should Not Impose a Discovery Cutoff**

Mattson moves the Court to impose an order requiring the government to produce "[a]ll Rule 16, *Brady*, *Giglio*, and *Jencks* material . . . 30 days before the pretrial conference." ECF No. 220-3 at 2. Such a cutoff is unwarranted and in any case exceedingly early, the government's discovery obligations

---

[2] Mattson's request that the government to provide "further notification, at the end of the evidence at trial each day, of the witnesses it will call on the next two trial days, with a minimum of 48-hours' notice" appears to mean that the government would be required on Thursday, May 27, to tell the defendant about the witnesses it plans to call on Wednesday, June 1—five days later. It is unrealistic to expect the government to know the identities of its witnesses five days in advance and also for those identities not to change as government counsel works over the weekend.

are self-executing, and, at least with respect to *Jencks*, the Court has no authority to modify the timing rule set forth in 18 U.S.C. § 3500.

As an initial matter, it is black letter law that the Court has no authority to order the government to produce *Jencks* materials earlier than is set forth in the Jencks Act. *United States v. Walk*, 533 F.2d 417, 418, 420 (9th Cir. 1975) (reversing district court order requiring government to produce witness statements in advance of trial and ordering that "statements be produced only in accordance with the provisions of the Jencks Act," which provides that witness statements may not be discovered until the witness has testified on direct examination); *United States v. Cerna*, 633 F.Supp.2d 1053, 1055 (N.D. Cal. 2009) ("In light of . . . [Ninth Circuit] holdings, the government would be within its rights in withholding Jencks Act statements until after the witness testifies on direct—and this would be so even if the Jencks Act statements contain *Brady* information. District courts in this circuit have no authority to override strict observance of the Jencks Act."). *Accord* Fed. R. Crim. P. 26.2 (requiring party to produce statement after a witness has testified on direct examination). The government is mindful, however, that strict compliance with the Jencks Act rule may result in inefficacies in trial and intends, to the extent practicable, to disclose such information reasonably before the testimony of any witness it sponsors. The Court, however, has no authority to order an earlier deadline and should deny Mattson's request.

The Court should also deny Mattson's requests for Rule 16 and *Brady* discovery cut-offs. Rule 16 imposes a continuing duty of disclosure on the parties of criminal cases. *See* Fed. R. Crim. P. 16(c). In this case, the government is and has been promptly producing the materials that are in its possession that are subject to the rule. As the government prepares for trial, it is reviewing the materials in its possession and promptly producing any additional materials that are discoverable under the rule, including new materials that come into its possession. Mattson provides no reason to impose an arbitrary date as a discovery cutoff here. The Court has the discretion, as part of its inherent authority, to bar the government from admitting late-produced evidence at trial. It should exercise that power on a case-by-case basis upon consideration of all relevant circumstances—including the probative value of the evidence, the reason(s) for the timing of production, and any alleged prejudice to the defendant—not via an inflexible bar of discovery produced after a specific date.

Against this backdrop, the defense's request is an unnecessary solution in search of a problem. Indeed, to the extent the defense is worried about being inundated with eleventh-hour discovery (despite there being no basis to believe such a risk exists), Rule 16 offers a sufficient remedy, giving trial courts wide latitude to exclude evidence offered in violation of the Rule's disclosure requirements or to fashion other appropriate relief. *See* Fed. R. Crim. P. 16(d)(2); *United States v. Swenson*, 298 F.R.D. 474, 478 n.1 (D. Idaho 2014) ("If the Defendants can show that such late disclosure, although unavoidable, has resulted in substantial prejudice to them, the Court will consider whether the evidence should be allowed or whether other steps can or should be taken to minimize that prejudice."). And the Court's standing order, too, mitigates such concern—it makes it clear that "[a]ll exhibits that have not been provided as required are subject to exclusion in the reasonable exercise of the Court's discretion." Standing Order at 3. Because Rule 16 already operates to constrain the government against, and protect the defendant from, late-produced evidence, there is no need for the Court to do more, especially in the absence of any suggestion that this case presents an unusual risk of prejudice to the defendant from late-disclosed evidence. Indeed, were the Court to do as the defendant requests, it would hand him an unwarranted strategic advantage by barring admission of potentially relevant evidence even without a showing of prejudice resulting from late disclosure. Other courts have avoided doing just that. *See, e.g.*, *United States v. Call*, No. 2:17-PO-00016-JTR, 2017 WL 3528667, at *3 (E.D. Wash. July 28, 2017) (rejecting request to strictly enforce deadlines set in pretrial order noting: "In the case of late-disclosed evidence, the proper response is determined by the circumstances and the reason for the untimely disclosure"). This Court should do the same.

Finally, there is nothing about *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008), or the California Rules of Professional Conduct that supports a different result. *W.R. Grace* merely supports the basic principle that the Court has broad discretion to manage its docket in criminal cases, including by setting appropriate pretrial deadlines. *See* 526 F.3d at 509–10. Whether the Court has the discretion to set a discovery cutoff date (it does) is a different question from whether it should exercise that authority in this case (it should not). As for the Rules of Professional Conduct, Rule 3.8 actually supports the government's position that no discovery cutoff date is warranted: that rule "is not intended to impose timing requirements different from those established by statutes, procedural rules, court orders, and case

law interpreting those authorities and the California and federal constitutions." Cal. R. Prof'l Conduct 3.8 cmt. 3.

Further, there is no need for the Court to "referee . . . the Government's *Brady* obligations" before or during trial. Order, *United States v. Pacific Gas & Electric Co.*, No. CR 14-175 TEH, Dkt. 195, at 6 (N.D. Cal. Nov. 12, 2015). *Brady* creates a self-executing disclosure obligation for prosecutors in every criminal case. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995); *United States v. Agurs*, 427 U.S. 97, 107-11 (1976); *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992). *Brady* disclosures must occur "at a time when [they] would be of value to the accused," which often, although not always, means before trial. *United States v. Gomez*, No. 13-CR-282 PJH DMR, 2014 WL 231984, at *5 (N.D. Cal. Jan. 21, 2014) (citation omitted). In a rare case in which the government fails to comply with *Brady*, then the court may order appropriate relief, which may take several forms depending on the circumstances, including a continuance or a new trial. *See, e.g.*, *United States v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007) (holding that a *Brady* violation merited a new trial); *United States v. Price*, 566 F.3d 900, 904 (9th Cir. 2009) (same); *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.), *amended*, 764 F.2d 675 (9th Cir. 1985) ("The decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion."). *See also* Fed. R. Crim. P. 5(f) (requiring court to issue oral and written order confirming prosecutor's *Brady* obligation and possible consequences of violating those obligations). For the same reasons with respect to Rule 16, the Court should not impose a *Brady* deadline.

The Court should deny Mattson's request for discovery cutoff date.

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion in its entirety.

DATED: November 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

__________/s/________________
NIKHIL BHAGAT
NOAH STERN
Assistant United States Attorneys